## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| EXAERIS, INC., and | : | Bankr. Case No. 07-10887 (KG) |
| INYX USA, LTD.,[1] | : | Bankr. Case No. 07-10888 (KG) |
| | : | |
| Debtors. | : | |
| | : | |
| DR. JACK KACHKAR, | : | |
| | : | |
| Appellant, | : | |
| | : | |
| v. | : | C.A. No. 07-621 GMS |
| | : | |
| STEPHEN S. GRAY, CHAPTER 11 | : | |
| TRUSTEE FOR INYX USA, LTD., and | : | |
| WESTERNBANK PUERTO RICO, | : | |
| | : | |
| Appellees. | : | |

### BRIEF OF APPELLANT,
### DR. JACK KACHKAR

---

### APPEAL FROM THE ORDER OF SEPTEMBER 7, 2008
### ENTERED IN CASE NO. 07-10887 (KG)
### AS TO DEBTOR INYX, USA, LTD. (CASE NO. 07-10888 (KG))
### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

Tobey M. Daluz, Esq. (DE Bar No. 3939)
Leslie C. Heilman, Esq. (DE Bar No. 4716)
BALLARD SPAHR ANDREWS
 & INGERSOLL, LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
(302) 252-4465

Dated: March 25, 2008

*Attorneys for Appellant, Dr. Jack Kachkar*

---

[1] The Exaeris, Inc. and Inyx USA, Ltd. bankruptcy cases were jointly administered at the outset of their cases at Bankruptcy Case No. 07-10887, however, on December 6, 2007, on the motion of Westernbank Puerto Rico, the Bankruptcy Court vacated the order for joint administration.

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CITATIONS ................................................................................................. iii

STATEMENT OF APPELLATE JURISDICTION ........................................................ 1

STATEMENT OF THE ISSUES PRESENTED AND THE APPLICABLE STANDARD
OF APPELLATE REVIEW .......................................................................................... 2

    I.      Issues Presented: ................................................................................................. 2

    II.     Standard of Appellate Review: ............................................................................ 4

STATEMENT OF THE CASE........................................................................................ 6

    I.      Procedural History ............................................................................................. 6

    II.     Facts ................................................................................................................... 8

ARGUMENT................................................................................................................ 21

    I.      Summary of Argument ...................................................................................... 21

    II.     The Bankruptcy Court Erred As A Matter Of Law In Failing To Enforce
         The First DIP Liens Authorized By The Kachkar DIP Order And Entering
         The Westernbank DIP Without Modification Thereby Invalidating Its
         Earlier Approval Of The First DIP Liens To The Significant Prejudice Of
         Dr. Kachkar............................................................................................................ 23

         A.     The Westernbank DIP Order Impaired the First DIP Liens By
                Defining the Collateral In Such A Way As To Limit The Collateral
                Itself ............................................................................................................ 23

         B.     Dr. Kachkar Was Entitled to Rely on the Sanctity of the Kachkar
                DIP Order and the Entry of the Conflicting Westernbank DIP
                Order Demands Remand to the Bankruptcy Court to Enforce Its
                Prior Order ................................................................................................. 24

    III.    The Bankruptcy Court Committed Legal Error When It Authorized the
         Westernbank DIP Financing on the Terms and Conditions Set Forth in the
          Westernbank DIP Order......................................................................................... 30

         A.     Any Liens Granted To Westernbank As Second DIP Lender
                Cannot Prime The First DIP Liens Against Debtors' Assets

Without Consent or Provision of Adequate Protection Pursuant to
11 U.S.C. § 364(d) .................................................................................................. 30

B.     The Westernbank DIP Impermissibly Extends Westernbank's
Prepetition Security Interest To Post-Petition Date Property In
Violation Of Section 552 Of The Bankruptcy Code................................. 32

C.     The Bankruptcy Court Erred In Authorizing The Use Of Cash
Collateral and Granting Westernbank Priming Replacement Liens
Absent A Showing of Entitlement to Adequate Protection ...................... 34

IV.     The Bankruptcy Court Abused Its Discretion and Erred as a Matter of Law
in Granting Waivers of (i) the Equitable Doctrine of "Marshaling" or Any
Other Similar Doctrine With Respect to Any of Westernbank's Collateral;
(ii) The "Equities of the Case" Exception under Section 552(b) of the
Bankruptcy Code As It Applies to Westernbank With Respect To
Proceeds, Product, Offspring or Profits of Any Its Collateral; and (iii) the
Provision of Section 506(c) of the Bankruptcy Code. .......................................... 39

A.     The Grant of a Waiver of the Equitable Doctrine of Marshalling Is
an Impermissible Modification of the Rights of Third Parties ................. 40

B.     The Waiver of the "Equities of the Case" Clause in Section 552(b)
Was An Abuse of Discretion of the Bankruptcy Court ............................ 40

C.     The Bankruptcy Code Mandates That Secured Creditors Be
Charged With The Costs and Expenses of Preserving Their
Collateral.................................................................................................... 43

V.     The Payment of Proceeds Provision Deprives Dr. Kachkar of the
Protections Granted to Dr. Kachkar under the Kachkar DIP Order, the
Bankruptcy Code, and on the Record of the Court. ............................................. 44

CONCLUSION.................................................................................................................. 45

CERTIFICATE OF SERVICE

## TABLE OF CITATIONS

Cases                                                                        Page(s)

*In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986)......................................5

*Alpern v. Lieb*, 38 F.3d 933 (7th Cir. 1994)..................................................................27

*Anchor Savings Bank v. Sky Valley, Inc.*, 99 B.R. 117 (N.D. Ga. 1989)................................38,39

*Bennett v. Rainier National Bank (In re Bennett)*, 21 B.R. 440 (B.A.P. 1st Cir. 1982) ...............27

*Block v. Moss (In re Moss)*, 258 B.R. 391 (Bankr. W.D. Mo. 2001) ...........................................26

*Citizens Fidelity Bank & Trust Co. v. All-Brite Sign Serv. Co. (In re All-Brite Sign Serv. Co.)*, 11 B.R. 409 (Bankr. W.D. Ky. 1981) ...............................................................33

*Creditors' Committee v. Spada (In re Spada)*, 903 F.2d 971 (3d Cir. 1990)...................................4

*In re Crouse Group, Inc.*, 71 B.R. 544 (Bankr. E.D. Pa. 1987)..............................................31,38

*In re Delaware & Hudson Railway Co.*, 124 B.R. 169 (D. Del. 1991) ...........................................4

*Dobin v. Presidential Fin. Corp. of Del. Valley (In re Cybridge Corp.)*, 304 B.R. 681 (Bankr. D.N.J. 2004)..........................................................................................................41

*Farmworker Creditors v. Bland (In re Bland)*, 308 B.R. 109 (S.D. Ga. 2003)............................32

*First Nat'l Bank of Lafayette v. Texas Tri-Collar, Inc. (In re Texas Tri-Collar, Inc.)*, 29 B.R. 724 (Bankr. W.D. La. 1983)..................................................................................33

*Ford Motor Co. v. NLRB*, 305 U.S. 364 (1939) ...................................................................26

*General Electric Mortgage Corp. v. South Village, Inc. (In re South Village, Inc.)*, 25 B.R. 987 (Bankr. D. Utah 1982) .................................................................................37

*Great West Life & Annuity Assur. Co. v. Parke Imperial Canton, Ltd.*, 177 B.R. 843 (N.D. Ohio 1994) .....................................................................................................41

*In re Gross-Feibel Co.*, 21 B.R. 648 (Bankr. S.D. Ohio 1982) ...................................................33

*Hartford Underwriters Inc. Co. v. Union Planters Bank N.A.*, 530 U.S. 1 (2000)........................43

*In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261 (3d Cir. 1991)......................................26,27,28

*Marshall v. Demos (In re Demos)*, 57 F.3d 1037 (11th Cir. 1995) ...............................................26

*New Hampshire Bus. Dev. Corp. v. Cross Baking Co.* (*In re Cross Baking Co.*), 818 F.2d
1027 (1st Cir. 1987) ...........................................................................................................41,42

*In re O'Brien Environmental Energy, Inc. v. NRG Energy, Inc.* (*In re O'Brien Envtl.
Energy, Inc.*), 188 F.3d 116 (3d Cir. 1999) ...........................................................................5

*In re Orthopedic Bone Screw Products Liability Litigation*, 246 F.3d 315 (3d Cir. 2001) .............5

*In re Package Design & Supply Co., Inc.*, 217 B.R. 422 (Bankr. W.D.N.Y. 1998) ......................42

*In Re Photo Promotion Assoc., Inc.*, 53 B.R. 759 (Bankr. S.D.N.Y. 1985) ...................................32

*In re Qmect, Inc.*, No. 04-41044 T, 2006 Bankr. LEXIS 1478 (Bankr. N.D. Cal. June 2,
2006) ..............................................................................................................................33,34

*In re Skagit Pacific Corp.*, 316 B.R. 330 (B.A.P. 9th Cir. 2004) ...........................................33,34

*In re The Colad Group, Inc.*, 324 B.R. 208 (Bankr. W.D.N.Y. 2005) ..........................................40

*In re Three Partners, Inc.*, 199 B.R. 230 (Bankr. D. Mass. 1995) ................................................41

*United States Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484
U.S. 365 (1988) ..................................................................................................................37

*United States v. United States Gypsum Co.*, 333 U.S. 364 (1948) ................................................4

*Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98 (3d Cir. 1981 ................................4,5

*Wells Fargo Bank of Tex. N.A. v. Sommers* (*In re AMCO Insurance*), 444 F.3d 690 (5th
Cir. 2006) .........................................................................................................................27,28

*Wolinsky v. Vermont Fed. Bank* (*In re Vermont Knitting Co.*), 111 B.R. 464 (Bankr. D.
Vt. 1990) ..............................................................................................................................33

*Wood v. LA Bank* (*In re Wood*), 190 B.R. 788 .............................................................................42

### Statutes

11 U.S.C. §§ 101, *et seq.* ...............................................................................................................2

11 U.S.C. § 105(a) .........................................................................................................................26

11 U.S.C. § 361 .......................................................................................................................3,36,37

11 U.S.C. § 362 ..............................................................................................................................3

11 U.S.C. § 363 ........................................................................................................2,3,23,35

11 U.S.C. § 363(a) ....................................................................................................36

11 U.S.C. § 363(c)(1) ...............................................................................................35

11 U.S.C. § 363(c)(2) ...........................................................................................35,36

11 U.S.C. § 363(e) .........................................................................................4,22,35,36,37

11 U.S.C. § 364 .......................................................................................................3,30

11 U.S.C. § 364(a) ....................................................................................................30

11 U.S.C. § 364(b) ....................................................................................................30

11 U.S.C. § 364(c) .......................................................................................2,21,30,31,37

11 U.S.C. § 364(c)(1) .........................................................................................2,24,30

11 U.S.C. § 364(c)(2) .........................................................................................2,4,22,30

11 U.S.C. § 364(c)(3) ..............................................................................................2,30

11 U.S.C. § 364(d) .............................................................................2,3,4,21,22,23,30,31,35

11 U.S.C. § 364(e) ....................................................................................................23

11 U.S.C. § 506(c) ..............................................................................................4,23,43

11 U.S.C. § 552 .....................................................................................................22,32

11 U.S.C. § 552(a) .........................................................................................23,32,34,38,39

11 U.S.C. § 552(b) .......................................................................................4,23,33,40,41,42

11 U.S.C. § 552(b)(1) ..............................................................................................40,41

28 U.S.C. § 158(a) .....................................................................................................1

28 U.S.C. § 1334 ........................................................................................................1

124 Cong. Rec. H11,097-11,098 (daily ed. Sept. 28, 1978), *reprinted in Collier on Bankruptcy*, Vol. D, App. Pt. 4(f)(i), pp. 4-2446-4-2453 (15th ed. rev.) .................................33

124 Cong. Rec. S17,414 (daily ed. Oct. 6, 1978), .); *reprinted in Collier on Bankruptcy*,
    Vol. D, App. Pt. 4(f)(iii), pp. 4-2561-4-2564 (15th ed. rev.)......................................................33

## Rules

Fed. R. Bankr. P. 8013................................................................................................................4,26

Bankr. D. Del. L.R. 4001-2(a)(i)(C) ...........................................................................................43

## Treatises and Other Authorities

O'Toole, Adequate Protection and Post-Petition Interest in Chapter 11 Proceedings, 56
    Am.Bankr.L.J. 251 (1982) .......................................................................................................37

## STATEMENT OF APPELLATE JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 158(a) and 1334.

# STATEMENT OF THE ISSUES PRESENTED
## AND THE APPLICABLE STANDARD OF APPELLATE REVIEW

## I.    Issues Presented

Whether the United States Court for the District of Delaware (the "Bankruptcy Court") erred in permitting Stephen S. Gray, as the Chapter 11 Trustee (the "Trustee") of Inyx USA, Ltd. ("Inyx USA" or the "Debtor") to obtain post-petition financing under Sections 364(c) and 364(d) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended) (the "Bankruptcy Code") from Westernbank Puerto Rico ("Westernbank" or the "Prepetition Lender") for a period from August 15, 2007 through and including November 30, 2007 (the "Commitment Termination Date"),[1] up to the aggregate amount of $3,373,100 through the Commitment Termination Date (the "Loan"), collaterally secured by first priority perfected liens and security interests (the "Financing Liens") on all property of the Debtor's estate pursuant to Sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, and with priority, as an administrative expense in accordance with the provisions of Section 364(c)(1) of the Bankruptcy Code, on the terms and conditions set forth in the Bankruptcy Court's order dated September 7, 2007, titled: "Final Order as to Debtor Inyx USA, Ltd. (Case No. 07-10888) (I) Authorizing the Use of Cash Collateral Pursuant To 11 U.S.C. § 363, (II) Granting Adequate Protection To Westernbank Puerto Rico as the Prepetition Lender, (III) Authorizing Postpetition Financing, (IV) Granting Liens and Superpriority Administrative Expense Status Pursuant To 11 U.S.C. §§

---

[1]    The October 31, 2007 Commitment Termination Date was extended by the November Budget (as defined in the Westernbank DIP Order) [Bankr. D.I. 298], which extended the financing authorized by the Westernbank DIP through November 30, 2007.

363 and 364, and (V) Modifying Automatic Stay Pursuant To 11 U.S.C. § 362 (the

"Westernbank DIP Order").[2]

        Whether, on the record of the hearing, the Bankruptcy Court erred in authorizing

a priming of Dr. Kachkar's liens (the "First DIP Liens") granted on Inyx USA's assets pursuant

to that certain Interim Order:  (I) To Authorize Secured Postpetition Financing, (II) To Grant A

Super-Priority Administrative Claim and Postpetition Liens; and (III) To Scheduling [sic] a Final

Hearing, signed by the Bankruptcy Court on July 11, 2007 and entered on July 12, 2007 (the

"Kachkar DIP Order"), without Dr. Kachkar's consent and without provision of adequate

protection in violation of Section 364(d) of the Bankruptcy Code.

        Whether the Bankruptcy Court erred in authorizing the entry of the Westernbank

DIP Order which inappropriately narrowed and redefined the collateral on which the First DIP

Liens of Dr. Kachkar attached in limitation and contravention of a prior order of the Bankruptcy

Court.

        Whether the Bankruptcy Court erred in granting the Prepetition Lender pursuant

to Sections 361 and 363 of the Bankruptcy Code, as adequate protection for the use of cash

collateral ("Cash Collateral"), and to the extent of any diminution in the value thereof,

replacement liens to the same extent and validity and priority as Westernbank's prepetition liens,

on all of Inyx USA's currently owned and after-acquired property, thus effectuating a priming of

Dr. Kachkar's First DIP Liens, absent a showing that there was any Westernbank Cash Collateral

---

[2]     Since the entry of this Order, Westernbank Puerto Rico has continued to provide debtor-in-possession ("DIP") financing to the Debtor Inyx USA, Ltd. pursuant to certain subsequent Interim Orders, entered on December 6, 2007, March 5, 2008 and March 12, 2008, respectively [Bankr. D.I.'s 420, 53 and 82, respectively], on substantially similar terms (and on identical terms with respect to the lien priority issues involved in this appeal) through the current period of December 1, 2007 through and including April 1, 2008.

available to the Debtors' estates on the Petition Date, and without Dr. Kachkar's consent and without provision of adequate protection in violation of Sections 363(c)(2), 363(e) and 364(d) of the Bankruptcy Code.

Whether the Bankruptcy Court erred in granting waivers of (i) the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of Westernbank's Collateral; (ii) the "equities of the case" exception under Section 552(b) of the Bankruptcy Code as it applies to Westernbank with respect to proceeds, product, offspring or profits of any its collateral; and (iii) the provision of Section 506(c) of the Bankruptcy Code.

Whether the Bankruptcy Code erred in authorizing the entry of the Westernbank DIP Order containing a Payment from Proceeds of Collateral provision which requires, *inter alia*, that all proceeds from a sale of substantially all the assets of Inyx USA be paid solely to Westernbank, without any regard to the First DIP Liens.

Whether the Bankruptcy Court erred in determining that the relief granted was in the best interests of the Debtor and its estate, creditors and interest holders and all other parties in interest in the chapter 11 case.

## II.    Standard of Appellate Review

As an appellate court, this Court must review both the factual and the legal determinations of the Bankruptcy Court for error. *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101-02 (3d Cir. 1981). Findings of fact made by a Bankruptcy Court may not be set aside unless clearly erroneous. *See* Bankruptcy Rule 8013; *Creditors' Committee v. Spada (In re Spada)*, 903 F.2d 971, 975 (3d Cir. 1990). Thus, "a reviewing court will affirm the Bankruptcy Court's findings unless 'on the entire evidence [the court] is left with the definite and firm conviction that a mistake has been committed.'" *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 178 (D. Del. 1991) (quoting *United States v. United States Gypsum Co.*, 333

4

U.S. 364, 395 (1948)). Conclusions of law are subject to *de novo* review. *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986); *Universal Minerals*, 669 F.2d at 103 n.6. This Court must also examine the Bankruptcy Court's findings for an abuse of discretion. "A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of the facts." *In re O'Brien Envtl. Energy, Inc. v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 188 F.3d 116, 122 (3d Cir. 1999); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 320 (3d Cir. 2001) (an appellate court will not "disturb an exercise of discretion unless there is a definite and firm conviction that the court . . . committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.").

Accordingly, this appeal, insofar as it relates to the priority of a lien and the legal standards applied in priming such lien, involves solely questions of law, to which this Court exercises plenary review.

## STATEMENT OF THE CASE

### I.    Procedural History

This is an appeal from an order issued in the proceeding of Inyx USA, a debtor under Chapter 11 of the Bankruptcy Code, authorizing postpetition financing funded by Westernbank and the use of Cash Collateral, and granting, among other things, first priority perfected liens and security interests on all property of the Debtor's estate and superpriority administrative expense status pursuant to 11 U.S.C. §§ 363 and 364 of the Bankruptcy Code.  On August 22, 2007, the Trustee filed the Motion for Entry of Interim and Final Orders Pursuant To Sections 105, 361, 362, 363, 364(c) and 364(d) of the Bankruptcy Code and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules) With Respect To Inyx USA, Ltd. (Case No. 07-10888) (I) Authorizing the Use of Cash Collateral Pursuant To 11 U.S.C. § 363, (II) Granting Adequate Protection To Westernbank Puerto Rico as the Prepetition Lender, (III) Authorizing Postpetition Financing, (IV) Granting Liens and Superpriority Administrative Expense Status Pursuant To 11 U.S.C. §§ 363 and 364, (V) Modifying Automatic Stay Pursuant To 11 U.S.C. § 362 and (VI) Scheduling A Final Hearing (the "Westernbank DIP Motion").[3]  That same day, Dr. Kachkar filed an objection (the "Objection")[4] to the Westernbank DIP Motion on the grounds that, among other things, it impermissibly effectuated a priming of the First DIP Liens on Inyx USA's assets granted to Dr.

---

[3]    A copy of the Westernbank DIP Motion is attached as Tab 6 to Appellant Dr. Jack Kachkar's Statement of Issues and Designation of Record on Appeal From Final Order Entered by the Bankruptcy Court on September 7, 2007 [Docket No. 179], filed on September 27, 2007 (the "Record").

[4]    A copy of the Objection, together with Exhibit A to the Objection, are attached as Tabs 8 and 9, respectively, to the Record.

Kachkar pursuant to the Kachkar DIP Order entered by the Bankruptcy Court on July 12, 2007,[5] and inappropriately narrowed and redefined the collateral on which the First DIP Liens attached in limitation and contravention of the Bankruptcy Court's prior order.

On August 23, 2007, the Bankruptcy Court held a hearing on the interim relief sought by the Westernbank DIP Motion,[6] which resulted in (i) Dr. Kachkar's rights being preserved until the final hearing on the Westernbank DIP Motion, (ii) the entry of an order approving the Westernbank DIP Financing (defined below) on an interim basis (the "Westernbank Interim DIP Order"),[7] and (iii) the scheduling of a final hearing for September 7, 2007. On September 4, 2007, Dr. Kachkar renewed his objections to the Westernbank DIP Motion in his objection to entry of the proposed Westernbank DIP Order on a final basis (the "Renewed Objection").[8] On September 7, 2007, the final hearing on the Westernbank DIP Motion was held,[9] and by order entered that same day,[10] the Court granted the Westernbank DIP Financing (defined below) on a final basis, notwithstanding Dr. Kachkar's objections. On

---

[5]    A copy of the Kachkar DIP Order is attached as Tab 2 to the Record.

[6]    The Transcript of the interim hearing held on August 23, 2007 (the "Interim Hearing") is cited to herein as "8/23/07 Tr. at ___." A copy of such Transcript is attached as Tab 10 to the Record.

[7]    A copy of the Westernbank Interim DIP Order is attached as Tab 11 to the Record.

[8]    A copy of the Renewed Objection is attached as Tab 13 to the Record.

[9]    The Transcript of the final hearing held on September 7, 2007 (the "Final Hearing") is cited to herein as "9/7/07 Tr. at ___." A copy of such Transcript is attached as Tab 14 to the Record.

[10]    A copy of the Westernbank DIP Order is attached as Tab 16 to the Record.

September 17, 2007, Dr. Kachkar timely filed his Notice of Appeal from the Westernbank DIP Order, commencing this appeal.[11]

## II.    Facts[12]

On July 2, 2007 (the "Petition Date"), Inyx USA and Exaeris, Inc. ("Exaeris," together with Inyx USA, the "Debtors"), each filed voluntary petitions in the United States Bankruptcy Court for the District of Delaware for relief under chapter 11 of the Bankruptcy Code.  The Inyx USA and Exaeris bankruptcy cases were jointly administered at the outset of their cases, however, on December 6, 2007, on the motion of Westernbank, the Bankruptcy Court vacated the order for joint administration.  An official committee of unsecured creditors (the "Committee") was appointed in the Debtors' chapter 11 cases on July 13, 2007.

Both Exaeris and Inyx USA are wholly owned subsidiaries of Inyx, Inc. ("Inyx"). *See* Debtors' Motion:  (I) To Authorize Secured Postpetition Financing; (II) To Grant a Super-Priority Administrative Claim and Postpetition Liens; and (III) To Schedule a Final Hearing (the "Kachkar DIP Motion"), ¶ 5.[13]  Inyx has not initiated a bankruptcy proceeding in its own name. At the commencement of the bankruptcy cases, Dr. Kachkar was the Chief Executive Officer and Chairman of the Board of Inyx and continues to serve in that role. *See id.* at ¶ 12 n.4.  Inyx is a specialty pharmaceutical company with niche drug delivery technologies and products for the treatment of respiratory, allergy, dermatological, topical and cardiovascular conditions. Focusing on both prescription and over-the-counter pharmaceutical products, Inyx provides

---

[11]    A copy of the Notice of Appeal is attached as Tab 17 to the Record.

[12]    The facts set forth herein are either drawn from the procedural record of this bankruptcy case or are facts that Dr. Kachkar believes are not the subject of dispute.

[13]    A copy of the Kachkar DIP Motion is attached as Tab 1 to the Record.

contract manufacturing and development services to the international healthcare market, including a number of the largest pharmaceutical companies in the world. *Id.* at ¶ 5. Inyx USA, based in Manati, Puerto Rico; operates a pharmaceuticals production center servicing markets in North and South America, and specializes in the development and manufacture of inhalation therapy (respiratory and non-respiratory), dermatology and topical pharmaceutical products. *Id.* at ¶ 7.

As of the Petition Date, Inyx USA was indebted to Westernbank in the approximate amount of $140 million (the "Prepetition Indebtedness"), which indebtedness is allegedly secured by first priority liens on substantially all of Inyx USA's assets. *See id.* at ¶ 8; Westernbank DIP Motion, ¶ 9. Under the terms of the loan documents, Westernbank maintained a lockbox from which Inyx USA's daily cash collections were swept each day and applied to the loan balance. As such, as of the Petition Date, the Inyx USA estate had zero cash in its accounts, and therefore, held no cash collateral of Westernbank as of the date of its bankruptcy filing.[14] *See* 7/11/07 Tr. at 44.

After the Debtors were unsuccessful in obtaining unsecured financing to fund post-petition operations, Dr. Kachkar agreed to provide the Debtors with secured post-petition financing in an amount up to $2.1 million, with interest at the rate of 9.5% per annum on funds actually advanced (the "Kachkar DIP Financing"). *See* Kachkar DIP Motion, ¶¶ 11, 12; Kachkar DIP Order, ¶ 3. Of the $2.1 million, approximately $1.2 million of the Kachkar DIP Financing

---

[14]    Relevant portions of the Transcript of the first day hearing held on July 11, 2007 (the "First Day Hearing") is cited to herein as "7/11/07 Tr. at ___." Copies of the relevant portions of such Transcript are attached as Exhibit A to the Objection, at Tab 9 of the Record.

went to fund the Inyx USA estate. In return for the Kachkar DIP Financing, Dr. Kachkar was granted a super-priority administrative expense claim pursuant to Section 364(c)(1) of the Bankruptcy Code, and liens upon (i) *all unencumbered property of the Debtors' estates* not subject to prior valid, perfected first priority security interests of any party, and (ii) *all post-Petition Date property of the Debtors*, not including any causes of action arising under Chapter 5 of the Bankruptcy Code or proceeds thereof, pursuant to the Kachkar DIP Order entered by the Bankruptcy Court on July 12, 2007. Kachkar DIP Order, ¶¶ 5-7 (emphasis added). At no time prior to the entry of the Kachkar DIP Order did any party seek to limit the collateral in which Dr. Kachkar was granted a lien. A hearing on the Final Order authorizing the Kachkar DIP Financing is scheduled to take place in the near term.

On August 8, 2007, the Bankruptcy Court approved the appointment of the Trustee for Inyx USA with the agreement of all parties in interest. Westernbank DIP Motion, ¶ 3. Dr. Kachkar elected not to provide additional DIP financing to the Trustee. As such, during a status hearing on August 15, 2007,[15] the Trustee made an oral motion for emergency approval of postpetition financing to be funded by Westernbank (the "Emergency Financing"), the proceeds of which were to be used solely to fund Inyx's USA payroll and other direct operating expenses which were past due. 8/15/07 Tr. at 3:20-5:14; 8/16/07 Tr. at 3:17-22. The hearing on the Emergency Financing was continued to August 16, 2007 to allow the Trustee, Westernbank and the Committee an opportunity to negotiate the final terms of a proposed form of order. Dr. Kachkar and his counsel were assured during the August 15 Status Hearing that, for purposes of the Emergency Financing, Westernbank would not seek to prime the First DIP Liens of Dr.

---

[15]    The Transcripts of the status hearing held on August 15 & 16, 2007 (the "Status Hearing") are cited to herein as "8/15/07 Tr. at ___ and 8/16/07 Tr. at ___," respectively. Copies of such Transcripts are attached as Tabs 3 & 4, respectively, to the Record.

Kachkar. 8/15/07 Tr. at 29:1-25. Despite such assurances, however, upon Dr. Kachkar's review
of the final draft of the proposed order, given to counsel for Dr. Kachkar at 3:05 p.m. on August
16, 2007, five minutes beyond the scheduled time of the hearing to approve such order, it was
evident that the proposed order would prime the First DIP Liens without the consent of Dr.
Kachkar, and would substantially and impermissibly modify the terms of the Kachkar DIP Order
by limiting the collateral to which Dr. Kachkar was granted a lien. *See* Objection, ¶ 8 n.3;
8/16/07 Tr. at 9:16-17:2. Due to the emergent nature of the relief requested by the Trustee for an
order approving the Emergency Financing, however, the Bankruptcy Court entered the order
authorizing the Emergency Financing (the "Emergency Order"),[16] over the oral objections of Dr.
Kachkar, subject to a full reservation of rights to raise the same or other objections at the Interim
Hearing to consider the Trustee's formal motion for approval of the Westernbank financing.
8/16/07 Tr. at 17:16-18:22.

On August 22, 2007, the Trustee filed his motion for approval of interim and final
orders authorizing secured post-petition financing to be funded by Westernbank, including the
borrowings of the Trustee authorized by the Bankruptcy Court pursuant to the Emergency Order
(the "Westernbank DIP Financing"). In exchange for the Westernbank DIP Financing,
Westernbank would be granted, *inter alia*, first priority perfected post-petition liens upon all of
the property and assets of the Inyx USA estate, superior in priority to all other secured and
unsecured creditors of the estate (the "Westernbank Financing Liens"), except that the
Westernbank Financing Liens would be subject and subordinate to:

> the liens granted under the Kachkar DIP [Order] on (1)
> unencumbered property of the Debtor's estate ***as of July 11, 2007***,
> if any, or (2) ***property acquired after the Petition Date and prior***

---

[16]    A copy of the Emergency Order is attached as Tab 5 to the Record.

> *to [the date of the Westernbank DIP Order] by [Inyx] USA or the*
> *Trustee from funds used for [Inyx] USA's direct benefit provided*
> *under the postpetition financing extended to the Debtor pursuant*
> *to the [Kachkar DIP Order]*, if any.

*See* Westernbank DIP Order, ¶ 2(c) (emphasis added).[17]  In addition to the priming of the First

DIP Liens, the terms and conditions of the Westernbank DIP Order also granted Westernbank,

*inter alia*, (i) a super-priority administrative expense claim pursuant to Section 364(c)(1) of the

Bankruptcy Code with respect to any and all money borrowed by the Trustee, *see* Westernbank

DIP Order, ¶ 2(d); and (ii) replacement liens, as adequate protection for the use, and to the extent

of any diminution in the value, of Cash Collateral (as that term is defined in Section 363(a) of the

Bankruptcy Code), to the same extent and validity and priority as Westernbank's pre-petition

liens on all of Inyx USA's estate's "currently owed and after-acquired property and proceeds

thereof *pari passu* with and having the same priority as the [Westernbank] Financing Liens and

subject to other liens permitted under the Prepetition Credit Agreement[,]" notwithstanding that

there was zero Westernbank Cash Collateral as of the Petition Date.  Westernbank DIP Order, ¶

4.

The Westernbank DIP Order also wrongfully allowed for waivers of (i) the

equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the

Lender's Collateral; (ii) the "equities of the case" exception under Section 552(b) of the

Bankruptcy Code with respect to proceeds, product, offspring or profits of any of Westernbank's

collateral; and (iii) Section 506(c) of the Bankruptcy Code.  Westernbank DIP Order, ¶¶ 5, 12(e)

---

[17]     The key financing terms of the Westernbank DIP Order, including the paragraph
numbering, remained virtually unchanged from the initial draft of the proposed
Westernbank Interim DIP Order attached to the Westernbank DIP Motion to the entry of
the final order.  Accordingly, for ease of reference, Appellant will only cite to the
provisions of the Westernbank DIP Order.

& (f). Finally, the Westernbank DIP Order also contains a "payment of proceeds' provision which provides for the immediate payment of all proceeds to Westernbank from the sale of substantially all of the assets, or otherwise upon default, without any requirement for an accounting, and without regard to the First DIP Liens of Dr. Kachkar in direct contravention of what the parties agreed to at the Interim Hearing. Westernbank DIP Order, ¶ 9; 8/23/07 Tr. at 26:9-18, 29:14-30:8.

Dr. Kachkar filed the Objection that same day on the grounds that the Westernbank DIP Financing, and more specifically, the replacement lien, *inter alia*, impermissibly effectuated a priming of the First DIP Liens granted under the Kachkar DIP Financing on Inyx USA's assets without the consent of Dr. Kachkar and without provision of adequate protection in violation of Section 364(d) of the Bankruptcy Code, and substantially and impermissibly modified the terms of the Kachkar DIP Financing by limiting the collateral to which Dr. Kachkar was granted a lien in limitation and contravention of a prior order of the Bankruptcy Court. Objection at pp. 5-16.

Despite his objections, on August 23, 2007, the court entered an order approving the Westernbank DIP Financing on an interim basis (the "Westernbank Interim DIP Order"), and scheduled a final hearing for September 7, 2007. Notwithstanding the entry of the Westernbank Interim DIP Order, however, the Court did state on the record at the August 23, 2007 hearing, "I am of the view that whatever rights Dr. Kachkar has on the -- essentially the priming issue, are preserved. That's been so represented and I also observe that the stage is set for a fight at a later date as to the allocation of assets, the post-petition assets, the proceeds, the cash proceeds from cash collateral," leaving open the question as to whether Westernbank indeed has lien priority over the First DIP Liens. 8/23/07 Tr. at 26:9-15. Indeed, Westernbank made repeated

13

statements on the record at the Interim Hearing that the lien issue needed to be decided on another day, and "that's what the emergency order and the proposed [interim] order proposed to do. It doesn't prime Mr. Kachkar in any way, shape or form." 8/23/07 Tr. at 18:10-19:16. Despite these assertions, the Westernbank Interim DIP Order was entered without modification, and the ambiguities which gave rise to Dr. Kachkar's objections remain.

Thereafter, on September 4, 2007, Dr. Kachkar renewed his objections to the Westernbank DIP Financing in his objection to the proposed Final Order. At that time, Dr. Kachkar requested that the Bankruptcy Court deny entry of the Westernbank DIP Order in its current form, and submitted a proposed black line of the Westernbank DIP Order[18] which modified the order to be consistent with the Dr. Kachkar's objections thereto in an effort to maintain the status quo. *See* Renewed Objection, ¶ 6 and Exhibit B attached thereto. Despite these efforts, again, after hearing, the Court overruled Dr. Kachkar's objections, and entered the final order on September 7, 2007 approving the Westernbank DIP Financing, without modification.

Notwithstanding the above, the record at the Final Hearing was again clear that the Westernbank DIP Order still contained a reservation of rights with respect to Dr. Kachkar, providing that "[t]he rights of any party in interest with respect to any and all claims, defenses and objection relating to . . . Westernbank are not in any way waived or modified by entry of this Order and are specifically preserved." Westernbank DIP Order, ¶ 12(j); *see also* 9/7/07 Tr. at 5:16-6:2. Equally important, Paragraph 12(i) also provides that "[a]ll objections, if any, to the Trustee's Motion to the extent not withdrawn or resolved, hereby are overruled, *provided that*

---

[18]     At the time of his Renewed Objection, the Trustee had not yet filed and served a copy of the proposed final Westernbank DIP Order. Accordingly, Dr. Kachkar's proposed changes were made to the Westernbank Interim DIP Order.

14

*any party in interest may raise the same or other objections to the Order or any subsequent financing order sought in these cases."* Westernbank DIP Order, ¶ 12(i) (emphasis added).

Most notably, the terms of the Westernbank DIP Order completely run afoul of the numerous representations made by the parties, including those of Westernbank's counsel, at the various hearings in consideration of the Westernbank DIP Financing, i.e., that Westernbank had no intention to prime Dr. Kachkar's First DIP Liens, and are in direct contravention of the findings of the Court which relied upon such representations in making its decision to enter the Westernbank DIP Order, as follows:

| | **Transcript** | **Representation/Finding on the Record** |
|---|---|---|
| 1 | 8/15/07 Tr. at 9:18-24 | [WESTERNBANK]: As far as priming is concerning [sic], . . . we're not going to advance $428,000 without priming. In respect of whether it's pari passu or superior to Mr. Kachkar's liens in connection with his D-I-P loan of $2.1 million, that can wait another week or so. We don't need a ruling on that. But as far as priming, and we're priming the bank is who we're really priming for this amount of money. |
| 2 | 8/15/07 Tr. at 28:9-29:22 | [TRUSTEE]: I just want to know in terms of timing whether there's any priming of the Kachkar lien that's going to be proposed by this order. <br><br> . . . <br><br> [WESTERNBANK]: In connection, Your Honor, with the emergency funding, this $428,000, we'll leave the priming issue for another day. <br><br> . . . <br><br> [TRUSTEE]: [Y]ou're not priming Kachkar's superpriority claim -- <br> [WESTERNBANK]: No. <br><br> . . . <br><br> THE COURT: For purposes of the Emergency Order, . . . the bank is not seeking to prime Dr. Kachkar's position. |

| | **Transcript** | **Representation/Finding on the Record** |
|---|---|---|
| 3 | 8/16/07 Tr. at 13:1-5 | [WESTERNBANK]: [T]o the extent that dollars from the Kachkar DIP were used for the direct benefit of USA, that lien would be there. At the request of the Trustee, we agreed to defer the issue of priming at this time. |
| 4 | 8/16/07 Tr. at 17:16-18:9 | THE COURT: I'm satisfied with the language as proposed in the emergency order, that it satisfies certainly the language in the -- what we've been calling the Kachkar DIP and is appropriate under these circumstances. At the moment it's a little bit difficult I think to sort out what esoteric types of issues might arise at some later date.<br><br>But this is an emergency order and to the extent issues arise, the Court will have to consider them at the appropriate time.<br><br>. . .<br><br>[DR. KACHKAR]: [A]re you allowing people to reserve their rights to prove the benefit that we have conferred upon the Inyx USA Estate without DIP? I mean because basically now I have less collateral today than I had yesterday.<br><br>THE COURT: Well, that of course is the issue, but your rights are reserved to that -- on that point, yes. |
| 5 | 8/23/07 Tr. at 18:10-24 | [WESTERNBANK]: The first issue is the question of liens and as decided at the least [sic] hearing at the request of the trustee, the issue of priority of liens was put off to another day and if Your Honor reads the emergency order and the proposed [interim] order in this proceeding, [it] is exactly the same. . . . So, we put off the issue of lien priority. |
| 6 | 8/23/07 Tr. at 19:10-16 | [WESTERNBANK]: [I]f there has been money advanced by Kachkar for the direct benefit of USA, there is super priority administrative claim.<br><br>The lien issue has to be decided on another day, Your Honor, and that's what the emergency order and the proposed [interim] order proposes to do. It doesn't prime Mr. Kachkar in any way, shape or form. |

|   | **Transcript** | **Representation/Finding on the Record** |
|---|---|---|
| 7 | 8/23/07 Tr. at 22:8-11 | [WESTERNBANK]: [W]e don't dispute that if Kachkar dollars . . . [were] used to make the payroll, that's a direct benefit so we don't have a problem about that. But that's an issue, Your Honor, for another day. |
| 8 | 8/23/07 Tr. at 22:23-23:7 | THE COURT: How about the marshaling waiver? WESTERNBANK: Your Honor, the marshaling really goes to, where were the funds used. That's the way I see the marshaling, Your Honor. It doesn't affect the prepetition lien and Mr. Kachkar, Your Honor, is covered here. If, if in this proceeding . . . there's a demonstration that Kachkar dollars . . . went to the payroll, went to pay the electricity, we're not going to dispute that, . . . |
| 9 | 8/23/07 Tr. at 24:4-12 | THE COURT: The Court's concern is that there hasn't been a motion to modify an earlier order entered by this Court. I'm talking specifically about the DIP order in favor of Dr. Kachkar. And, there has to be a little bit of sanctity given to DIP orders, or people are not going to come into this court and lend money for fear that there will be a subsequent order that may erode the protections that they were previously afforded. That's really the Court's concern, primarily, I think. |
| 10 | 8/23/07 Tr. at 26:9-18 | THE COURT: Having read the propose[d] interim order, I am of the view that whatever rights Dr. Kachkar has on the -- essentially on the priming issue, are preserved. That's been so represented and I also observe that the stage is set for a fight at a later date as to the allocation of assets, the post petition assets, the proceeds, the cash proceeds from cash collateral and that those positions of the parties are not upset by the proposed order, and under the circumstances I am prepared to enter the interim order as presented by the Chapter 11 trustee here. |

| | **Transcript** | **Representation/Finding on the Record** |
|---|---|---|
| 11 | 8/23/07 Tr. at 29:17-30:8 | [DR. KACHKAR]:  The payment of proceeds provision is in Section . . . 9, and I just want to make it clear on the record that we would ask for the trustee to provide an accounting as suggested, to all parties before any proceeds of any sale are paid out to the bank so that we be sure that Dr. Kashkar's [sic] rights are truly preserved and that the language of this order can't be used as a sword to come back and harm Dr. Kashkar [sic] later in this case.<br><br>. . .<br><br>[TRUSTEE]:  That's acceptable, Your Honor. |
| 12 | 8/23/07 Tr. at 33:3-8 | [TRUSTEE]:  [I]t's our intention to share whatever information is relevant to that sale in terms of dollars and the distribution at that time.<br><br>THE COURT:  Okay.  And even in connection with whatever sale hearing there might, hopefully be, there would be an opportunity to raise that issue. |
| 13 | 9/7/07 Tr. at 5:10-6:11 | THE COURT:  Thank you, Ms. Daluz, and I think we will be discussing [the payment of proceeds provision], and I understand your points and your concerns [with respect to Dr. Kachkar's objections to the entry of the proposed final order] and obviously they're on the record at this time.<br><br>[TRUSTEE]:  And, Your Honor, just to point out, in the context of that, that the proposed final order does still contain the reservation of rights with respect to Dr. Kachkar --<br><br>THE COURT:  Yes.<br><br>[TRUSTEE]:  -- which is in paragraph . . . 12(j).<br><br>THE COURT:  Yes.<br><br>. . .<br><br>[TRUSTEE]:  So, I think that that probably addresses Ms. Daluz's concerns in part at least in terms of the way this is left, vis-à-vis, at the last hearing and what might happen down the road . . .<br><br>. . .<br><br>THE COURT:  Yes, and I did look for that, and that is in here . . . . |

| | **Transcript** | **Representation/Finding on the Record** |
|---|---|---|
| 14 | 9/7/07 Tr. at 22:7-17 | [WESTERNBANK]: The payment provision here, Your Honor, is the payment of the post-petition indebtedness. |
| | | THE COURT: Correct. |
| | | [WESTERNBANK]: And I assume, Your Honor, when we get to a sale motion, that Your Honor's going to set the terms of sale. |
| | | THE COURT: Yes. |
| | | [WESTERNBANK]: And there will be plenty of time to argue how the total proceeds of that sale are going, whether anything should be held by the Trustee and so forth. |
| 15 | 9/7/07 Tr. at 25:2-7 | THE COURT: [W]e have been through the issues raised by Dr. Kachkar previously, and my comments and rulings with regard to those objections have been stated on the record and apply to this document as well, and subject to a satisfactory budget, I am prepared to enter the order as submitted - or as proposed. |

Based on the foregoing fifteen (15) representations, together with the provisions added to the Westernbank DIP Order to preserve all parties rights with respect to the priority of liens granted by the Bankruptcy Court, and the Bankruptcy Court's ruling on the record that all sale proceeds should be escrowed while an accounting of post-petition collateral is performed, it is clear that the lien priority issues were expressly carved out for another day, and Dr. Kachkar's collateral position as described by the Kachkar DIP Order would be maintained. Despite this record, however, the Westernbank DIP Order belies any true certainty that the status quo has been maintained with respect to the First DIP Liens providing for liens on all *unencumbered property of the Debtor's estate,* and also on all *post-Petition Date property of the Debtors,* and calls into question whether the lead position afforded by the Kachkar DIP Order was indeed

preserved in contravention of the Bankruptcy Court's prior order, an order in which Dr. Kachkar justifiably relied and changed his position.

## **ARGUMENT**

### I.    **Summary of Argument**

First and foremost, this is a case of common sense.  There are two bankruptcy court orders which clearly contradict each other; each granting first-priority DIP liens on the same collateral.  Obviously, both orders cannot be given effect, and clearly only the first order should prevail:  the Kachkar DIP Order.  Dr. Kachkar relied on the sanctity of the Kachkar DIP Order when he agreed to provide the Kachkar DIP Financing to these Debtors, and the Bankruptcy Court's erroneous conclusion that the protections afforded under the Kachkar DIP Order are preserved and not upset by the subsequent Westernbank DIP Order is inapposite to the language of the Westernbank DIP Order itself, and the fifteen (15) representations of the parties, including Westernbank, on the record.  Time will pass and the written word in the Westernbank DIP Order will become far stronger than the record in this case, and those representations will fade.  Thus, in order to hold the parties to their words, i.e., that all rights are preserved, this Court must re-visit the Bankruptcy Court's decision to permit the Westernbank DIP Financing on the terms and conditions set forth in the Westernbank DIP Order.

Specifically, the entry of the Westernbank DIP Order inappropriately narrowed and redefined the collateral on which the First DIP Liens of Dr. Kachkar attached in limitation and contravention of the Kachkar DIP Order, and impermissibly effectuated a priming of the First DIP Liens on Inyx USA's Assets without Dr. Kachkar's consent and without provision of adequate protection in violation of Sections 363(c) and 364(d) of the Bankruptcy Code.  Absent a showing that Dr. Kachkar's collateral was otherwise adequately protected, the Court had an obligation as a matter of law to preserve the status quo with respect to the lead lien position to which Dr. Kachkar was granted under the Kachkar DIP Order -- a first priority lien on all unencumbered and all post-petition property of both Debtors, period.

21

Also, the Bankruptcy Court's grant of replacement liens, as adequate protection for the use of Cash Collateral, and to the extent of any diminution of value thereof, to Westernbank, to the same extent and validity and priority as Westernbank's prepetition liens, on all of Inyx USA's currently owned and after-acquired property, effectuated a priming of Dr. Kachkar's First DIP Liens in violation of Sections 363(c)(2), 363(e) and 364(d) of the Bankruptcy Code. The record demonstrates that there was no Westernbank Cash Collateral available to the Debtors' estates on the Petition Date. Accordingly, absent any evidence of the existence of any Cash Collateral from the prepetition collateral of Westernbank, and without Dr. Kachkar's consent and without provision of adequate protection, it was inappropriate for Westernbank to be granted a replacement lien, arguably at all, and certainly not priming Dr. Kachkar's First DIP Liens.

Further, the Westernbank DIP Order impermissibly extended Westernbank's prepetition security interest to post-Petition Date property in violation of Section 552 of the Bankruptcy Code. Specifically, the restriction imposed by Westernbank's definition of Dr. Kachkar's post-petition collateral effectively modified the terms of the Kachkar DIP Order allowing Westernbank to use after-acquired property of the estate, absent court authority or consent, and without any evidence tracing the funds claimed as proceeds of its prepetition security interest. Moreover, the Westernbank DIP Order contains a Payment From Proceeds Of Collateral provision which requires, *inter alia*, that all proceeds from the a sale of substantially all the assets of Inyx USA, or otherwise upon default, be paid *solely* to Westernbank, without any regard to the First DIP Liens. Such provision completely eviscerates the protections granted to Dr. Kachkar under the Kachkar DIP Order, the Bankruptcy Code and on the record of the hearings held before the Court.

22

Finally, in addition to the priming of and limitations upon Dr. Kachkar's First DIP Liens, the Westernbank DIP Order wrongfully granted waivers of (i) the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of Westernbank's Collateral; (ii) the "equities of the case" exception under Section 552(b) of the Bankruptcy Code, and (iii) the provision of Section 506(c) of the Bankruptcy Code, thereby further stripping the Bankruptcy Court of its ability to maintain the status quo and eroding further any protections that may have been afforded to Dr. Kachkar under the Kachkar DIP Order or to the Bankruptcy Court.

## II.  The Bankruptcy Court Erred As A Matter Of Law In Failing To Enforce The First DIP Liens Authorized By The Kachkar DIP Order And Entering The Westernbank DIP Without Modification Thereby Invalidating Its Earlier Approval Of The First DIP Liens To The Significant Prejudice Of Dr. Kachkar.

### A.  The Westernbank DIP Order Impaired the First DIP Liens By Defining the Collateral In Such A Way As To Limit The Collateral Itself

The entry of the Westernbank DIP Order, which inappropriately narrowed and redefined the collateral on which the First DIP Liens of Dr. Kachkar attached in limitation and contravention of Kachkar DIP Order, clearly constitutes reversible legal error. Certain provisions of the Westernbank DIP Order impair the First DIP Liens, because they define the collateral in such a way to limit the collateral itself, and impermissibly shift the burden to Dr. Kachkar to prove that post-petition property was acquired with proceeds of the Kachkar DIP Financing during an abbreviated time period. Such limitations are an impermissible modification of the Kachkar DIP Order, and are in violation of Sections 363, 364(d) and (e), and 552(a) of the Bankruptcy Code absent consent or adequate protection.

In particular, the Kachkar DIP Order provides Dr. Kachkar with liens upon *all unencumbered property* of the Debtor, and *all post-Petition Date property* of the Debtors (not including any causes of action arising under Chapter 5 of the Bankruptcy Code) pursuant to the general rule of Section 552(a) of the Bankruptcy Code. *See* Kachkar DIP Order, ¶¶ 5 and 7

23

(emphasis added). At no time prior to the entry of the Kachkar DIP Order did any party seek to limit the postpetition collateral in which Dr. Kachkar was granted a lien. However, the language of the Westernbank DIP Order states that Westernbank's Financing Liens are subordinate to the liens granted under the Kachkar DIP *solely* to the extent that postpetition property was acquired (i) *prior to the date of entry of the Westernbank DIP Order*, and (ii) from funds used for Inyx USA's direct benefit and paid under the Kachkar DIP Order, and *solely* on unencumbered property of the Debtor's estate *as of July 11, 2007*. *See* Westernbank DIP Order, ¶ 2(c) (emphasis added). It would then follow then that Westernbank's Financing Liens (as well as its replacement liens which are discussed more fully *infra*, III.C.) will enjoy first priority over all other unencumbered and postpetition property. Accordingly, the Bankruptcy Court erred in allowing the Trustee to modify the terms of the Kachkar DIP Order to use unencumbered and after-acquired property of the estate for the benefit of another secured lien holder, absent a motion to modify such order, and consent by Dr. Kachkar authorizing such use.

**B.**   **Dr. Kachkar Was Entitled to Rely on the Sanctity of the Kachkar DIP Order and the Entry of the Conflicting Westernbank DIP Order Demands Remand to the Bankruptcy Court to Enforce Its Prior Order**

After the Debtors were unsuccessful in obtaining unsecured financing to fund post-petition operations, Dr. Kachkar agreed to provide the Kachkar DIP Financing, in exchange for a super-priority administrative expense claim pursuant to Section 364(c)(1) of the Bankruptcy Code, and liens upon (i) *all unencumbered property of the Debtors' estates* not subject to prior valid, perfected first priority security interests of any party, and (ii) *all post-Petition Date property of the Debtors*, not including any causes of action arising under Chapter 5 of the Bankruptcy Code or proceeds thereof, pursuant to the Kachkar DIP Order entered by the Bankruptcy Court on July 12, 2007. *See* Kachkar DIP Motion, ¶¶ 11, 12; Kachkar DIP Order,

¶¶ 3, 5-7 (emphasis added). At no time prior to the entry of the Kachkar DIP Order did any party seek to limit the collateral in which Dr. Kachkar was granted a lien.

Dr. Kachkar relied on the sanctity of the Kachkar DIP Order when he agreed to provide the Kachkar DIP Financing to these Debtors, and the Bankruptcy Court's erroneous conclusion that the protections afforded under the Kachkar DIP Order are preserved and not upset by the subsequent Westernbank DIP Order is inapposite to the language of the Westernbank DIP Order itself. In particular, certain provisions of the Westernbank DIP Order conflict with the Kachkar DIP Order, and erode Dr. Kachkar's bargained for lien position, by:

- The imposition of a date limitation on the collateral to which the First DIP Liens attached. Specifically, the language of the Westernbank DIP Order states that Westernbank's Financing Liens are subordinate to the liens granted under the Kachkar DIP (i) *solely* to the extent that postpetition property was acquired *prior to the date of entry of the Westernbank DIP Order*; and (ii) *solely* on unencumbered property of the Debtor's estate *as of July 11, 2007*. The imposition of these date limitations completely undermines the collateral in which Dr. Kachkar was granted a lien, and effectively denies Dr. Kachkar any collateral to which his First DIP Liens attach. Indeed, the definition of unencumbered property clearly encompasses all such property existing on the Petition Date regardless of date, and no such date limitation was imposed in the Kachkar DIP Order.

- The requirement that the First DIP Liens attach to post-Petition Date property *solely* to the extent that such postpetition property was *acquired from funds used for Inyx USA's direct benefit*. This requirement -- that post-Petition Date property has to be acquired with proceeds of the Kachkar DIP Financing -- impairs the First DIP Liens, because it narrows and redefines the collateral on which the First DIP Liens attach in direct contravention of the Kachkar DIP Order. The Kachkar DIP Order grants a lien on unencumbered property and post-Petition Date property, period.

- The grant of replacement liens on postpetition collateral to the same extent and validity and priority as Westernbank's prepetition liens, thus effectuating a priming of the First DIP Liens.

Thus, as a matter of law, the Bankruptcy Court should have resolved the ambiguities created by the court's conflicting orders as to the priority of the First DIP Liens, and

should not have entered the Westernbank DIP Order on the grounds that Dr. Kachkar's rights were preserved.

> Section 105(a) of the Bankruptcy Code permits the bankruptcy court to:
>
>> issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Section 105 is among the sections which gave the bankruptcy court the power to issue the Kachkar and Westernbank DIP Orders. It is also this section which gives the bankruptcy court the power to enforce its valid orders. *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 266 (3d Cir. 1991). "For the integrity of the courts and the bankruptcy process, it is imperative that parties be able to rely on orders of the court. 'To hold otherwise would be to permit parties the option of deciding which orders to obey, or conversely to condemn parties to the instability of guessing which orders to abide and which to ignore.'" *Block v. Moss (In re Moss)*, 258 B.R. 391, 399 (Bankr. W.D. Mo. 2001) (quoting *Marshall v. Demos (In re Demos)*, 57 F.3d 1037, 1039 (11th Cir. 1995)) (holding that where the court erroneously extended the deadline for complaints objecting to discharge it was proper to allow the trustee's untimely complaint, given his reasonable reliance on the court's order).

On an appeal, the District Court is limited to determining whether or not the bankruptcy court's findings are clearly erroneous, or if the court committed an error of law. *See* Bankruptcy Rule 8013. "It is familiar appellate practice to remand causes for further proceedings without deciding the merits, where justice demands that course in order that some defect in the record may be supplied." *Ford Motor Co. v. NLRB*, 305 U.S. 364, 373 (1939). *See also In re Marcus Hook*, 943 F.2d at 262-63 (remanding the case to the bankruptcy judge where

there were "two bankruptcy court orders which clearly contradict[ed] each other"); *Alpern v. Lieb*, 38 F.3d 933, 936 (7th Cir. 1994) ("Instead of guessing at the district judge's meaning, we remand the case so that the judge can explain himself"); *Bennett v. Rainier Nat'l Bank (In re Bennett)*, 21 B.R. 440, 441-42 (B.A.P. 1st Cir. 1982) (where the bankruptcy court's orders were "brief and ambiguous" the appellate court remanded the case because "[r]endering an opinion under such circumstances place[d] [the appellate court] in a position of theorizing through speculation and guesswork what actually was decided by the bankruptcy court"). Thus, where two bankruptcy court orders clearly contradict each other, justice demands the remand of the case for further proceedings to the end that valid and essential findings may be made, or to take further action in accordance with the applicable law. *See In re Marcus Hook*, 943 F.2d at 266, 268.

Notably, at the center of the dispute in *In re Marcus Hook* were conflicting orders of the bankruptcy court which alternatively approved the sale of a piece of property, free of any liens, to the Purchaser's predecessor in interest, and then reimposed a lien after the sale had been made. 943 F.2d at 262. In that case, the Third Circuit reversed the District Court affirming the bankruptcy court's denial of an objection to a motion for final decree on the grounds that it had no jurisdiction, and ordered it to remand the case to the bankruptcy court for a development of a record, through an evidentiary hearing, if necessary, and for findings of fact in connection with the granting of a final decree. *Id.* at 268.

Similarly, *In re AMCO Insurance* involved a grant of substantive consolidation *nunc pro tunc* to the petition date, which invalidated an order of the bankruptcy court entered some 20 months earlier lifting the stay and allowing a creditor to pursue its state-court remedies, which had terminated in a settlement. *Wells Fargo Bank of Tex. N.A. v. Sommers (In re AMCO*

*Insurance)*, 444 F.3d 690, 692-93 (5th Cir. 2006). The Fifth Circuit, in vacating and remanding

the case for further proceedings, held that the bankruptcy court erred in applying substantive

consolidation *nunc pro tunc*, and found that,

> [t]he bankruptcy court, by granting the motion to lift the stay, and
> [the trustee], by agreeing to it, explicitly authorized and consented
> to [the creditor's] pursuit of state court remedies against [the
> debtor's sole owner, a non-debtor]. Because of this green light by
> the bankruptcy court, [creditor] expended its time and money to
> pursue the state court litigation until the suit concluded in the
> Limited Forbearance Agreement. Yet, when [the trustee] later filed
> his motion for substantive consolidation, which the bankruptcy
> court in turn granted, he then sought to undo what he had earlier
> specifically authorized by applying the consolidation of the estates
> *nunc pro tunc*. . . . We think it was a little late for this reversal of
> course.

*Id.* at 695. The Fifth Circuit further noted that "the abrogation of the earlier approval worked to

the significant prejudice of [the creditor]." *Id.* at 696. Specifically, the creditor relied on the

agreement of the trustee and the approval of the court when it lifted the stay, and made

investments of its time and money because of the bankruptcy court's specific approval. *Id.*

Finally, the Fifth Circuit held that the trustee "should have been more circumspect in requesting

such an order given his earlier approval of the litigation that resulted in settlement terms that

could not have been unexpected." *Id.*

      Here, similar to the facts in *In re Marcus Hook* and *In re AMCO Insurance*, this

case involves the grant of a subsequent financing order, which impairs and effectively invalidates

the First DIP Liens granted under the first financing order. More importantly, Dr. Kachkar relied

on the First DIP Liens granted under the Kachkar DIP Order, and extended postpetition credit to

the Debtor because of the Bankruptcy's Court specific approval and grant of the First DIP Liens.

Also, while the record is replete with representations that Dr. Kachkar's rights as to the lien

priority issues were preserved, the trustee, and indeed Westernbank, should have been more

"circumspect in requesting such an order" that they knew conflicted with the first lien position of

Dr. Kachkar, and that resulted in the erosion of the protections afforded to Dr. Kachkar, absent

his consent and without adequate protection.

Furthermore, the record suggests that the Bankruptcy Court was indeed concerned

that the Trustee or Westernbank had not made a motion to modify the earlier Kachkar DIP Order

to include the qualifying language now contained in the Westernbank DIP Order. 8/23/07 Tr. at

24:4-12. Despite these concerns, however, the Bankruptcy Court granted the entry of the

Westernbank DIP Order, without the modifications suggested by Dr. Kachkar's counsel

necessary to ensure that such order did not erode the protections that were previously afforded to

Dr. Kachkar, and to the significant prejudice of Dr. Kachkar, stating simply that,

> [h]aving read the [Westernbank DIP] [O]rder, I am of the view that
> whatever rights Dr. Kachkar has on the – essentially on the
> priming issue, are preserved. That's been so represented and I also
> observe that the stage is set for a fight at a later date as to the
> allocation of assets, the post petition assets, the proceeds, the cash
> proceeds from cash collateral and that those positions of the parties
> are not upset by the . . . order.

8/23/07 Tr. at 26:9-16.[19] Accordingly, this Court should reverse the Bankruptcy Court's grant of

the Westernbank DIP Financing on the terms and conditions set forth in the Westernbank DIP

Order, and remand this case in order to effect a resolution of the conflict between the

bankruptcy's court's two orders, and the obvious abrogation of the Bankruptcy Court's earlier

approval of the First DIP Liens to the significant prejudice of Dr. Kachkar.

---

[19]    Notwithstanding that the above comments were made during the Interim Hearing, the
record reflects that the Court's comments and rulings made during the each of the
hearings on the Westernbank DIP Financing with regard to issues raised by Dr.
Kachkar's applied equally to the Final Hearing and the entry of the Westernbank DIP
Order. *See* 9/7/07 Tr. at 25.

### III. The Bankruptcy Court Committed Legal Error When It Authorized the Westernbank DIP Financing on the Terms and Conditions Set Forth in the Westernbank DIP Order.

#### A. Any Liens Granted To Westernbank As Second DIP Lender Cannot Prime The First DIP Liens Against Debtors' Assets Without Consent or Provision of Adequate Protection Pursuant to 11 U.S.C. § 364(d)

The Bankruptcy Court committed reversible legal error, because it impermissibly effectuated a priming of the First DIP Liens on Inyx USA's assets without Dr. Kachkar's consent and without provision of adequate protection, two of the most basic principles underlying the Bankruptcy Code.

Bankruptcy Code Section 364 states that a trustee that is authorized to operate its business may obtain financing either in the ordinary course of business or outside the ordinary course of business. First, Bankruptcy Code Section 364(a) allows the trustee to obtain unsecured credit and to incur unsecured debt in the ordinary course of business. *See* 11 U.S.C. § 364(a). Second, after notice and a hearing, the Court may authorize a trustee to obtain financing outside the ordinary course of business. Bankruptcy Code Section 364(b) states that this financing may be allowable as an administrative expense under Bankruptcy Code section 503(b)(1). *See* 11 U.S.C. § 364(b). If the trustee is unable to obtain unsecured credit on this basis, Bankruptcy Code Section 364(c) allows the Court, again after notice and a hearing, to authorize the trustee to obtain credit or to incur debt that has priority over administrative expenses under Bankruptcy Code Section 503(b)(1); that is secured by a lien on unencumbered estate property; that is secured by a junior lien on encumbered estate property; or that is secured by priming a lien on encumbered estate property. *See* 11 U.S.C. §§ 364(c)(1)-(3) and 364(d).

A trustee seeking approval of postpetition financing under Section 364(c) of the Bankruptcy Code has the burden of establishing that (a) the trustee is unable to obtain unsecured credit elsewhere, (b) the proposed credit transaction is necessary to preserve the assets of the

estate, and (c) the terms of the proposed credit agreements are fair, reasonable, and adequate given the circumstances. *See, e.g., In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987). Moreover, once a lien has been authorized under Section 364(c), future extensions of credit cannot be afforded equal or senior lien priority without compliance with the more stringent standards of Section 364(d) which requires, among other things, "adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." 11 U.S.C. § 364(d). Specifically, Section 364(d) provides in relevant part:

> (1)    The Court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate **that is subject to a lien** *only if*
>
> —
>
> > (A)    the trustee is unable to obtain such credit otherwise; and
> >
> > (B)    *there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.*
>
> (2)    In any hearing under this subsection, the trustee has the burden of proof on this issue of adequate protection.

11 U.S.C. § 364(d) (emphasis added). Thus, in addition to the requirement of notice and a hearing, the only way the Trustee can grant a super-priority lien on estate assets that primes an existing lienholder's position is by showing that the lienholder is otherwise adequately protected and the Trustee has the burden of proof of the issue. *See* 11 U.S.C. § 364(d).

Here, the record is void of any showing by the Trustee that Dr. Kachkar is otherwise adequately protected, and Dr. Kachkar certainly did not consent. *See* 8/23/07 Tr. at 12:20-24. Accordingly, absent a showing that Dr. Kachkar's collateral was otherwise adequately protected, the Court had an obligation as a matter of law to preserve the status quo with respect

31

to the lead lien position to which Dr. Kachkar was granted under the Kachkar DIP Order -- a first

priority lien on all unencumbered and all post-petition property of both Debtors.[20]

**B.      The Westernbank DIP Impermissibly Extends Westernbank's Prepetition
         Security Interest To Post-Petition Date Property In Violation Of Section 552
         Of The Bankruptcy Code**

As of the Petition Date, Westernbank's prepetition lien did not automatically

attach to postpetition property of Inyx USA. *See* 11 U.S.C. § 552(a). However, by virtue of the

qualifying language contained in the Westernbank DIP Order, and contrary to the fifteen (15)

representations on the record that Dr. Kachkar's rights are preserved, the entry of the

Westernbank DIP Order limited the collateral on which Dr. Kachkar was granted a lien and

extended Westernbank's prepetition security interest to post-Petition Date property in violation

of Section 552 of the Bankruptcy Code.

Section 552(a) of the Bankruptcy Code provides that property acquired by an

estate postpetition is not subject to any lien resulting from a prepetition security agreement. 11

U.S.C. § 552(a). The invalidation of prepetition security interests in postpetition property was

designed to facilitate the debtor's "fresh start" by allowing the debtor to acquire postpetition

assets free of prepetition liabilities, and the ability to offer postpetition accounts receivable and

inventory as collateral for postpetition financing orders. *See In Re Photo Promotion Assoc., Inc.*,

53 B.R. 759, 763 (Bankr. S.D.N.Y. 1985) (citations omitted).

---

[20]      At a minimum, for Westernbank to have obtained the first lien priority position for its
         DIP loan, it should have been required to pay off the Kachkar DIP Financing. *See
         Farmworker Creditors v. Bland (In re Bland)*, 308 B.R. 109 (S.D. Ga. 2003) (affirming
         the approval of additional debtor in possession financing and granting second DIP lender
         priority over the other claims, with the stipulation that the first DIP lender's debt was
         paid in full with the new loan).

Section 552(b) extends the prepetition security interest to postpetition proceeds and profits from prepetition collateral to the extent provided for in the security agreement and by applicable nonbankruptcy law, subject to certain exceptions, including an "equities of the case" exception, allowing a court, after notice and a hearing, to order that the lien not extend to certain proceeds. 11 U.S.C. § 552(b). It must be emphasized that subsection (b)(1) creates an exception for proceeds, products, offspring or profits generated by prepetition collateral, *but not* for "after-acquired" property obtained by the debtor or the estate postpetition. *See* 124 Cong. Rec. H11,097-11,098 (daily ed. Sept. 28, 1978), *reprinted in Collier on Bankruptcy*, Vol. D, App. Pt. 4(f)(i), pp. 4-2446-4-2453 (15th ed. rev.); 124 Cong. Rec. S17,414 (daily ed. Oct. 6, 1978), *reprinted in Collier on Bankruptcy*, Vol. D, App. Pt. 4(f)(iii), pp. 4-2561-4-2564 (15th ed. rev.) ("Proceeds coverage, but not after acquired property clauses, are valid under title 11"); *see also Wolinsky v. Vermont Fed. Bank (In re Vermont Knitting Co.)*, 111 B.R. 464 (Bankr. D. Vt. 1990); *First Nat'l Bank of Lafayette v. Texas Tri-Collar, Inc. (In re Texas Tri-Collar, Inc.)*, 29 B.R. 724 (Bankr. W.D. La. 1983) (equitable grounds did not justify allowing the prepetition lien to attach to accounts receivable generated postpetition); *In re Gross-Feibel Co.*, 21 B.R. 648 (Bankr. S.D. Ohio 1982); *Citizens Fidelity Bank & Trust Co. v. All-Brite Sign Serv. Co. (In re All-Brite Sign Serv. Co.)*, 11 B.R. 409 (Bankr. W.D. Ky. 1981).

Further, the proceeds of postpetition assets do not automatically constitute the proceeds of a secured creditor's prepetition security interest in such assets. *See In re Skagit Pacific Corp.*, 316 B.R. 330, 336 (B.A.P. 9th Cir. 2004); *In re Qmect, Inc.*, No. 04-41044 T, 2006 Bankr. LEXIS 1478, *10 (Bankr. N.D. Cal. Jun. 2, 2006). But if the proceeds of the prepetition collateral were commingled with funds obtained from some other source, i.e., a loan made by a third-party postpetition, the secured creditor must present detailed evidence tracing

the funds claimed as proceeds. *Id. See also Qmect*, 2006 Bankr. LEXIS 1478, at *11.

Notwithstanding the above, however, the restriction imposed by Westernbank's definition of Dr.

Kachkar's post-petition collateral effectively modified the terms of the Kachkar DIP Order

allowing Westernbank to use after-acquired property of the estate, absent court authority or

consent, and without any evidence tracing the funds claimed as proceeds of its prepetition

security interest.

In particular, the limiting language contained in the Westernbank DIP Order with

respect to the First DIP Liens impermissibly shifts the burden to Dr. Kachkar to prove that such

postpetition property subject to the First DIP Liens was acquired with the proceeds of the

Kachkar DIP Financing prior to the date of the entry of the Westernbank DIP Order. *See*

Westernbank DIP Order, ¶ 2(c). The Kachkar DIP Order did not include the qualifying language

in the Westernbank DIP Order, and merely granted a lien on *all post-Petition Date property*

pursuant to the general rule of Section 552(a) of the Bankruptcy Code. *See* Kachkar DIP Order,

¶ 7. Thus, the Westernbank DIP Order impermissibly modified the terms of the Kachkar DIP

Order to use after-acquired property of the estate, absent a motion to modify such order, and

consent by Dr. Kachkar authorizing such use of the collateral for the benefit of another secured

lien holder.

## C.  The Bankruptcy Court Erred In Authorizing The Use Of Cash Collateral and Granting Westernbank Priming Replacement Liens Absent A Showing of Entitlement to Adequate Protection

Westernbank asserts that the Debtor is indebted to Westernbank in the

approximate amount of $140 million pursuant to that certain Loan and Security Agreement,

dated as of March 31, 2005, among Westernbank, Inyx, and the Debtor, and the documents and

instruments entered into in connection therewith (the "Prepetition Credit Agreement"), which

Prepetition Indebtedness is allegedly secured by first priority liens on substantially all of Inyx

USA's assets. *See* Kachkar DIP Motion, ¶ 8, Westernbank DIP Motion, ¶¶ (v) and 9. Pursuant to Article 9 of the Uniform Commercial Code (the "UCC"), therefore, Westernbank may have perfected first priority liens on all prepetition assets of the Debtor, and the grant of replacement liens on postpetition collateral to the same extent and validity and priority as Westernbank's prepetition liens, effectuated a priming of the First DIP Liens, essentially allowing Westernbank to "leap frog" over Dr. Kachkar to the first priority position on post-petition assets without regard to the First DIP Liens granted to Dr. Kachkar pursuant to the Kachkar DIP Order.

Accordingly, the Bankruptcy Court erred in granting Westernbank, pursuant to Sections 361 and 363 of the Bankruptcy Code, as adequate protection for the use of its Cash Collateral, and to the extent of any diminution in the value thereof, replacement liens to the same extent and validity and priority as Westernbank's prepetition liens, on all of Inyx USA's currently owned and after-acquired property, thus effectuating a priming of Dr. Kachkar's First DIP Liens, absent a showing that there was any Westernbank Cash Collateral available to the Debtors' estates on the Petition Date, and without Dr. Kachkar's consent and without provision of adequate protection in violation of Sections 363(c)(2), 363(e) and 364(d) of the Bankruptcy Code.

The Trustee's use of property of the Debtor's estate is governed by section 363 of the Bankruptcy Code. Section 363(c)(1) provides, in pertinent part, that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or hearing, and may use property of the estate in the ordinary course of business without notice and or a hearing.

11 U.S.C. § 363(c)(1). The Bankruptcy Code establishes a special requirement, however, regarding the trustee's use of "cash collateral," defined as "cash, negotiable instruments,

documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in

which the estate and an entity other than the estate have an interest and includes proceeds,

products, offspring, rents, or profits of property . . . , whether existing before or after the

commencement of the case." 11 U.S.C. 363(a).  Specifically, Bankruptcy Code Section

363(c)(2) permits the trustee to use, sell or lease cash collateral under subsection (c)(1) *only if*

either of two alternative circumstances exist:

> (A)    each entity that has an interest in such cash collateral
> *consents*; or
>
> (B)    the court, after notice and a hearing, authorizes such use,
> sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2) (emphasis added).

If the secured creditor does not consent to the use of its cash collateral, the Court

can authorize the trustee to use said collateral under Bankruptcy Code Section 363(c)(2)(B) if the

court determines that the debtor has provided "adequate protection" of the secured creditor's

interest in the cash collateral.  11 U.S.C. § 363(e).

> Section 361 of the Bankruptcy Coe provides that:
>
> [W]hen adequate protection is required . . . of an interest of an
> entity in property, such adequate protection may be provided by –
>
> (1)    requiring the trustee to make a cash payment or periodic
> cash payments to such entity, to the extent that the . . . use . . .
> under section 363 of this title, or any grant of a lien under section
> 364 of this title results in a decrease in the value of such entity's
> interest in such property;
>
> (2)    providing to such entity an additional or replacement lien to
> the extent that such . . . use . . . or grant results in the decrease in
> the value of such entity's interest in such property; or
>
> (3)    granting such other relief . . . as will result in the realization
> by such entity of the indubitable equivalent of such entity's interest
> in such property.

36

11 U.S.C. § 361. Neither section 361 nor any other provision of the Bankruptcy Code defines the nature and extent of the "interest in property" of which a secured creditor is entitled to adequate protection under section 361. However, the statute plainly provides that a qualifying interest demands protection only to the extent that the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C. §§ 361, 363(e). *See also General Electric Mortgage Corp. v. South Village, Inc. (In re South Village, Inc.)*, 25 B.R. 987, 989-90 & n.4 (Bankr. D. Utah 1982); O'Toole, Adequate Protection and Post-Petition Interest in Chapter 11 Proceedings, 56 Am. Bankr. L.J. 251, 263 (1982).

The phrase "value of such entity's interest," although not defined in the Bankruptcy Code, was addressed by the Supreme Court in the landmark *Timbers* decision, *United States Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988). For the meaning of "value of such entity's interest," the Supreme Court was guided by Section 506(a), which defines a creditor's allowed secured claim:

> The phrase 'value of such creditor's interest' in § 506(a) means 'value of the collateral.' H.R. Rep. No. 950-595, pp. 181, 356 (1977); *see also* S. Rep. No. 95-989, p. 68 (1978), U.S. Code Cong. & Admin. News, 1978 pp. 5787, 5854, 6141, 6312. We think the phrase 'value of such entity's interest' in § 361(1) and (2), when applied to secured creditors, means the same.

*Id.* at 630. *Timbers* teaches that a secured creditor is entitled to "adequate protection" only against diminution in the value of the collateral securing the creditor's allowed secured claim. Under *Timbers*, therefore, where the "value of the collateral" is not diminishes by its use, sale, or lease, the creditor's interest is adequately protected. This conclusion flows directly from the equivalency of "value of such entity's interests" with "value of the collateral."

Further, a trustee seeking approval of postpetition financing under § 364(c) of the Bankruptcy Code (discussed more fully *supra* at III.A.) has the burden of establishing, *inter alia*,

37

that the terms of the proposed credit agreement are *fair, reasonable, and adequate given the circumstances. See In re Crouse Group,* 71 B.R. at 549. Here, the sole reason that was offered for the priming of the First DIP Liens by Westernbank's replacement liens was for the post-petition use of its Cash Collateral. *See* Westernbank DIP Motion, ¶ 41. However, the only evidence in the record was on the first day hearing when Mr. Carrigan, the Vice President and General Manager of Inyx USA, testified that there was no cash collateral, and that there wouldn't be any cash proceeds of prepetition accounts receivable for a very long time, at least until early February 2008, if at all. *See* 7/11/07 Tr. at 44. Indeed, by definition, pursuant to Section 552(a), Westernbank had no post-petition liens on the property subject to the First DIP Liens. As such, it was inappropriate for Westernbank to be granted a replacement lien based on use of Cash Collateral, arguably at all, effectuating a priming of Dr. Kachkar's First DIP Liens.

The Trustee cited *Anchor Savings Bank v. Sky Valley, Inc.,* 99 B.R. 117 (N.D. Ga. 1989), in support of his argument that Dr. Kachkar should be deemed to have "consented" to the priming of his liens by Westernbank's replacement liens. *See* Westernbank DIP Motion, ¶ 42. In *Anchor Savings*, the Court was asked to decide if a secured lender's equity cushion alone could provide adequate protection of its interests. Specifically, an oversecured prepetition lenders' liens were primed by the superpriority lien of an undersecured junior lien holder who was providing the debtor new money from DIP financing. The oversecured lender objected arguing, presumably on behalf of other non-objecting junior lien holders, that 364(d) financing was impermissible because the debtor had no equity in its assets (after giving effect to all claims of secured creditors). The court found that the oversecured lender lacked standing to argue that non-objecting junior lien holders were not adequately protected, and that the junior lien holders

38

had "tacitly consented" to the priming superpriority lien by not objecting themselves. 99 B.R. at 122.

Because Dr. Kachkar did not seek to prime Westernbank's prepetition lien does not translate into consent, whether tacit or otherwise, to the priming of his First DIP Liens on postpetition and unencumbered property. Again, by definition, pursuant to Section 552(a), Westernbank had no prepetition lien on such property and this issue has only arisen by virtue of Westernbank receiving a replacement lien under the Westernbank DIP Order. The record is clear that Dr. Kachkar has made and continues to make affirmative efforts to protect his First DIP Liens by requiring Inyx USA to provide for such liens in the Kachkar DIP Order, by objecting, strenuously, to the Westernbank DIP Order, and by the filing of this Appeal. Accordingly, based on the record, the Bankruptcy Court's grant of replacement liens with respect to the Debtor's use of Westernbank's "Cash Collateral" having the same priority as the Prepetition Liens and accordingly priming the liens under the Kachkar DIP Order to the extent of any property of the Debtor's estate that was unencumbered on the Petition Date was clearly erroneous, absent any evidence of the existence of any Cash Collateral from the prepetition collateral of Westernbank.

**IV.    The Bankruptcy Court Abused Its Discretion and Erred as a Matter of Law in Granting Waivers of (i) the Equitable Doctrine of "Marshaling" or Any Other Similar Doctrine With Respect to Any of Westernbank's Collateral; (ii) The "Equities of the Case" Exception under Section 552(b) of the Bankruptcy Code As It Applies to Westernbank With Respect To Proceeds, Product, Offspring or Profits of Any Its Collateral; and (iii) the Provision of Section 506(c) of the Bankruptcy Code.**

In addition to the priming of and limitations upon Dr. Kachkar's First DIP Liens, the Westernbank DIP Order further stripped the Bankruptcy Court of its ability to maintain the status quo and eroded further any protections that may have been afforded to Dr. Kachkar under the Kachkar DIP Order or the Bankruptcy Code. Specifically, this matter presents complex

issues -- dueling DIP liens, priming replacement liens, and DIP financing between (previously) jointly administered debtors -- and where there are two DIP lenders with competing orders, and no agreement between the parties as to the priority of liens, the waivers granted by the Bankruptcy Court were particularly inappropriate in view of the make-up of this case.

### A.    The Grant of a Waiver of the Equitable Doctrine of Marshalling Is an Impermissible Modification of the Rights of Third Parties

The Bankruptcy Court erred as a matter of law in granting a waiver of the equitable doctrine of marshaling, which was an impermissible modification of the rights of third parties. In view of the uncertainty that arises by virtue of the existence of two postpetition loans secured by the same collateral, Westernbank should not have been granted a waiver of the right of any party to seek a marshaling of Westernbank's Collateral. Indeed, according to one court, in refusing to approve an order which provided that the DIP Lender would "not be subject to the equitable doctrine of 'marshaling' or any other similar doctrine with respect to any of the Collateral,", the court stated that "equitable principles like marshaling have potential application to every secured indebtedness. While the debtor may seek authority to waive its own rights, it cannot waive the marshaling rights of parties who have not consented and may not even have received notice of the debtor's motion." *In re The Colad Group, Inc.*, 324 B.R. 208, 223-224 (Bankr. W.D.N.Y. 2005).

### B.    The Waiver of the "Equities of the Case" Clause in Section 552(b) Was An Abuse of Discretion of the Bankruptcy Court

The waiver of the "equities of the case" exception under Section 552(b) of the Bankruptcy Code with respect to proceeds, products, offspring or profits of any of Westernbank's collateral was inappropriate and constitutes an abuse of discretion of the Bankruptcy Court. Notwithstanding the application of Section 552(b)(1), the continued validity of a security interest in proceeds, products, offspring or profits of prepetition collateral under

40

Section 552(b)(1) can be limited or eliminated if ordered by the court "based on the equities of the case." 11 U.S.C. § 552(b)(1). The "equities of the case" language is a legislative attempt to address those instances where expenditures of the estate enhance the value of proceeds, which, if not adjusted, would lead to an unjust improvement of the secured party's position. *In re Three Partners, Inc.*, 199 B.R. 230, 239 (Bankr. D. Mass 1995) (citing *New Hampshire Bus. Dev. Corp. v. Cross Baking Co. (In re Cross Baking Co.)*, 818 F.2d 1027, 1033 (1st Cir. 1987). Thus, it is intended to, in appropriate cases, afford unsecured creditors the opportunity to surcharge collateral of secured creditors, and it is not an opportunity for a creditor without a postpetition lien to obtain one. *Id.*

Additionally, the Section 552(b) "equities of the case" provision grants the court broad equitable powers in determining the extent of the security interest a creditor may be allowed to maintain postpetition, and in order to prevent secured creditors from receiving windfalls, allows bankruptcy courts broad discretion in balancing the interests of secured creditors against the general policy of the Bankruptcy Code. *Dobin v. Presidential Fin. Corp. of Del. Valley (In re Cybridge Corp.)*, 304 B.R. 681, 690 (Bankr. D.N.J. 2004). *See also Great West Life & Annuity Assur. Co. v. Parke Imperial Canton, Ltd.*, 177 B.R. 843, 855 (N.D. Ohio 1994) ("The purpose of the equity exception is to prevent a secured creditor from reaping benefits from collateral that has appreciated in value as a result of the trustee's/debtor-in-possession's use of other assets of the estate . . . to cause the appreciated value.") (citations omitted).

According to one court, Sections 552(a) and (b) together would result in the need to wrestle with the sometimes intractable distinction between proceeds and after-acquired property, were it not for the ability provided by the explicit language of subsection (b), to look to

41

the "equities of the case." *In re Package Design & Supply Co., Inc.*, 217 B.R. 422, 425 (Bankr. W.D.N.Y. 1998). "Together with 11 U.S.C. § 506(c), that ability helps to assure that those who enhance the value of collateral during a bankruptcy case will not lose out to a lien on the 'proceeds' thus enhanced." *Id.* (stating that Section 552(b) subordinates itself to the provisions of § 506(c) and 506(c) helps to define the application of the "equities" clause). Thus to succeed in following its collateral into a reorganization case under § 552(b), the prepetition lienor must be able to trace its proceeds. It cannot, however, enjoy the value added by others, without the limit established by § 506(c) and the "equities" clause. *Id.*

Moreover, Section 552(b) states the rule regarding the postpetition treatment of proceeds and permits an adjustment of a creditor's security interest in proceeds *if the equities of the case demand it.* It is not a general grant of equitable power permitting a court to correct a secured creditor's errors by recognizing a security interest in non-proceeds. *In re Cross Baking*, 818 F.2d at 1032-33. Indeed, it was impermissible to grant a waiver of the "equities of the case" exception to provide a benefit to Westernbank, when the Trustee uses assets of the estate, for example, to finish incomplete prepetition inventory, or preserve or dispose of collateral. Moreover, the court's equity analysis may include considerations of any improvement or decline in value of the proceeds and whether this improvement or decline is caused by any party, or otherwise. *See In re Package Design & Supply Co.*, 217 B.R. 422 (Bankr. W.D.N.Y. 1998) (discussing the effect of value, added by debtor or unsecured creditors, on secured lender's asserted security in postpetition proceeds); *Wood v. LA Bank (In re Wood)*, 190 B.R. 788 (Bankr. M.D. Pa. 1996) (finding security interest did not attach to increase in value of the collateral where value derived solely from debtor's effort). Accordingly, given the fact that there may be tracing concerns with the Westernbank DIP Order's limitation on Dr. Kachkar's collateral, the

42

Bankruptcy Court abused it discretion and erred as a matter of law in denying it the ability to examine the equities of the case.

### C.    The Bankruptcy Code Mandates That Secured Creditors Be Charged With The Costs and Expenses of Preserving Their Collateral

In contrast to the mandate of the Bankruptcy Code that secured creditors be charged with the costs and expenses of preserving their collateral under Bankruptcy Code Section 506(c), the Westernbank DIP Order improperly precludes the Trustee or other parties in interest from charging Westernbank with the costs and expenses of preserving or disposing of their collateral by granting a Section 506(c) waiver. Dr. Kachkar is cognizant of the Supreme Court's decision in *Hartford Underwriters Inc. Co. v. Union Planters Bank N.A.*, 530 U.S. 1 (2000), which held that Section 506(c) does not provide an administrative creditor an independent right to seek payment of its claim from a secured creditor. However, that case recognizes, as a threshold matter, that a Section 506(c) waiver may only be made by a debtor in the furtherance of its fiduciary duties. Here, no adequate explanation has been provided as to how this waiver, in this case, furthers the Trustee's fiduciary duties to creditors. As such, the waiver should have been struck from the Westernbank DIP Order.

Further, Bankruptcy Local Rule 4001-2(a)(i)(C) prohibits the Debtors' from waiving their Section 506(c) rights absent "justification for such a provision." Again, the record is devoid of any justification for this waiver and the request for a 506(c) waiver should have been denied as a matter of law.

**V.    The Payment of Proceeds Provision Deprives Dr. Kachkar of the Protections Granted to Dr. Kachkar under the Kachkar DIP Order, the Bankruptcy Code, and on the Record of the Court.**

The Bankruptcy Court concluded that notwithstanding entry of the Westernbank DIP Order, Dr. Kachkar's rights are preserved, and that no proceeds would leave the estate without an accounting. Specifically, the Bankruptcy Court found that:

> I am of the view that whatever rights Dr. Kachkar has on the -- essentially the priming issue, are preserved. That's been so represented and I also observe that the stage is set for a fight at a later date as to the allocation of assets, the post-petition assets, the proceeds, the cash proceeds from cash collateral, and that those positions of the parties are not upset by the . . . order, . . .

8/23/07 Tr. at 26:9-16. Unfortunately, the language of the Westernbank DIP Order belies that conclusion. The Westernbank DIP Order contains a Payment from Proceeds of Collateral provision which requires, *inter alia*, that all proceeds from a sale of substantially all the assets of Inyx USA, or otherwise upon default, be paid *solely* to Westernbank, without any regard to the First DIP Liens. *See* Westernbank DIP Order, ¶ 9. Such provision completely eviscerates the protections granted to Dr. Kachkar under the Kachkar DIP Order, the Bankruptcy Code and on the record of the hearings held before the Court.

Moreover, both Westernbank and the Trustee vehemently opposed revising the Westernbank DIP Order to provide that no proceeds would be paid until an accounting, and were reluctant to include the concept in the Westernbank DIP Order or in subsequent DIP orders in this case to fix the discrepancies highlighted by Dr. Kachkar or represented on the record. *See* 9/7/07 Tr. at at 5:10-6:11; 22:7-17. However, such opposition is contrary to the repeated assurances on the record that the Westernbank DIP Order maintains the status quo, and begs the question as to whether Dr. Kachkar's rights are truly preserved.

44

## CONCLUSION

Dr. Kachkar is entitled to first priority secured post-petition liens upon (i) all unencumbered property of the Debtors' estates not subject to prior valid, perfected first priority security interests of any party, and (ii) all post-Petition Date property of the Debtors, not including any causes of action arising under Chapter 5 of the Bankruptcy Code or proceeds thereof in accordance with the Kachkar DIP Order. Westernbank has been playing fast and loose with the Bankruptcy Court throughout the Debtors' bankruptcy cases -- making empty allegations, and despite repeated assurances to the Court and Dr. Kachkar on the record that Westernbank had no intentions of priming Dr. Kachkar's First DIP Liens, the resulting Westernbank DIP Order negotiated by Westernbank with the Trustee, did just that. Many issues could be resolved, and without harm to the Trustee or the estate, if the Westernbank DIP Order was revised in a manner consistent with the representations on the record. Accordingly, based on the foregoing, Dr. Kachkar respectfully requests that this Court reverse the Bankruptcy Court's grant of the Westernbank DIP Financing on the terms and conditions set forth in the Westernbank DIP Order, and remand the case to the Bankruptcy Court with instructions that it resolve the conflict of the two financing orders, consistent with objections raised herein and as set forth in the proposed blackline provided by Dr. Kachkar in the record (*see* Exhibit B to Renewed Objection), to preserve the lead position afforded by the Kachkar DIP Order, that order in which Dr. Kachkar has relied and changed his position.

Dated: March 25, 2008
Wilmington, Delaware

Respectfully submitted,


/s/ Leslie C. Heilman
Tobey M. Daluz (No. 3939)
Leslie C. Heilman, Esquire (No. 4716)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
Email: daluzt@ballardspahr.com
        heilmanl@ballardspahr.com

Attorneys for Appellant, Dr. Jack Kachkar

## CERTIFICATE OF SERVICE

I, Leslie C. Heilman, Esquire, hereby certify that on this 25th day of March, 2008,

I caused a true and correct copy of the Brief of Appellant Dr. Jack Kachkar, to be served on the

addressees listed on the attached service list in the manner indicated.

Dated:  March 25, 2008
Wilmington, Delaware

/s/ Leslie C. Heilman
Leslie C. Heilman, Esq. (No. 4716)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP

## VIA HAND DELIVERY

Bruce Grohsgal, Esquire
Pachulski Stang Ziehl & Jones LLP
919 N. Market Street, 17th Floor
Wilmington, DE 19801
(Counsel for Stephen S. Gray,
Chapter 11 Trustee for Inyx USA, Ltd.)

Richard M. Beck, Esquire
Christopher A. Ward, Esquire
Klehr Harrison Harvey Branzburg
 & Ellers LLP
919 N. Market Street, Suite 1000
Wilmington, DE 19801
(Counsel for Official Committee of Unsecured Creditors)

Richard L. Schepacarter, Esquire
Officer of the United States Trustee
J. Caleb Boggs Federal Building
824 Market Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
(Counsel for the United States Trustee)

Francis A. Monaco, Esquire
Steven K. Kortanek, Esquire
Kevin J. Mangan, Esquire
Womble Carlyle Sandridge & Rich, PLLC
222 Delaware Avenue, Suite 1501
Wilmington, DE  19801
(Counsel for Westernbank Puerto Rico)

## VIA FIRST CLASS MAIL

Harvey P. Miller, Esquire
Weil, Gotshall & Manges LLP
767 Fifth Avenue
New York, NY 10153
(Counsel for Westernbank Puerto Rico)