# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EXAERIS, INC., and<br>INYX USA, LTD.,[1] | Case No. 07-10887 (KG)<br>Case No. 07-10888 (KG) |
| Debtors. | |
| DR. JACK KACHKAR, | |
| Appellant | Civil Action No. 07-621 (GMS) |
| v. | |
| WESTERNBANK PUERTO RICO,<br>STEPHEN S. GRAY, Chapter 11<br>Trustee of INYX USA, LTD., | |
| Appellees. | |

## BRIEF OF APPELLEE
## WESTERNBANK PUERTO RICO

Harvey R. Miller
Michele J. Meises
Michael J. Walsh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Francis A. Monaco, Esq. (DE Bar No. 2078)
Steven K. Kortanek, Esq. (DE Bar No. 3106)
WOMBLE CARLYLE SANDRIDGE &
RICE, PLLC
222 Delaware Avenue, Suite 1501
Wilmington, Delaware 19801
Telephone: (302) 252-4363
Facsimile: (302) 661-7728

*Attorneys for Westernbank Puerto Rico*

Dated: April 14, 2008

---

[1] The Exaeris, Inc. and Inyx USA, Ltd. bankruptcy cases were jointly administered at the outset of their cases at Bankruptcy Case No. 07-10887. However, on December 6, 2007, the Bankruptcy Court vacated the order for joint administration.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................... 1

ISSUES PRESENTED ................................................................................................... 1

STANDARD OF APPELLATE REVIEW ..................................................................... 2

STATEMENT OF THE CASE ....................................................................................... 2

    A.    Background .............................................................................................. 2

    B.    The Kachkar Interim Order .................................................................... 3

    C.    Appointment of the Trustee and Subsequent Westernbank
           Financing ................................................................................................ 5

ARGUMENT ................................................................................................................ 12

    I.    KACHKAR'S APPEAL FROM THE FINAL ORDER IS MOOT ......... 12

    II.    THE FINAL ORDER DOES NOT REPRESENT A PLAIN
        ERROR OF LAW OR ABUSE OF DISCRETION BY THE
        BANKRUPTCY COURT ...................................................................... 16

           A.    Kachkar's Non-Prioritized Liens on Unencumbered
                Property of Inyx USA Are Not Affected by the Final Order ....... 18

           B.    The Final Order Does Not Provide for Priming of
                Kachkar's Non-Prioritized Liens on Postpetition Property
                Acquired by Inyx USA from Proceeds of the Kachkar DIP
                Financing ........................................................................... 18

           C.    Westernbank Was Entitled to Adequate Protection in the
                 Form of Replacement Liens for the Use of Its Cash
                 Collateral .......................................................................... 21

           D.    The Trustee's Waiver of the Doctrine of Marshaling and
                Certain Provisions of the Bankruptcy Code Was
                Appropriate and Authorized by the Bankruptcy Court as a
                Necessary Condition of the Trustee's Financing ....................... 24

                1.    The Waiver of the Equitable Doctrine of
                      Marshaling Was Required as a Condition of the
                      Trustee's Financing ................................................. 25

                  2.    The "Equities of the Case" Exception to Section
                      552(b) Is Typical in Postpetition Secured Financing
                      Under Section 364 ................................................... 26

                  3.    The Waiver by the Trustee of His Section 506(c)
                      Property Rights Was Proper in the Circumstances
                      and Consistent With Postpetition Secured Financing
                      Under Section 364 ................................................... 28

    CONCLUSION ................................................................................................. 31

i

# TABLE OF AUTHORITIES

## <u>CASES</u>

**Page(s)**

*In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986)..........................2

*In re American Home Mortgage Holdings, Inc.*, Ch. 11 Case No. 07-11047 (CSS) (Bankr. D. Del. Nov. 28, 2007) ..........................................................................................24

*In re Ames Department Stores, Inc.*, 115 B.R. 34 (Bankr. S.D.N.Y. 1990) ......................17

*In re Anderson*, 137 B.R. 819 (Bankr. D. Colo. 1992).......................................................27

*Boullioun Aircraft Holding Co. v. Smith Management (In re Western Pacific Airlines, Inc.)*, 181 F.3d 1191 (10th Cir. 1999)..............................................................................15

*In re Buffets Holdings Inc.*, Ch. 11 Case No. 08-10141 (MFW) (Bankr. D. Del. Feb. 22, 2008).............................................................................................................................24

*Burchinal v. Central Washington Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484 (9th Cir. 1987) .............................................................................................................................14

*Debbie Reynolds Management Co. v. Calstar Corp. (In re Debbie Reynolds Hotel & Casino, Inc.)*, 255 F.3d 1061 (9th Cir. 2001) .................................................................29-30

*In re Domain, Inc.*, Ch. 11 Case No. 08-10132 (PJW) (Bankr. D. Del. Feb 14, 2008).....24

*In re EDC Holding Co.*, 676 F.2d 945 (7th Cir. 1982)........................................................15

*In re Florida Western Gateway, Inc.*, 147 B.R. 817 (Bankr. S.D. Fla. 1992) ...................16

*In re Foamex International, Inc.*, Ch. 11 Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005) ............................................................................................................................25

*Gillman v. Ford (In re Ford)*, 492 F.3d 1148 (10th Cir. 2007)..........................................28

*Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000)..............................................................................................................................29-30

*In re HomeBanc Mortgage Corp.*, Ch. 11 Case No. 07-11079 (KJC) (Bankr. D. Del. Sept. 13, 2007)..............................................................................................................................24

*Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351 (7th Cir. 1990)......................................................................................................................................14

*Meridian Bank v. Alten*, 958 F.2d 1226 (3d Cir. 1992).........................................................2

TABLE OF AUTHORITIES
(continued)

Page(s)

*In re New Century TRS Holdings*, Ch. 11 Case No. 07-10416 (KJC) (Bankr. D. Del.
May 7, 2007)..............................................................................................................25

*Resolution Trust Corp. v. Swedeland Development, Inc. (In re Swedeland Development,
Inc.)*, 16 F.3d 552 (3d Cir. 1994)...........................................................................1, 13, 14

*In re Sharper Image Corp.*, Ch. 11 Case No. 08-10322 (KG) (Bankr. D. Del. Mar. 7,
2008)..........................................................................................................................24

*In re The Colad Group, Inc.*, 324 B.R. 208 (Bankr. W.D.N.Y. 2005)..............................25

*In re Tweeter Home Entertainment Group*, Ch. 11 Case No. 07-10787 (PJW)
(Bankr. D. Del. June 29, 2007)................................................................................24-25

*Unsecured Creditors Committee v. First National Bank & Trust Co. (In re Ellingsen
MacLean Oil Co.)*, 834 F.2d 599 (6th Cir. 1987).............................................................15

*Weinstein, Eisen & Weiss, LLP v. Gill (In re Cooper Commons, LLC)*, 430 F.3d
1215 (9th Cir. 2005), *cert. denied*, 546 U.S. 1174 (2006).................................................15

*White Rose Food v. General Trading Co. (In re Clinton St. Food Corp.)*, 170 B.R.
216 (S.D.N.Y. 1994)...............................................................................................15-16

## STATUTES AND RULES

11 U.S.C. § 361 .........................................................................................................22

11 U.S.C. § 361(2).........................................................................................21, 21 n.5, 22-23

11 U.S. C. § 362 ............................................................................................................6

11 U.S.C. § 363 .......................................................................................................6, 20

11 U.S.C. § 363(a).......................................................................................................20

11 U.S.C. § 363(e).......................................................................................................23

11 U.S.C. § 364 .............................................................................................2, 5, 6, 12, 15, 17

11 U.S.C. § 364(c)(1) .....................................................................................................4

**TABLE OF AUTHORITIES**
(continued)

Page(s)

11 U.S.C. § 364(c)(2) ..............................................................................................6

11 U.S.C. § 364(c)(3) ..............................................................................................6

11 U.S.C. § 364(d) ...................................................................................................6

11 U.S.C. § 364(e) ......................................................................1, 5, 9, 11-16, 31

11 U.S.C. § 506(c) .......................................................................... 24-25,28-31

11 U.S.C. § 552 .....................................................................................................22

11 U.S.C. § 552(a) .......................................................................................22, 22 n.6

11 U.S.C. § 552(b) ...............................................................19, 20, 24, 26-28

11 U.S.C. § 552(b)(2) ...........................................................................19, 19 n.4

Fed. R. Bankr. P. 1015 ...........................................................................................5

Fed. R. Bankr. P. 8013 ...........................................................................................2

## PRELIMINARY STATEMENT

Appellant, Jack Kachkar, appeals from a final order of the United States Bankruptcy Court for the District of Delaware dated September 7, 2007 that authorized Stephen S. Gray, as the chapter 11 trustee for Inyx USA, Ltd., to obtain credit and borrow from Westernbank Puerto Rico an aggregate amount of $3,373,100 for the period August 15, 2007 through and including November 30, 2007, pursuant to section 364 of the Bankruptcy Code. Pursuant to the final order, Westernbank in good faith extended credit and disbursed the trustee's financing in accordance with the provisions of the final order. The trustee used the monies disbursed by Westernbank for the purposes specified in the final order.

Appellant objected to the final order, but did not seek a stay of the final order and its implementation. Pursuant to section 364(e) of the Bankruptcy Code, in circumstances of an authorized fully disbursed loan, the validity of the liens, priorities and protections granted to Westernbank pursuant to the final order may not be affected by this appeal. The Kachkar appeal is moot and should be dismissed. *Resolution Trust Corp. v. Swedeland Dev., Inc. (In re Swedeland Dev., Inc.)*, 16 F.3d 552, 562-63 (3d Cir. 1994).

## ISSUES PRESENTED

Does section 364(e) of the Bankruptcy Code moot an appeal from a final order of the Bankruptcy Court authorizing an extension of credit in good faith to a trustee that is fully disbursed and used by the trustee?

In the circumstances of authorized and disbursed good faith extensions of credit to a chapter 11 trustee which were not stayed, may this Court affect the validity of

any debts incurred by the chapter 11 trustee or the priority, liens and protections granted to the lender?

Did the Bankruptcy Court commit a plain error of law or an abuse of discretion in authorizing the chapter 11 trustee of Inyx USA, Ltd. to incur secured debt obligations pursuant to section 364 of the Bankruptcy Code and to expend the proceeds of the credit extended in accordance with the provisions of the final order?

## STANDARD OF APPELLATE REVIEW

A bankruptcy court's findings of fact are not to be set aside unless clearly erroneous. *See* Fed. R. Bankr. P. 8013. Conclusions of law are subject to *de novo* review. *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986). Mixed questions of law and fact are broken down into their respective components, and the appropriate standard is applied to each component. *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992).

## STATEMENT OF THE CASE

The facts pertinent to the instant appeal are set forth in the findings of fact made by the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in the Kachkar Interim Order and the Final Order (as each is defined below) and are incorporated herein as if fully and at length set forth. Particular salient facts are set forth below, and other relevant facts will be referred to in connection with argument.

A.    **Background**

On July 2, 2007 (the "Petition Date"), Exaeris, Inc. ("Exaeris"), a Delaware corporation, and its alleged affiliate, Inyx USA, Ltd. ("Inyx USA," and together with Exaeris, the "Debtors"), an Isle of Man corporation, each commenced a

voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this District. D-1 ¶ 3.[1]  The chapter 11 cases were referred to Bankruptcy Judge Kevin Gross.  The declaration in support of the Debtors' first day motions and applications, dated July 6, 2007, was executed by Jack Kachkar ("Kachkar"), as the Chief Executive Officer and Chairman of Inyx, Inc., a non-debtor entity that was the parent corporation of Exaeris and Inyx USA.  *Id.* ¶¶ 5, 12 n.4.

As of the Petition Date, Inyx USA was indebted to Westernbank Puerto Rico ("Westernbank") in an amount in excess of $140 million.  D-6 ¶ 9; CD-1 ¶ 17; CD-2 ¶ 16; CD-4 ¶ 3.  The repayment of the indebtedness from Inyx USA to Westernbank was collaterally secured, *inter alia*, by perfected, first priority liens on all of the assets of Inyx USA.  D-1 ¶ 8; CD-1 ¶¶ 15-16; CD-2 ¶¶ 14-16; CD-4 ¶ 3.

On the Petition Date, Inyx USA operated a pharmaceutical plant in Manati, Puerto Rico, producing pharmaceutical products.  D-1 ¶ 7; D-6 ¶ 7; CD-2 ¶ 5.  The operations of Inyx USA were inadequate to service the indebtedness to Westernbank or to remain current in respect of its unsecured obligations.  D-1 ¶ 9.

**B.    The Kachkar Interim Order**

On July 3, 2007, Exaeris and Inyx USA, as debtors in possession, moved the Bankruptcy Court for authority pursuant to section 364 of the Bankruptcy Code to obtain credit from Kachkar in an amount up to $2 million.  *Id.* ¶ 12.

---

[1] All references to Appellant's Designation of Items to be Included in the Record on Appeal shall be referred to herein as "D-__."  All references to Appellees' Counter-Designation of Record and Counter-Statement of Issues shall be referred to herein as "CD-__."

On July 11, 2007, the Bankruptcy Court entered an interim order (the "Kachkar Interim Order") authorizing Exaeris and Inyx USA, as debtors in possession, to borrow up to $2.1 million, to be advanced by Kachkar at his discretion (the "Kachkar DIP Financing"). D-2 ¶ 3.

The Kachkar Interim Order provides, *inter alia*:

> 5.    As a condition for the Debtors' use of the DIP Financing, the Debtors are authorized to grant and by this Interim Order shall be deemed to have granted to Jack Kachkar liens upon all unencumbered property of the Debtors' estates not subject to prior valid, perfected first priority security interests of any party, including those of Westernbank Puerto Rico.

> 6.    In addition, the Debtor [sic] is authorized to and hereby does grant to Jack Kachkar a superpriority, administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code.

> 7.    As a further condition for the Debtors' use of the DIP Financing, the Debtors are authorized to grant and by this Interim Order shall be deemed to have granted to Jack Kachkar liens upon all post-Petition Date property of the Debtors, not including any causes of action arising under chapter 5 of the Bankruptcy Code or proceeds thereof.

*Id.* ¶¶ 5-7. Neither paragraph 5 nor paragraph 7 of the Kachkar Interim Order specifies the priority of the liens granted thereunder. *Id.*[2]

In connection with the consideration of the motion to authorize the Kachkar DIP Financing, the Bankruptcy Court specifically refused to find that the Kachkar DIP Financing was negotiated in good faith or that any credit to be extended by

---

[2] The Kachkar Interim Order is an interim order, not a final order, and is therefore subject to revision and amendment.

Kachkar would be in good faith.  *Id.* ¶ E.  The finding of good faith proposed by Kachkar

and the borrowers in paragraph E of the proposed Kachkar Interim Order was deleted by

the Bankruptcy Court.  *Id.*  Accordingly, the Kachkar Interim Order is not entitled to any

of the protections of section 364(e) of the Bankruptcy Code that are afforded to those

extending credit in good faith pursuant to section 364 of the Bankruptcy Code.

**C.**     **Appointment of the Trustee and Subsequent Westernbank Financing**

On July 13, 2007, the Bankruptcy Court entered an order pursuant to Rule

1015 of the Federal Rules of Bankruptcy Procedure directing that the chapter 11 cases of

Exaeris and Inyx USA be consolidated for joint administration purposes only.  D-5 ¶ A;

D-8 ¶ 1.

Thereafter, in the context of pending motions for the appointment of a

trustee made by the Office of the United States Trustee and Westernbank, Inyx USA

consented to the appointment of a trustee, and on August 7, 2007 the Bankruptcy Court

appointed Stephen S. Gray as the chapter 11 trustee for Inyx USA (the "Trustee").  D-5 ¶

B.

Upon his appointment, the Trustee found that Inyx USA had no access to

funds to meet its payroll and other operating costs and expenses.  D-3 at 3.  The Trustee

submitted:

> Without the necessary funds to purchase materials and meet
> its payroll and other expenses, the Debtor's manufacturing
> operations will rapidly grind to a halt.  Millions of dollars
> in inventory likely will be lost or decrease in value, the
> goodwill that the Debtor enjoys with its customers and
> vendors will be severely damaged, key contracts with those
> customers and vendors will be cancelled or terminated, and
> the Debtor's employees will lose their jobs.  A termination
> of the Debtor's operations – or even an interruption in

production – will result in irreparable harm to the Debtor's
estate and the Debtor's stakeholders.

D-6 ¶ 15.  The Trustee immediately commenced negotiations with Westernbank.  D-3 at
3.

On August 16, 2007, the Bankruptcy Court entered an emergency order
(the "Emergency Order") pursuant to sections 362, 363 and 364 of the Bankruptcy Code
authorizing the Trustee to obtain postpetition financing from Westernbank and granting
other relief. D-5.  Relying on the Emergency Order, Westernbank agreed to extend credit
to the Trustee in an amount up to $428,000 (the "Emergency Loan") to be used for the
purposes of payroll and direct operating expenses of Inyx USA's plant in Manati, Puerto
Rico and for other administrative expenses. *Id.* ¶ 2(a).  The repayment of the Emergency
Loan was collaterally secured by first priority perfected liens and security interests on all
property of the Trustee and the Inyx USA estate pursuant to sections 364(c)(2), 364(c)(3)
and 364(d) of the Bankruptcy Code as well as other protections as specified in the
Emergency Order. *Id.* ¶¶ 2-8.

In considering the Trustee's motion for authority to enter into the
Emergency Loan, the Bankruptcy Court held hearings on August 15 and 16, 2007.  D-3;
D-4.  At the hearing held on August 16, 2007, Kachkar objected to the proposed
Emergency Order,[3] claiming that the Order would somehow circumscribe the liens
granted pursuant to the Kachkar Interim Order. *Id.* at 9-12.  Westernbank agreed to defer

_____

[3] The statutory committee of unsecured creditors appointed in the jointly administered
chapter 11 cases (the "Committee") also objected to aspects of the proposed Emergency
Loan and subsequently proposed financing of the Trustee by Westernbank. D-3 at 11-13;
D-7.  The Committee is not a party to this appeal.

the issue of the priming of Kachkar's liens to a later date, and it was understood at the

hearing that (i) the liens granted to Kachkar under the Kachkar Interim Order were

subordinate to the prepetition liens held by Westernbank; (ii) Westernbank's position was

that its prepetition liens extended to any property acquired by Inyx USA or the Trustee

postpetition with proceeds of Westernbank's collateral security; and (iii) Westernbanks's

position was that every asset of Inyx USA was subject to Westernbank's prepetition liens.

*Id.* at 13-16; D-11 ¶ 2(c).

   After hearing the parties, the Bankruptcy Court stated that it was "satisfied

with the language as proposed in the Emergency Order" and granted the Trustee's

motion.  D-4 at 17.  Westernbank consented to a reservation of Kachkar's right to prove

at a later time the benefit that Kachkar conferred upon the Inyx USA estate with his

financing.  *Id.* at 18.  As a result, the Emergency Order was signed by the Bankruptcy

Court on August 16, 2007, and provided, *inter alia*:

> [Westernbank's postpetition liens] shall be subject and
> subordinate to the liens granted under the Kachkar DIP (as
> defined below) on (1) unencumbered property of the
> Debtor's estate as of July 11, 2007, if any, or (2) property
> acquired after the Petition Date and prior to the date hereof
> by USA or the Trustee from funds used for USA's direct
> benefit provided under the postpetition financing extended
> to the Debtor pursuant to the Bankruptcy Court's
> Emergency Order dated July 11, 2007 (the "Kachkar DIP"),
> if any.

D-5 ¶ 2(d).

   Thereafter, by motion dated August 21, 2007 (the "Trustee's Motion"), the

Trustee moved for interim and final orders authorizing him to obtain financing from

Westernbank and granting Westernbank liens, priorities and other protections for any loans made to the Trustee for the period through November 30, 2007.  D-6.

The Trustee's Motion was heard before the Bankruptcy Court on August 23 and September 7, 2007.  D-10; D-14.  Kachkar objected to the proposed financing. D-8; D-13.  At the August 23 hearing, the Trustee and Westernbank agreed to the entry of an interim order (the "Westernbank Interim Order"), authorizing the Trustee to continue to borrow up to an aggregate amount of $1,502,100, as requested in the Trustee's Motion. D-10 at 26; D-11 ¶ 2(a).  Pursuant to the Westernbank Interim Order, the proceeds of the authorized borrowing were to be expended by the Trustee in accordance with the interim budget for the period through September 6, 2007 attached to the Westernbank Interim Order, if approved by Westernbank.  D-11 ¶ 2(a).  The Westernbank Interim Order enabled the continued operations of the Manati plant pending consideration of the Trustee's Motion for a final order, as well as consideration of the objections interposed to the Final Order by Kachkar and the Committee.

During the August 23, 2007 hearing, Kachkar's attorney repeated the same objections which had been made to the Emergency Order and added that Kachkar objected to the proposed Final Order in respect of the waiver of certain provisions of the Bankruptcy Code as they related to Westernbank.  D-10 at 6-17.  Notably, however, Kachkar did not contest or object to a finding that the financing, if approved, was negotiated in good faith and that the financing to be disbursed by Westernbank likewise would be in good faith.  Kachkar's attorney stated:

> I don't begrudge a good faith finding, they can have it.  I
> have no reason to believe that the negotiations that have
> taken place with the trustee are anything other than good

> faith. *However, without the protections afforded to Dr.*
> *Kachkar, they will be able to shield themselves behind that*
> *good faith finding, and Dr. Kachkar will have limited relief*
> *on appeal.*

*Id.* at 11 (emphasis added).

The Trustee's Motion did not provide for, and Westernbank did not insist upon, any priming of whatever liens were granted to Kachkar pursuant to the Kachkar Interim Order. D-6. Accordingly, at the August 23 hearing, Bankruptcy Judge Gross stated:

> Having read the propose[d] Interim Order, I am of the view
> that whatever rights Dr. Kachkar has on the -- -- essentially
> on the priming issue, are preserved. That's been so
> represented and I also observe that the stage is set for a
> fight at a later date as to the allocation of assets, the post
> petition assets, the proceeds, the cash proceeds from cash
> collateral and that those positions of the parties are not
> upset by the proposed order, and under the circumstances I
> am prepared to enter the interim order as presented by the
> Chapter 11 Trustee here.

*Id.* at 26.

The Westernbank Interim Order was entered on August 23, 2007. D-11.

The Bankruptcy Court, *inter alia*, made the following finding:

> F.    Good Faith. The use of Cash Collateral and the
> borrowing provided in this Interim Order was negotiated in
> good faith and at arms' length between the Trustee and
> Westernbank. That credit to be extended under this Interim
> Order will be extended in good faith, and for valid business
> purposes and uses, the consequence of which is that
> Westernbank is entitled to the protections and benefits of
> section 364(e) of the Bankruptcy Code.

*Id.* ¶ F.

The Westernbank Interim Order also provided:

> [Westernbank's postpetition liens] shall be subject and subordinate to the liens granted under the Kachkar DIP (as defined below) on (1) unencumbered property of the Debtor's estate as of July 11, 2007, if any, or (2) property acquired after the Petition Date and prior to the date hereof by USA or the Trustee from funds used for USA's direct benefit provided under the postpetition financing extended to the Debtor pursuant to the Bankruptcy Court's Interim Order dated July 11, 2007 (the "Kachkar DIP"), if any.

*Id.* ¶ 2(c).

On September 7, 2007, a hearing was held before the Bankruptcy Court to consider the granting of a final order authorizing the Westernbank financing. D-14. At that hearing, Kachkar's attorney raised the same objections to the proposed final order as had been argued in opposition to the Westernbank Interim Order. *Id.* at 3-5. After considering the objections, the Bankruptcy Court granted the Trustee's Motion, noting that the financing by Westernbank was "critical and essential to the Trustee's administration of the USA estate and to avoid immediate and irreparable harm to the Trustee's administration of the USA estate." D-16 at 4. As agreed at the prior hearing, Westernbank did not insist upon any priming of any liens that might have been granted to Kachkar pursuant to the Kachkar Interim Order. D-14 at 20-24. Any issues relating thereto were deferred to a later date. *Id.* at 22.

The Bankruptcy Court authorized the Trustee to borrow from Westernbank an aggregate amount of up to $3,373,100, inclusive of the funds advanced pursuant to the Emergency Order and the Westernbank Interim Order, to be used in a manner consistent with the terms of the September 7, 2007 order (the "Final Order") and the budget annexed to the Final Order (the "Trustee's Financing"). D-16. The Final Order granted to Westernbank perfected first priority liens, administrative expense status

and other protections, including those that were incorporated into the Westernbank

Interim Order. *Id.*

> The Bankruptcy Court's findings included, *inter alia*:

> G.    Good Faith.  The use of Cash Collateral and the
> borrowing provided in this Order was negotiated in good
> faith and at arms' length between the Trustee and
> Westernbank.  That credit to be extended under this Order
> will be extended in good faith, and for valid business
> purposes and uses, the consequence of which is that
> Westernbank is entitled to the protections and benefits of
> section 364(e) of the Bankruptcy Code.

*Id.* ¶ G.

> The Final Order specified that:

> [Westernbank's postpetition liens] shall be subject and
> subordinate to the liens granted under the Kachkar DIP (as
> defined below) on (1) unencumbered property of the
> Debtor's estate as of July 11, 2007, if any, or (2) property
> acquired after the Petition Date and prior to August 16,
> 2007 by USA or the Trustee from funds used for USA's
> direct benefit provided under the postpetition financing
> extended to the Debtor pursuant to the Bankruptcy Court's
> Order dated July 11, 2007 (the "Kachkar DIP"), if any.

*Id.* ¶ 2(c).

> Westernbank has fully advanced and extended the credit authorized

pursuant to the Final Order, and the Trustee has expended the proceeds of the advances in

the operation of the business of Inyx USA pursuant to the approved budget and in

satisfaction of administrative expenses as allowed by the Bankruptcy Court.

Notwithstanding Kachkar's full knowledge of the scope and protections of section 364(e)

of the Bankruptcy Code, as acknowledged by his attorney at the August 23, 2007 hearing,

*supra* at 8-9, Kachkar did not seek a stay of the Final Order and the implementation of its

provisions in the Bankruptcy Court or in this Court. Westernbank disbursed the Trustee's

Financing in good faith and in reliance upon the Final Order.

## ARGUMENT

## I.

## KACHKAR'S APPEAL FROM THE FINAL ORDER IS MOOT

After notice and hearings, the Final Order authorized the Trustee to obtain

credit and incur debt pursuant to the terms and conditions specified therein and section

364 of the Bankruptcy Code. All objections to the Trustee's Motion, including those

interposed by Kachkar, were overruled and rejected by the Bankruptcy Court.

Kachkar did not seek a stay of the Final Order in either the Bankruptcy

Court or in this Court. Westernbank proceeded to fully disburse the credit contemplated

by the Final Order, and the proceeds thereof were used for the purposes of operating and

maintaining Inyx USA's business and to pay professional fees. The validity of the debt

incurred by the Trustee, and the liens, priorities and other protections granted to

Westernbank pursuant to the Final Order, may no longer be affected by appeal, thus

rendering the Kachkar appeal moot as provided by section 364(e) of the Bankruptcy

Code.

Section 364(e) of the Bankruptcy Code, as applied by the Third Circuit,

governs this appeal. That section provides:

> The reversal or modification on appeal of an
> authorization under this section to obtain credit or incur
> debt, or of a grant under this section of a priority or a lien,
> does not affect the validity of any debt so incurred, or any
> priority or lien so granted, to an entity that extended such
> credit in good faith, whether or not such entity knew of the
> pendency of the appeal, unless such authorization and the

> incurring of such debt, or the granting of such priority or
> lien, were stayed pending appeal.

11 U.S.C. § 364(e).

In *Resolution Trust Corp. v. Swedeland Development Group, Inc. (In re Swedeland Development Group, Inc.)*, 16 F.3d 552 (3d Cir. 1994), the Court of Appeals, sitting *en banc* (12-0), unequivocally held that an appeal from a bankruptcy court order authorizing superpriority postpetition financing that was fully disbursed prior to an appeal and expended for working capital by the borrower was moot. *Id.* at 562-63. The Court of Appeals explained that under "these circumstances, the bankruptcy court could not on remand enjoin Swedeland from using the proceeds of the . . . loan nor could it order Swedeland to return the proceeds, as they were gone." *Id.* at 563. The Third Circuit also determined that other protections extended to the lender, such as the requirement and existence of an interest reserve which was deposited by the debtor for the benefit of the postpetition lender, likewise was protected by section 364(e). *Id.* The appellate court noted that although the interest reserve was property of the debtor, it was established for the benefit of the postpetition lender, and therefore "voiding the reserve would impact the security for which [the postpetition lender] bargained and thus would be inconsistent with the protection afforded it by section 364(e)." *Id.* Thus, the Court of Appeals determined that even if effective relief could be obtained by voiding the reserve, "in view of section 364(e) it cannot be done." *Id.*

The instant appeal is on all fours with the *ratio decidendi* of *Swedeland*. Pursuant to the Final Order, the Trustee's Financing has been fully disbursed and used for the purposes specified in the Final Order. Kachkar elected not to seek a stay of the Final

Order in either the Bankruptcy Court or this Court, with full knowledge of the effect of section 364(e), as acknowledged by his attorney. D-10 at 11. Kachkar must now be held to the consequences of his decision. The circumstances presented by the Trustee's Financing are identical to those that were presented in respect of the financing order in *Swedeland*. The Third Circuit decided that in such circumstances an appeal is moot and the financing and its conditions are inviolate.

The objective of section 364(e) of the Bankruptcy Code is to induce postpetition financing of debtors and trustees in the interest of the reorganization of debtors and the enhancement of values, including the preservation of going-concern values. The Bankruptcy Code assures postpetition lenders that credit extended pursuant to an order of a bankruptcy court will be enforced on the terms agreed to with the debtor or the trustee. Accordingly, under the applicable principles of law, unless a financing order is stayed pending appeal, or the lender acted in bad faith, an appellate court may not upset the validity of the debt incurred or the protections granted to the postpetition lender. *See* 11 U.S.C. § 364(e); *see also Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1487-88 (9th Cir. 1987). A lender that "extends credit in reliance on a financing order is entitled to the benefit of that order, even if it turns out to be legally or factually erroneous." *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1355 (7th Cir. 1990).

Kachkar was aware that the Trustee had an immediate and compelling need for the Trustee's Financing to prevent irreparable harm to the administration of the business of Inyx USA. Consequently, if Kachkar wished to preserve his right of appeal, it was incumbent upon him to seek a stay pending appeal. This principle of law is aptly

stated in *In re EDC Holding Co.*, 676 F.2d 945 (7th Cir. 1982). In confronting the appeal

of a financing order, the Court of Appeals explained that the Bankruptcy Code

> seek[s] to overcome people's natural reluctance to deal
> with a bankrupt firm whether as purchaser or lender by
> assuring them that so long as they are relying in good faith
> on a bankruptcy judge's approval of the transaction they
> need not worry about their priority merely because some
> creditor is objecting to the transaction and is trying to get
> the district court or the court of appeals to reverse the
> bankruptcy judge. *The proper recourse for the objecting
> creditor is to get the transaction stayed pending appeal.*

*Id.* at 947 (emphasis added).

Numerous decisions support the foregoing conclusion. *See, e.g.,*

*Weinstein, Eisen & Weiss, LLP v. Gill (In re Cooper Commons, LLC)*, 430 F.3d 1215,

1218 (9th Cir. 2005) (holding not only that appeal from postpetition financing was moot

because of section 364, but also that "any provisions of the financing agreement that

[lender] might have bargained for or that helped to motivate its extension of credit are

protected by § 364(e)"), *cert. denied*, 546 U.S. 1174 (2006); *Boullioun Aircraft Holding*

*Co. v. Smith Mgmt. (In re W. Pac. Airlines, Inc.)*, 181 F.3d 1191, 1196 (10th Cir. 1999)

(holding that where DIP funds were fully disbursed in reliance on postpetition financing

agreement, lender was entitled to full section 364(e) protection and appeal of order

granting debtor's interest in lease of aircraft as collateral to postpetition lender was

moot); *Unsecured Creditors Comm. v. First Nat'l Bank & Trust Co. (In re Ellingsen*

*MacLean Oil Co.)*, 834 F.2d 599, 604 (6th Cir. 1987) (holding that waiver in financing

order of debtors' ability to challenge banks' prepetition security interest was protected by

section 364(e) and that appeal of order was moot in absence of stay pending appeal);

*White Rose Food v. Gen. Trading Co. (In re Clinton St. Food Corp.)*, 170 B.R. 216, 220-

22 (S.D.N.Y. 1994) (holding that section 364(e) prohibits not only outright invalidation

of lien or priority where challenging party failed to seek a stay, but also modification of

other terms of postpetition lender's bargained-for consideration); *In re Fla. W. Gateway,*

*Inc.*, 147 B.R. 817, 820 (Bankr. S.D. Fla. 1992) (applying protections of section 364(e)

and denying motion for reconsideration of postpetition financing order where party

seeking relief failed to obtain stay pending appeal).

## II.

### THE FINAL ORDER DOES NOT REPRESENT A PLAIN ERROR OF LAW OR ABUSE OF DISCRETION BY THE BANKRUPTCY COURT

In substance, the seven (7) issues raised by Kachkar in this appeal may be

condensed into one argument, i.e., the Bankruptcy Court committed error in authorizing

the Trustee's Financing. The contentions made by Kachkar are unsupported by any proof

or evidence. All that Kachkar's attorney presented during the hearings below was the

attorney's *ipse dixit* as to what the Bankruptcy Court should include in a section 364

order. Kachkar blithely ignores the findings made by the Bankruptcy Court, which were

predicated on the dire circumstances and critical needs of the Trustee and Inyx USA. The

conclusory statements made on Kachkar's behalf cannot override the Bankruptcy Court's

considered judgment as to the Trustee's needs and the terms and conditions of the

proposed extensions of credit.

As the record reflects, Westernbank, after arduous negotiations, in reliance

upon the terms and conditions specified in each financing order, agreed to provide the

Trustee's Financing. D-14 at 6. Kachkar never produced a scintilla of evidence or proof

as to why the aforesaid terms, conditions and protections contemplated by those orders

should not have been authorized, nor did Kachkar offer an alternative to the Trustee's financing. Westernbank bargained for the protections incorporated in the Final Order, which it deemed critical to its disbursement of the Trustee's Financing. The Bankruptcy Court specifically found the Trustee's Financing was negotiated in good faith. D-16 ¶ G.

Kachkar's primary objection to the Final Order is that Westernbank, by the use of some Merlin-like magic, has primed the non-prioritized liens granted under the Kachkar Interim Order. However, the record is unequivocal. Starting with the hearing on the Emergency Order, Westernbank, through its attorney, agreed to defer the issue of priming to a later date:

> MR. MILLER [Attorney for Westernbank]: In connection, Your Honor, with the emergency funding, this $428,000, we'll leave the priming issue for another day. Okay, Your Honor?
>
> THE COURT: That would be helpful.

D-3 at 29. Similarly, at the August 23 hearing on the Westernbank Interim Order, it was again indicated that the issue of priming would be deferred:

> MR. MILLER: The lien issue has to be decided on another day, Your Honor, and that's what the emergency order and the proposed order proposes to do. It doesn't prime Kachkar in any way, shape, or form.

D-10 at 19.

The record is crystal clear that the Final Order did not prime Kachkar's liens. Manifestly, the Bankruptcy Court's decision to approve the Trustee's Financing was not an abuse of discretion. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990) (in determining whether to approve a financing order under section 364, the bankruptcy court "acts in its informed discretion").

**A.**    **Kachkar's Non-Prioritized Liens on Unencumbered**
**Property of Inyx USA Are Not Affected by the Final Order**

Paragraph 5 of the Kackhar Interim Order provided Kachkar with "liens upon all unencumbered property of the Debtors' estates *not subject to prior valid, perfected first priority security interests of any party, including those of Westernbank Puerto Rico.*" D-2 ¶ 5 (emphasis added).  The issue as to this paragraph of the Kachkar Interim Order is whether there was any unencumbered property of Inyx USA's estate in existence at the time of the entry of the Kachkar Interim Order.  There has been no proof of the existence of any such unencumbered property.  Nonetheless, the right of Kachkar to prove the existence of such unencumbered property has been preserved and is not affected by the Final Order.  Consequently, Kachkar's arguments in respect of paragraph 5 of the Kachkar Interim Order are nonissues.

**B.**    **The Final Order Does Not Provide for Priming**
**Of Kachkar's Non-Prioritized Liens on Postpetition Property**
**Acquired by Inyx USA from Proceeds of the Kachkar DIP Financing**

Paragraph 7 of the Kachkar Interim Order granted Kachkar non-prioritized "liens upon all post-Petition Date property of the Debtors," other than certain causes of action arising under chapter 5 of the Bankruptcy Code or the proceeds thereof.  *Id.*  ¶ 7.  If Kachkar is able to establish that postpetition property was acquired by Inyx USA with funds advanced pursuant to the Kachkar Interim Order, Kachkar will have a non-prioritized lien on that property, provided that the Kachkar Interim Order is not hereafter modified, amended or revised by the Bankruptcy Court in a hearing to consider the entry of the final order regarding the Kachkar DIP Financing, as may be appropriate.  The foregoing is made clear by reference to the Final Order, which specifically allows that

Westernbank's postpetition liens will be subordinate to the liens granted under the Kachkar Interim Order on "property acquired after the Petition Date and prior to August 16, 2007 by USA or the Trustee from funds used for USA's direct benefit provided under the postpetition financing extended to the Debtor pursuant to the Bankruptcy Court's Order dated July 11, 2007 (the "Kachkar DIP"), if any." D-16 ¶ 2(c). However, to the extent that postpetition property was acquired with proceeds realized from Inyx USA assets that were subject to Westernbank's prepetition lien, Westernbank's lien is superior to any lien asserted by Kachkar.

The essence of Kachkar's argument is that paragraph 7 of the Kachkar Interim Order overrides Westernbank's prepetition liens and rights under applicable law because of the "equities of the case." It is hornbook law that if proceeds from a creditor's collateral security are used to acquire new property, that new property is subject to the lien of the secured creditor. The Bankruptcy Code, in section 552(b), provides that based on the particular equities of a case, a bankruptcy court, based upon an evidentiary record, *may* override that general principle of law. 11 U.S.C. § 552(b)(2).[4]

---

[4] Section 552(b)(2) of the Bankruptcy Code provides as follows:

> Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, and notwithstanding section 546(b) of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property or the fees, charges, accounts, or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties, then such security interest extends to such rents and such fees, charges, accounts, or other payments acquired by the estate after the commencement of the case to the extent provided in such

In the proceedings below, there was no basis upon which the Bankruptcy Court could reasonably exercise the draconian equitable power to take away collateral security from a secured creditor. The conclusory statements of Kachkar's attorney could not serve to establish the requisite significant factual showing to trigger the exercise of equitable discretion by the Bankruptcy Court. Westernbank's prepetition liens extended to property acquired from the proceeds of its collateral security. *Id.* Kachkar has argued that there was no cash collateral on the Petition Date, and, therefore, the Trustee could not have acquired postpetition property subject to Westernbank's prepetition liens. Kachkar Brief at 34-39. The argument is fallacious. The definition of "cash collateral" in section 363 of the Bankruptcy Code includes

> cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

*Id.* § 363(a).

The Bankruptcy Court considered all of the arguments made on Kachkar's behalf and rejected such arguments. The record is devoid of any basis upon which the

---

> security agreement, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b)(2).

Court could reasonably determine that the equities of the case overcome Westernbank's vested, bargained-for rights as a secured creditor.

### C.    Westernbank Was Entitled to Adequate Protection In the Form of Replacement Liens for the Use of Its Cash Collateral

As part of its prepetition security agreement with Inyx USA, Westernbank held a valid security interest in Inyx USA's cash and other assets that might constitute cash collateral.  In return for Inyx USA's use of Westernbank's cash collateral, Westernbank was granted replacement liens on all property of the estate, to the extent of any diminution in the value of the cash collateral.  D-16 ¶ 4.  Although Kachkar asserts on appeal that these replacement liens were inappropriate, section 361(2) of the Bankruptcy Code clearly contemplates that replacement liens may constitute adequate protection for the use of a secured creditor's collateral security.  The granting of replacement liens as adequate protection is customarily granted to provide adequate protection.[5]

Thus, in exchange for Westernbank's agreement to allow the Trustee to use Westernbank's cash collateral in operating the Inyx USA business, Westernbank

---

[5] Section 361(2) of the Bankruptcy Code provides as follows:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by--

> . . . .

>> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property . . . .

*Id.* § 361(2).

received, (among other things), replacement liens on all of Inyx USA's property to the extent of the diminution in value of the cash collateral.

Kachkar argues that "pursuant to Section 552(a), Westernbank had no postpetition liens on the property subject to the [Kachkar DIP Liens]. As such, it was inappropriate for Westernbank to be granted a replacement lien based on use of Cash Collateral, arguably at all, effectuating a priming of [the Kachkar DIP Liens]."[6]  Kachkar Brief at 38.  This argument misconstrues several provisions of the Bankruptcy Code, as well as the relevant orders.

First, Kachkar's argument misconstrues the operation of section 552 of the Bankruptcy Code.  As discussed *supra* at 19-20, Westernbank does have liens on the proceeds of its prepetition collateral security and property acquired with such proceeds, as provided in its prepetition security agreement and section 552(b) of the Bankruptcy Code.  Accordingly, to the extent (i) there was cash collateral on the Petition Date or (ii) Westernbank's prepetition collateral security was subsequently converted into cash, there was cash collateral subject to Westernbank's liens.

Second, Kachkar's argument misconstrues section 361 of the Bankruptcy Code.  Section 361(2) describes as an example of adequate protection replacement liens *to the extent that a trustee's use of the secured creditor's collateral security results in a decrease in the value thereof.*  It is to protect the secured creditor against value erosion.

---

[6] Section 552(a) of the Bankruptcy Code provides that "[e]xcept as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case."  *Id.* § 552(a).

11 U.S.C. § 361(2). Westernbank's replacement liens, then, only exist to compensate and protect the value of its collateral security from diminution as a result of the administration of the bankruptcy case. Kachkar's repeated assertions about the absence of any cash collateral are irrelevant. Adequate protection for Westernbank via replacement liens to protect against value erosion is consistent with the Bankruptcy Code. Obviously, if there was no prepetition collateral security in existence on the Petition Date, there was no value that could have eroded and hence there are no replacement liens.

Finally, Kachkar objects to the priority of the replacement liens granted for the use of Westernbank's cash collateral. Under section 363(e) of the Bankruptcy Code, Westernbank requested adequate protection for the use of its cash collateral. The Bankruptcy Court determined that Westernbank was entitled to adequate protection to the extent its cash collateral decreased in value because of such use. The replacement liens have the same priority as Westernbank's prepetition liens, which are superior to the liens granted under the Kachkar Interim Order. The replacement liens simply preserve the status quo. They seek to ensure that the value of Westernbank's prepetition collateral security, inclusive of cash collateral, is protected against diminution. The replacement liens do not enlarge or enhance the prepetition liens held by Westernbank or otherwise prime Kachkar's liens.

Based upon the record below, the Bankruptcy Court exercised reasoned and considered judgment in granting the replacement liens as adequate protection. The record below does not contain any proof that the considered judgment of the Bankruptcy Court was abusive or ill-considered. Indeed, Kachkar presented no proof whatsoever,

other than opinion statements of his attorney, of what might be appropriate for adequate

protection.

**D.    The Trustee's Waiver of the Doctrine of Marshaling and Certain
        Provisions of the Bankruptcy Code Was Appropriate and Authorized by
        The Bankruptcy Court as a Necessary Condition of the Trustee's Financing**

The Final Order, in paragraphs 5 and 12(e) and (f), waives certain

provisions of the common law and the Bankruptcy Code that could be used to diminish or

challenge the scope of protections granted to Westernbank under the Final Order.  The

waivers of these provisions – i.e., the doctrine of marshaling, the "equities of the case"

exception to section 552(b) and the trustee's rights under section 506(c) – are typical in

financing orders entered in chapter 11 cases.  *See, e.g.*, *In re Sharper Image Corp.*, Ch. 11

Case No. 08-10322 (KG) (Bankr. D. Del. Mar. 7, 2008) (D.I. 182, pp. 28, 37) (waiving

doctrine of marshaling, "equities of the case" exception to section 552(b) and section

506(c)); *In re Buffets Holdings Inc.*, Ch. 11 Case No. 08-10141 (MFW) (Bankr. D. Del.

Feb. 22, 2008) (D.I. 350, pp. 20, 27) (waiving doctrine of marshaling and section 506(c));

*In re Domain, Inc.*, Ch. 11 Case No. 08-10132 (PJW) (Bankr. D. Del. Feb 14, 2008) (D.I.

218, pp. 29, 37-38) (waiving doctrine of marshaling, "equities of the case" exception to

section 552(b) and section 506(c)); *In re Am. Home Mortgage Holdings, Inc.*, Ch. 11

Case No. 07-11047 (CSS) (Bankr. D. Del. Nov. 28, 2007) (D.I. 2205, p. 13) (waiving

doctrine of marshaling and section 506(c)); *In re HomeBanc Mortgage Corp.*, Ch. 11

Case No. 07-11079 (KJC) (Bankr. D. Del. Sept. 13, 2007) (D.I. 268, p. 17) (waiving

doctrine of marshaling and section 506(c)); *In re Tweeter Home Entm't Group*, Ch. 11

Case No. 07-10787 (PJW) (Bankr. D. Del. June 29, 2007) (D.I. 253, pp. 32-33, 44)

(waiving doctrine of marshaling, "equities of the case" exception to section 552(b) and

section 506(c)); *In re New Century TRS Holdings*, Ch. 11 Case No. 07-10416 (KJC)

(Bankr. D. Del. May 7, 2007) (D.I. 565, p. 15) (waiving doctrine of marshaling and

section 506(c)); *In re Foamex Int'l, Inc.*, Ch. 11 Case No. 05-12685 (PJW) (Bankr. D.

Del. Oct. 17, 2005) (D.I. 197, pp. 17, 23) (waiving doctrine of marshaling and section

506(c)).

### 1.    The Waiver of the Equitable Doctrine of Marshaling
     Was Required as a Condition of the Trustee's Financing

In the context of chapter 11 cases and to induce lenders to extend credit to

debtors and trustees, it is typical for financing orders to provide for a waiver of the

doctrine of marshaling.  Marshaling is often used by junior creditors to cause delay and to

extract settlements from senior creditors.  Consequently, it acts as a deterrent to financing

of chapter 11 cases.  The result has been that lenders require a waiver of the doctrine of

marshaling as a condition of the financing, as illustrated by the cases cited above.

Against this backdrop, Kachkar cites for support a single decision issued

by the Bankruptcy Court for the Western District of New York.  Kachkar Brief at 40.

However, even that case gives Kachkar little support.  In *In re The Colad Group, Inc.*,

324 B.R. 208 (Bankr. W.D.N.Y. 2005), the Bankruptcy Court for the Western District of

New York did not agree with a proposed form of emergency financing order submitted

by the debtor at the inception of the bankruptcy case.  The bankruptcy court, properly,

was concerned with due process.  It noted the minimal notice to the debtor's creditors and

the underlying principle that, at the beginning of a bankruptcy case, relief should only be

granted on motions and applications to the extent "minimally necessary to maintain the

existence of the debtor, until such time as the debtor can effect appropriate notice to

creditors and parties in interest." *Id.* at 213. Consequently, the bankruptcy court determined that in the perspective of the limited notice, it would be inappropriate to "waive the marshaling rights of parties who have not consented and may not even have received notice of the debtor's motion." *Id.* at 224. Patently, that court was concerned with the procedural circumstances. Its decision hinged on the lack of adequate notice and the potential prejudicial effect on creditors who had no notice and opportunity to be heard.

*Colad* is inapposite. There was no lack of adequate notice below. Kachkar had a full and adequate opportunity to be heard in opposition to the Trustee's Financing. He vigorously objected and participated in the proceedings before the Bankruptcy Court. He failed to sustain his objections. The Bankruptcy Court exercised its discretion based upon the record before it, and there was no abuse of discretion or clear error of law.

### 2. The "Equities of the Case" Exception to Section 552(b) Is Typical in Postpetition Secured Financing Under Section 364

The discussion of the application of section 552(b) is set forth *supra* at 19-20. Kachkar argues that the Trustee's waiver of the exception contained in section 552(b) based upon the equities of the case was improper and contrary to bankruptcy policy. The arguments are specious. Notwithstanding that the deprivation of a secured creditor's rights in its collateral security requires the highest standard of proof, Kachkar did not establish any proof that the exception to the general rule should be applied. Rather, Kachkar argues that the exception applies automatically. Again, the argument is without foundation.

The "equities of the case" exception to section 552(b) serves to protect the debtor's estate against the misuse of assets to enhance the value of a secured creditor's collateral security.  One court has explained the "equities of the case" exception as follows:

> This exception in § 552(b) was intended to cover the situation where raw materials, for example, are converted into inventory, or inventory into accounts, at some expense to the estate, thus depleting the fund available for general unsecured creditors.  H.R. Rep. No. 595, 95th Cong. 1st Sess 376-377 (1977) and S. Rep. No. 989, 95th Cong. 2d Sess 91 (1978).  Congress recognized that in transforming, for example, raw materials into inventory, the debtor would be using the secured creditor's collateral (raw materials) but would be adding value to those raw materials at the expense of the general unsecured creditors.  Thus, Congress sought to protect the value of the secured creditor's interest in the raw materials, but would not give that secured creditor the benefit of the value added in the transformation to inventory when that value was obtained at the expense of the general unsecured creditors.

*In re Anderson*, 137 B.R. 819, 821-22 (Bankr. D. Colo. 1992).

The undefined nature of what constitutes "equities of the case" serves as a deterrent to postpetition financing.  It may be a stimulant to litigation that is expensive, time-consuming and harassing.  As a general proposition, postpetition lenders require a waiver of section 552(b)'s "equities of the case" exception.  It is a recognized and accepted term of postpetition financing, as demonstrated *supra* at 24-25.

The burden was on Kachkar to demonstrate that the waiver was inappropriate.  He offered no basis therefor.  To the contrary, as a condition to providing the Trustee's Financing, Westernbank insisted on the protection of its repayment rights through a waiver of any possible application of the "equities of the case" exception to

section 552(b).  The Bankruptcy Court considered the arguments in the context of the

dire circumstances confronting the Trustee and the probability of irreparable harm and

prejudice to the business of Inyx USA and exercised its informed judgment to approve

the waiver.  There is no basis in the record to conclude that the Bankruptcy Court's action

constituted an abuse of discretion.  The exercise of the Bankruptcy Court's discretion

need not be supported by substantial evidence; there simply must have been a "rational

basis" in the record for the Bankruptcy Court's decision.  *Gillman v. Ford (In re Ford)*,

492 F.3d 1148, 1153 (10th Cir. 2007).  The record is clear that there was ample reason

for the Bankruptcy Court to approve the Trustee's waiver, and therefore Kachkar cannot

sustain his burden of proof to warrant reversal of the Bankruptcy Court's decision.

In the circumstances presented to it, the Bankruptcy Court exercised its

discretion in a reasonable, considered manner, consistent with the common practice in

this District.  The Bankruptcy Court did not abuse its discretion or commit a clear error of

law.

### 3.    The Waiver by the Trustee of His Section 506(c) Property Rights Was Proper in the Circumstances and <u>Consistent With Postpetition Secured Financing Under Section 364</u>

Section 506(c) of the Bankruptcy Code provides:

> The trustee may recover from property securing an
> allowed secured claim the reasonable, necessary costs and
> expenses of preserving, or disposing of, such property to
> the extent of any benefit to the holder of such claim,
> including the payment of all ad valorem property taxes with
> respect to the property.

11 U.S.C. § 506(c).

Similar to the discussion above, waiver of section 506(c) claims is generally accepted in financing orders approved by bankruptcy courts in this District. The same rationale discussed *supra* at 26-28 applies to section 506(c). Postpetition lenders are desirous of certainty in respect of the financing of debtors and trustees. Just as in the case of nonbankruptcy financings, lenders wish to assure that loans and advances will be repaid without extraneous litigation. As a result, it is the usual and regular practice of postpetition lenders to require the waiver of potential section 506(c) claims. A person objecting to such a waiver has the burden of establishing that it would be inappropriate in that particular case to waive the statutory provision and must present particular proof as to the reasons for same. Kachkar did not do that. The record is naked of any evidence to reject the waiver of section 506(c) claims.

Any section 506(c) claims are property of the Trustee, not any other party. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000). The Trustee, in the exercise of his discretion and as a result of the arduous negotiations with Westernbank, agreed to waive the section 506(c) claims. The Bankruptcy Court found the decision to be reasonable and authorized the waiver as part of the terms and conditions of the Trustee's Financing. Kachkar offered no evidence to the contrary. It is self-evident that the Bankruptcy Court properly exercised its discretion and did not commit any error of law in authorizing the waiver of the section 506(c) claims.

Indeed, Kachkar's standing to raise an objection to the section 506(c) waiver is doubtful. The Court of Appeals for the Ninth Circuit rejected an argument similar to Kachkar's in *Debbie Reynolds Management Co. v. Calstar Corp. (In re Debbie Reynolds Hotel & Casino, Inc.)*, 255 F.3d 1061 (9th Cir. 2001). In that case, a creditor

who had extended secured credit following the commencement of the case objected to the debtor in possession's decision to enter into a settlement agreement with another postpetition lender which provided that, upon approval by the bankruptcy court, neither the debtor nor any party in interest would be able to surcharge that lender's collateral pursuant to section 506(c). *Id.* at 1064. The Ninth Circuit found that the Supreme Court's decision in *Hartford Underwriters* made clear that only the debtor in possession or the trustee had rights under section 506(c), and thus that creditors could not seek surcharges under that section. *Id.* at 1066. The Ninth Circuit concluded that the settlement agreement, insofar as it abrogated creditors' rights to seek surcharges under section 506(c), "abrogated a legal right that no longer exists" after *Hartford Underwiters*. *Id.* Kachkar should be similarly barred from objecting to the Trustee's waiver of the provisions of section 506(c), because he has no rights thereunder.

Further, Kachkar claims that the record is devoid of any justification for the decision to waive section 506(c) rights. Nothing could be further from the truth. The attorney for the Trustee made clear that the Final Order was heavily negotiated, and that the provisions therein were necessary to secure critical financing from Westernbank: "[W]e argued very forcefully with the lender, and we did negotiate a number of these provisions to improve upon them from our perspective . . . . [W]e have negotiated this order, and it's where we are . . . ." D-14 at 6-7.

The Final Order is the result of good-faith, arm's-length negotiations, as Kachkar's attorney acknowledged to the Bankruptcy Court. D-10 at 11. It is simply a fact that these were the terms upon which Westernbank agreed to lend. The Bankruptcy

Court did not abuse its discretion or commit a plain error of law in approving the waiver of section 506(c).

## CONCLUSION

The Kachkar appeal is governed by section 364(e) of the Bankruptcy Code as applied by the Third Circuit. Westernbank disbursed the Trustee's Financing in good faith in reliance upon the Final Order. Further, the Bankruptcy Court fully considered the Kachkar objections and found them to be without foundation or substance. Accordingly, the appeal should be dismissed as moot and singularly devoid of merit.

Dated: April 14, 2008
      Wilmington, Delaware

                    *Steven K. Kortanek*

                    Francis A. Monaco, Esq. (Del. Bar No. 2078)
                    Steven K. Kortanek, Esq. (Del. Bar No. 3106)
                    WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
                    222 Delaware Avenue, Suite 1501
                    Wilmington, Delaware 19801
                    Telephone: (302) 252-4363
                    Facsimile: (302) 661-7728

                    -and-

                    Harvey R. Miller
                    Michele J. Meises
                    Michael J. Walsh
                    WEIL, GOTSHAL & MANGES LLP
                    767 Fifth Avenue
                    New York, New York 10153
                    Telephone: (212) 310-8000
                    Facsimile: (212) 310-8007

                    Attorneys for Westernbank Puerto Rico

<u>**CERTIFICATE OF SERVICE**</u>

      **I, Heidi E. Sasso, certify that I am not less than 18 years of age, and that service of the foregoing document was made on April 14, 2008 upon:**

**Sheldon K. Rennie, Esq.**
**Anthony Sacullo, Esq**
**Fox Rothschild LLP**
**919 N. Market Street, Ste. 1300**
**Wilmington, DE 19801**

**Michael Menkowitz, Esq.**
**Fox Rothschild O'Brien & Frankel**
**2000 Market Street, 10th Floor**
**Philadelphia, PA 19103**

**Bruce Grohsgal, Esq.**
**Pachulski Stang Ziehl & Jones**
**919 Market Street, Ste. 1700**
**Wilmington, DE 19801**

**Christopher Ward, Esq.**
**Klehr Harrison Harvey Branzburg & Ellers LLP**
**919 Market Street, Ste. 1000**
**Wilmington, DE 19801**

**Richard L. Schepacarter**
**United States Trustee**
**844 King Street, Room 2207**
**Lockbox #35**
**Wilmington, DE 19899-0035**

**Ballard Spahr Andrews & Ingersoll, LLP**
**Attn.: Tobey M. Daluz, Esquire**
**919 N. Market Street, 12th Floor**
**Wilmington, Delaware 19801**

      Under penalty of perjury, I declare that the foregoing is true and correct.

\_\_4/14/2008_____         _____/s/ Heidi E. Sasso_____
Date                      Heidi E. Sasso