IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXAERIS, INC., and | ) | Case No. 07-10887 (KG) |
| INYX USA, LTD.,[1] | ) | Case No. 07-10888 (KG) |
| | ) | |
| Debtors. | ) | |
| ———————————————— | ) | |
| | ) | |
| DR. JACK KACHKAR, | ) | |
| | ) | |
| Appellant | ) | Civil Action No. 07-621 (GMS) |
| v. | ) | |
| | ) | |
| WESTERNBANK PUERTO RICO, | ) | |
| STEPHEN S. GRAY, Chapter 11 | ) | |
| Trustee of INYX USA, LTD. | ) | |
| | ) | |
| Appellees. | ) | |
| ———————————————— | ) | |

**BRIEF OF APPELLEE**
**CHAPTER 11 TRUSTEE OF INYX USA, LTD.**

Richard Pachulski
Bruce Grohsgal (DE Bar No. 3583)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: bgrohsgal@pszjlaw.com

*Attorneys for the Chapter 11 Trustee of Inyx USA, Ltd.*

Dated: April 14, 2008

---

[1] The Exaeris, Inc. and Inyx USA, Ltd. bankruptcy cases were jointly administered for procedural purposes at the commencement of those cases, by order entered on July 12, 2007 (Docket No. 39 in Bankruptcy Case No. 07-10887). On December 6, 2007 (Docket No. 421 in Bankruptcy Case No. 07-10887), the Bankruptcy Court vacated the order for joint administration, and the bankruptcy cases have been separately administered since the entry of that order.

## Table of Contents

PAGE

PRELIMINARY STATEMENT ..................................................................................... 1

ISSUES PRESENTED.................................................................................................. 4

    1.    Is Kachkar's appeal from the Final Westernbank Financing Order moot pursuant to section 364 (e) of the Bankruptcy Code because the Bankruptcy Court found that Westernbank extended the Westernbank financing in good faith to the Debtor, which Kachkar's counsel acknowledged, admitted and agreed to at the August 23, 2007 hearing on the Westernbank financing?................................. 4

    2.    Is Kachkar's appeal from the Final Westernbank Financing Order moot because the liens granted to Westernbank pursuant to the Final Westernbank Financing Order appealed from do not, contrary to Kachkar's assertions, prime any lien previously granted to Kachkar pursuant to the interim Kachkar DIP Order? ..................................................... 5

    3.    Is the Bankruptcy Court's interpretation of its interim Kachkar DIP Order clearly erroneous with respect to the extent of the liens granted to Kachkar by the interim Kachkar DIP Order, on which interpretation depends the question of whether those liens were primed by the Final Westernbank Financing Order? ...................................................... 5

    4.    Are the Bankruptcy Court's specific findings that the Westernbank financing was negotiated and extended in good faith and at arm's length between the Chapter 11 Trustee and Westernbank, and for valid business purposes and uses, and hence that Westernbank is entitled to the protections and benefits of secti 364(e) of the Bankruptcy Code, clearly erroneous?................................................................. 5

STANDARD OF APPELLATE REVIEW ...................................................................... 5

STATEMENT OF THE CASE....................................................................................... 6

    A.    Background ................................................................................. 6

    B.    The Interim Kachkar DIP Order ................................................. 7

    C.    Appointment of the Trustee and the Westernbank Financing ................... 8

ARGUMENT.............................................................................................................. 17

I. KACHKAR'S APPEAL FROM THE FINAL  WESTERNBANK FINANCING ORDER IS MOOT............................................................................................. 17

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

A.  Westernbank Extended the Westernbank Financing in Good Faith
to the Chapter 11 Trustee Pursuant to the Final Westernbank
Financing Order ................................................................... 17

B.  Kachkar Did Not Seek or Obtain a Stay of the Final Westernbank
Financing Order ................................................................... 18

II. THE FINAL WESTERNBANK FINANCING ORDER  DOES NOT
IMPERMISSIBLY PROVIDE FOR THE PRIMING OF  THE LIENS
GRANTED TO KACHKAR BY THE INTERIM KACHKAR DIP
ORDER NOR ARE THE BANKRUPTCY COURT'S FINDINGS
CLEARLY ERRONEOUS, ITS CONCLUSIONS OF LAW IN ERROR,
OR ITS DECISION AN ABUSE OR DISCRETION ........................................ 23

A.  The Liens Granted to Westernbank Do Not Impermissibly Prime
Any Lien of Kachkar Entitled to Priority ............................... 23

B.  The Bankruptcy Court's Interpretation of its Interim Kachkar DIP
Order is Not Clearly Erroneous with respect to the Extent and
Priority of the Liens granted to Kachkar by the Interim Kachkar
DIP Order, on which Interpretation Depends the Question of
Whether Those Liens were Primed by the Final Westernbank
Financing Order ................................................................... 25

C.  The Chapter 11 Trustee's Waivers of the Doctrine of Marshaling,
the Equities of the Case Doctrine, and Surcharge Rights, and the
Payment of Proceeds Provision of the Final Westernbank
Financing Order, Were Justified and Appropriate and
Authorization of these Provisions by the Bankruptcy Court as a
Necessary Condition of the Westernbank  Financing Was Not
Clearly Erroneous ................................................................ 29

CONCLUSION ............................................................................... 33

# TABLE OF AUTHORITIES

## Cases

*Boullioun Aircraft Holding Co. v. Smith Mgmt. (In re W. Pac. Airlines, Inc.),*
181 F.3d 1191 (10th Cir. 1999) ................................................................................ 21

*Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.),*
829 F.2d 1484 (9th Cir. 1987) ................................................................................ 20

*Creditors' Comm. v. Spada (In re Spada)*, 903 F.2d 971 (3d Cir. 1990) .......................... 5

*Debbie Reynolds Management Co. v. Calstar Corp. (In re Debbie Reynolds Hotel &
Casino, Inc.),*
255 F.3d 1061 (9th Cir. 2001) ................................................................................ 30

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,*
530 U.S. 1 (2000) ...................................................................................................... 30

*In re Abbotts Dairies of Pa., Inc.,*
788 F.2d 143 (3d Cir. 1986) ...................................................................................... 5

*In re Am. Home Mortgage Holdings, Inc.,*
Ch. 11 Case No. 07-11047 (CSS) (Bankr. D. Del. Nov. 28, 2007) ............................. 30

*In re Ames Dep't Stores, Inc.,*
115 B.R. 34 (Bankr. S.D.N.Y. 1990) ........................................................................... 33

*In re Buffets Holdings Inc.,*
Ch. 11 Case No. 08-10141 (MFW) (Bankr. D. Del. Feb. 22, 2008) ............................. 29

*In re Domain, Inc.,*
Ch. 11 Case No. 08-10132 (PJW) (Bankr. D. Del. Feb 14, 2008) ............................... 29

*In re EDC Holding Co.*, 676 F.2d 945 (7th Cir. 1982) .................................................... 20

*In re Fla. W. Gateway, Inc.,*
147 B.R. 817 (Bankr. S.D. Fla. 1992) ....................................................................... 22

*In re Foamex Int'l, Inc.,*
Ch. 11 Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005) ............................... 30

*In re HomeBanc Mortgage Corp.,*
Ch. 11 Case No. 07-11079 (KJC) (Bankr. D. Del. Sept. 13, 2007) .............................. 30

*In re New Century TRS Holdings,*
Ch. 11 Case No. 07-10416 (KJC) (Bankr. D. Del. May 7, 2007) ................................. 30

32268-001\DOCS_DE:136672.4

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Sharon Steel Corp.,*
   871 F.2d 1217 (3d Cir. 1999) ......................................................................... 5

*In re Sharper Image Corp.,*
   Ch. 11 Case No. 08-10322 (KG) (Bankr. D. Del. Mar. 7, 2008)................................. 29

*In re The Colad Group, Inc.,*
   324 B.R. 208 (Bankr. W.D.N.Y. 2005) ................................................................ 31, 32

*In re Tweeter Home Entm't Group,*
   Ch. 11 Case No. 07-10787 (PJW) (Bankr. D. Del. June 29, 2007) ............................ 30

*Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting,*
   908 F.2d 1351 (7th Cir. 1990) ......................................................................... 20

*Meridian Bank v. Alten,*
   958 F.2d 1226 (3d Cir. 1992) ......................................................................... 5

*Resolution Trust Corp. v. Swedeland Dev., Inc. (In re Swedeland Dev., Inc.),*
   16 F.3d 552 (3d Cir. 1994) ........................................................... 4, 18, 19, 22

*Unsecured Creditors Comm. v. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.),*
   834 F.2d 599 (6th Cir. 1987) ......................................................................... 21

*Weinstein, Eisen & Weiss, LLP v. Gill (In re Cooper Commons, LLC),* 430 F.3d 1215
   (9th Cir. 2005)............................................................................................. 21

*White Rose Food v. Gen. Trading Co. (In re Clinton St. Food Corp.),*
   170 B.R. 216 (S.D.N.Y. 1994)........................................................................ 21

**Statutes**

11 U.S.C. § 101........................................................................................... 1

11 U.S.C. § 361(2) ...................................................................................... 28

11 U.S.C. § 363........................................................................................... 28

11 U.S.C. § 363(a) ...................................................................................... 28

11 U.S.C. § 364(e) ................................................................................. passim

11 U.S.C. § 552........................................................................................... 10, 24

iv

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

11 U.S.C. § 552(b) ......................................................................... passim

11 U.S.C. § 552(b)(1) ................................................................. 24, 26

11 U.S.C. § 552(b)(2) ..................................................................... 24

**Rules**

Del. Bankr. L.R. 4001-2(a)(1)(A) ................................................. 31

Del. Bankr. L.R. 4001-2(a)(1)(B) ................................................. 31

Del. Bankr. L.R. 4001-2(a)(1)(E) ................................................. 31

Del. Bankr. L.R. 4001-2(b) ........................................................... 32

Fed. R. Bankr. P. 8013 .................................................................... 5

## PRELIMINARY STATEMENT

The Appellant, Dr. Jack Kachkar ("Kachkar"), has appealed from the final financing order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered on September 7, 2007 (Docket No. 179 in Bankruptcy Case. No. 07-10887) (the "Final Westernbank Financing Order"). The Final Westernbank Financing Order authorized Stephen S. Gray, the duly-appointed chapter 11 trustee (the "Chapter 11 Trustee" or "Appellee") for the debtor Inyx USA, Ltd. ("Inyx USA"), to obtain postpetition credit and borrow from Westernbank Puerto Rico ("Westernbank") in the aggregate amount of up to $3,373,100 for the period August 15, 2007 through and including November 30, 2007, pursuant to section 364 of the Bankruptcy Code.[1] Westernbank also was Inyx USA's prepetition lender.

The Appellant, Kachkar, did not seek or obtain a stay of the financing pursuant to the Final Westernbank Financing Order or with respect to any of the provisions of that order. The Westernbank financing, pursuant to the Bankruptcy Court's findings in paragraph G of the Final Westernbank Financing Order, was extended by Westernbank to the debtor Inyx USA in good faith pursuant to section 364 (e) of the Bankruptcy Code. The loan proceeds were fully disbursed by Westernbank to Inyx USA, in good faith, and in accordance with and for the purposes set forth in the Final Westernbank Financing Order.

---

[1] The provisions of 11 U.S.C. § 101 et seq. are referred to herein as the "Bankruptcy Code."

The Appellant, Kachkar, now seeks reversal of the Final Westernbank Financing Order and the terms and conditions of such order, and remand to the Bankruptcy Court with instructions to "preserve the lead position afforded by the Kachkar DIP Order,"[2] pursuant to which order Kachkar previously had advanced postpetition financing both to Exaeris, Inc. and to Inyx USA, prior to the appointment of Stephen S. Gray as the Chapter 11 Trustee in the Inyx USA case. The Appellant, Kachkar, further asserts that by entry of the Final Westernbank Financing Order he was deprived of, and should be granted upon such remand, "first priority secured post-petition liens upon (i) all unencumbered property of the Debtors' estates not subject to prior valid, perfected first priority security interests of any party, and (ii) all post-Petition Date property of the Debtors" other than avoidance actions under Chapter 5 of the Bankruptcy Code and other than the proceeds of such avoidance actions.[3] Finally, the Appellant asks this Court to reverse certain lender protection provisions and other provisions of the Final Westernbank Financing Order, including replacement liens granted to Westernbank to adequately protect Westernbank to the extent of any diminution in value of its prepetition

---

[2] The interim Kachkar DIP Order is defined by the Appellant on page 3 of Appellant's Brief as the order entered by the Bankruptcy Court on July 12, 2007 (Docket No. 43 in Bankruptcy Case No. 07-10887), authorizing Kachkar to advance financing on an interim basis to both Exaeris, Inc. and to Inyx USA, and that definition is utilized herein. The Appellant, Kachkar, sought but did not obtain a good faith finding in the interim Kachkar DIP Order. The Bankruptcy Court, following the hearing on the interim Kachkar DIP Order, excised the proposed good faith finding in the interim Kachkar DIP Order prior to entering such order. *See*, excised paragraph F of the Kachkar DIP Order. Final approval of the Kachkar financing was never obtained, and a final order on the Kachkar financing has not been entered.

[3] Appellant's Brief, p. 45.

2

collateral,[4] waivers of marshaling, equities of the case, and surcharge, and the payment of proceeds provision that requires Westernbank to be paid the proceeds of its Lender's Collateral in payment of its loans.[5]

The Appellant, Kachkar, an insider of Inyx USA and Exaeris, Inc. (the "Debtors"), seeks such remand and instruction from this Court notwithstanding his failure to seek or obtain a stay and the express provisions of section 364 (e) applicable to appeals from postpetition financing orders. Pursuant to section 364(e) of the Bankruptcy Code, in circumstances of an authorized postpetition loan that has been fully disbursed, no reversal or modification on appeal can "affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith," unless "the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal." It is beyond dispute that no such stay was obtained. Accordingly, the liens and priority granted to Westernbank pursuant to the Final Westernbank Financing Order may not be affected by this appeal. Even were the Bankruptcy Code to provide otherwise (which it does not), the Appellant, Kachkar, has failed to show that the Final Westernbank Financing Order impermissibly primed the liens granted to him by the interim Kachkar DIP Order. The Kachkar appeal is moot and should be dismissed.

[4] Appellant's Brief, p. 39.

[5] Appellant's Brief, p. 39-44.

3

*Resolution Trust Corp. v. Swedeland Dev., Inc. (In re Swedeland Dev., Inc.)*, 16 F.3d 552, 562-63 (3d Cir. 1994).

With respect to the additional "non-lien" lender protections granted to Westernbank by the Final Westernbank Financing Order, by the marshalling, equities of the case and surcharge waivers complained of by Kachkar, the Bankruptcy Court correctly determined to grant those protections because without them Westernbank would not lend and Inyx USA would have been unable to fund its operations. Similarly, the payment of proceeds provision of the Final Westernbank Financing Order requires merely that the Westernbank loans be paid from the proceeds of Westernbank's "Lender's Collateral." The Bankruptcy Court's decision with respect to these provisions was not clearly erroneous and should be upheld.

## ISSUES PRESENTED

1.    Is Kachkar's appeal from the Final Westernbank Financing Order moot pursuant to section 364 (e) of the Bankruptcy Code because the Bankruptcy Court found that Westernbank extended the Westernbank financing in good faith to the Debtor, which Kachkar's counsel acknowledged, admitted and agreed to at the August 23, 2007 hearing on the Westernbank financing?[6]

---

[6]  Transcript of Bankruptcy Court Hearing held on August 23, 2007, page 11, lines 3-6, referred to herein as "D-10." All references to items designated for inclusion in the record in Appellant's Statement of Issues and Designation of Record are referred to herein as "D-__." All references to items designated for inclusion in the record in the Chapter 11 Trustee's Counter-Designation of Record and Counter-Statement of Issues are referred to herein as "CDT-__."

4

2.      Is Kachkar's appeal from the Final Westernbank Financing Order moot because the liens granted to Westernbank pursuant to the Final Westernbank Financing Order appealed from do not, contrary to Kachkar's assertions, prime any lien previously granted to Kachkar pursuant to the interim Kachkar DIP Order?

3.      Is the Bankruptcy Court's interpretation of its interim Kachkar DIP Order clearly erroneous with respect to the extent of the liens granted to Kachkar by the interim Kachkar DIP Order, on which interpretation depends the question of whether those liens were primed by the Final Westernbank Financing Order?

4.      Are the Bankruptcy Court's specific findings that the Westernbank financing was negotiated and extended in good faith and at arm's length between the Chapter 11 Trustee and Westernbank, and for valid business purposes and uses, and hence that Westernbank is entitled to the protections and benefits of secti 364(e) of the Bankruptcy Code, clearly erroneous?

## STANDARD OF APPELLATE REVIEW

A bankruptcy court's findings of fact are not to be set aside unless clearly erroneous. *See* Fed. R. Bankr. P. 8013; *Creditors' Comm. v. Spada (In re Spada)*, 903 F.2d 971, 975 (3d Cir. 1990). Conclusions of law are subject to *de novo* review. *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986). The Court considering an appeal must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992), citing, *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1999).

5

## STATEMENT OF THE CASE

Facts applicable to this appeal are set forth in the findings of fact made by the Bankruptcy Court in the interim Kachkar DIP Order and the Final Westernbank Financing Order are incorporated as if fully set forth herein. Certain of those facts and other relevant facts are set forth below and are referred to in connection with Appellee's argument.

### A.    Background

On July 2, 2007 (the "Petition Date"), each of the Debtors, Exaeris, Inc., a Delaware corporation, and Inyx USA, an Isle of Man corporation, commenced a voluntary case under chapter 11 of the Bankruptcy Code in the District of Delaware. The chapter 11 cases were referred to United States Bankruptcy Judge Kevin Gross. D-1. The declaration in support of the Debtors' first day motions and applications, dated July 6, 2007, was executed by Kachkar, as the Chief Executive Officer and Chairman of Inyx, Inc., a non-Debtor entity that allegedly was the parent corporation of both Exaeris, Inc. and Inyx USA. *Id.* ¶¶ 5, 12 n. 4.

Westernbank asserted that, as of the Petition Date, Inyx USA was indebted to it in an amount in excess of $140 million, D-6 ¶ 9; CDT-1 ¶ 17; CDT-2 ¶ 16; CDT-4 ¶ 3, secured by perfected, first priority liens on all of the assets of Inyx USA. D-6 at 3; CDT-1 at 6-8; CDT-2 ¶ 14.

Inyx USA operated on the Petition Date, and through the Chapter 11 Trustee continues to operate postpetition, a pharmaceutical plant in Manati, Puerto Rico,

32268-001\DOCS_DE:136672.4

producing pharmaceutical products.  D-1 ¶ 7; D-6 ¶ 7; CDT-2 ¶ 5.  Cash flow from Inyx

USA's operations was inadequate to fund its postpetition expenses.  D-1 ¶ 9.

**B.    The Interim Kachkar DIP Order**

On July 3, 2007, the Debtors, Exaeris, Inc. and Inyx USA, as debtors in

possession, moved the Bankruptcy Court for authority pursuant to section 364 of the

Bankruptcy Code to obtain credit from Kachkar in an amount up to $2 million.  D-1 ¶ 12.

On July 11, 2007, the Bankruptcy Court entered the interim Kachkar DIP

Order.  The interim Kachkar DIP Order authorized Exaeris, Inc. and Inyx USA, as

debtors in possession, to borrow up to $2.1 million, to be advanced to the Debtors by

Kachkar in his discretion.  D-2 ¶ 3.

> The interim Kachkar DIP Order provided at paragraphs 5, 6 and 7 that:
>
> 5.    As a condition for the Debtors' use of the DIP Financing, the Debtors are authorized to grant and by this Interim Order shall be deemed to have granted to Jack Kachkar liens upon all unencumbered property of the Debtors' estates not subject to prior valid, perfected first priority security interests of any party, including those of Westernbank Puerto Rico.
>
> 6.    In addition, the Debtor [sic] is authorized to and hereby does grant to Jack Kachkar a superpriority, administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code.
>
> 7.    As a further condition for the Debtors' use of the DIP Financing, the Debtors are authorized to grant and by this Interim Order shall be deemed to have granted to Jack Kachkar liens upon all post-Petition Date property of the Debtors, not including any causes of action arising under chapter 5 of the Bankruptcy Code or proceeds thereof.

*Id.* ¶¶ 5-7.[7]  No provision of the interim Kachkar DIP Order provided for the priming of

Westernbank's asserted prepetition liens and claim by the liens or claim granted by the

interim Kachkar DIP Order.  *Id.*  None of the liens granted to Kachkar by the Kachkar

DIP Order were granted priority over the liens of any other party, whether existing at the

time of entry of the interim Kachkar DIP Order or subsequently arising.  *Id.*

      The Bankruptcy Court declined to find that the Kachkar financing was

extended in good faith.  The finding of good faith proposed by Kachkar and the

borrowers in paragraph E of the proposed interim Kachkar DIP Order was excised by the

Bankruptcy Court.  D-2 ¶E [excised].   As a consequence, the Kachkar financing

extended pursuant to the interim Kackar DIP Order is not entitled to any of the

protections of section 364 (e) of the Bankruptcy Code that are afforded to a postpetition

lender that extends credit in good faith pursuant to sections 364 of the Bankruptcy Code.

11 U.S.C. § 364(e).

## C.    **Appointment of the Trustee and the Westernbank Financing**

      Shortly after entry of the interim Kachkar DIP Order, on July 13, 2007, the

Bankruptcy Court granted the Debtors' motion for entry of an order pursuant to Rule

1015 of the Federal Rules of Bankruptcy Procedure directing that the chapter 11 cases of

---

[7] As noted, the Kachkar DIP Order is an interim order, not a final order, and the
provisions therefore remain subject to revision by the Bankruptcy Court prior to entry of
a final order on the Kachkar financing.

Exaeris, Inc. and Inyx USA be consolidated for joint administration purposes only.

D-5 ¶ A.

On August 13, 2007, following a motion for the appointment of a trustee made by the Office of the United States Trustee and Westernbank, Inyx USA consented to the appointment of a chapter 11 trustee. D-5 ¶ B; D-11 ¶ B; D-16 ¶ B. On August 7, 2007, at the recommendation of the Office of the United States Trustee, the Bankruptcy Court appointed Stephen S. Gray as the Chapter 11 Trustee for Inyx USA. *Id.*

Upon his appointment, the Chapter 11 Trustee found that Inyx USA did not have sufficient funds to meet its payroll and other operating costs and expenses. D-3 at 3. The Chapter 11 Trustee submitted to the Bankruptcy Court that:

> Without the necessary funds to purchase materials and meet its payroll and other expenses, the Debtor's manufacturing operations will rapidly grind to a halt. Millions of dollars in inventory likely will be lost or decrease in value, the goodwill that the Debtor enjoys with its customers and vendors will be severely damaged, key contracts with those customers and vendors will be cancelled or terminated, and the Debtor's employees will lose their jobs. A termination of the Debtor's operations – or even an interruption in production – will result in irreparable harm to the Debtor's estate and the Debtor's stakeholders.

D-6 ¶ 15. The Trustee immediately commenced negotiations with Westernbank for postpetition financing. D-3 at 3.

On August 16, 2007, the Bankruptcy Court entered an emergency order (the "Emergency Order") pursuant to sections 362, 363 and 364 of the Bankruptcy Code authorizing the Trustee to obtain postpetition financing from Westernbank and granting

9

other relief (D-5), and Westernbank extended credit to the Trustee in an amount up to

$428,000 (the "Emergency Loan") pursuant to the Emergency Order, to be used for the

purposes of payroll and direct operating expenses of Inyx USA's plant in Manati, Puerto

Rico and for other administrative expenses. *Id.* ¶ 2(a).  The repayment of the Emergency

Loan was collaterally secured by first priority perfected liens and security interests on all

property of the Inyx USA estate pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of

the Bankruptcy Code, expressly made subject to Kachkar's liens pursuant to paragraph

2(d) of the Emergency Order, as well as other protections as specified in the Emergency

Order. *Id.* ¶¶ 2(c)-(e).

      The Emergency Order was entered by the Bankruptcy Court following

hearings held before it on August 15 and 16, 2007.  D-3; D-4.  At the August 16, 2007

hearing, Kachkar objected to the proposed Emergency Order,[8] claiming that the Order

would somehow circumscribe the liens granted pursuant to the interim Kachkar DIP

Order. D-4 at 10-12.  Westernbank agreed to defer the issue of the priming of Kachkar's

liens to a later date,  (i) it was understood at the hearing that the liens granted to Kachkar

under the interim Kachkar DIP Order were subordinate to the prepetition liens held by

Westernbank, and (ii) Westernbank's position at the hearing was that its prepetition liens

extended to any property acquired postpetition by Inyx USA with proceeds of

Westernbank's collateral security. *See*, 11 U.S.C. § 552.  Westernbank further asserted

---

[8] The official committee of unsecured creditors appointed in the jointly administered
chapter 11 cases (the "Committee") also objected to certain aspects of the proposed
Emergency Loan.  D-3 at 11-13; D-7.  The Committee is not a party to this appeal.

that every asset of Inyx USA was subject to Westernbank's prepetition liens. *Id.* at 13-16; D-11 ¶ 2(c).

The Emergency Order was submitted to the Bankruptcy Court containing the provision making Westernbank's postpetition Financing Liens subject and subordinate to Kachkar's postpetition liens as set forth in paragraph 2(d) of the Emergency Order. At the conclusion of the August 16, 2007 hearing, the Bankruptcy Court stated that it was "satisfied with the language as proposed in the Emergency Order" and granted the Chapter 11 Trustee's motion. *Id.* at 17. Westernbank consented to a reservation of Kachkar's right "to prove [at a later time] the benefit that [Kachkar] conferred upon the Inyx USA estate with [his] DIP." *Id.* at 18. The Emergency Order approving the Westernbank financing was signed by the Bankruptcy Court on August 16, 2007, and provided, *inter alia*, that:

> [Westernbank's postpetition liens] shall be subject and subordinate to the liens granted under the Kachkar DIP (as defined below) on (1) unencumbered property of the Debtor's estate as of July 11, 2007, if any, or (2) property acquired after the Petition Date and prior to the date hereof by USA or the Trustee from funds used for USA's direct benefit provided under the postpetition financing extended to the Debtor pursuant to the Bankruptcy Court's Emergency Order dated July 11, 2007 (the "Kachkar DIP"), if any.

D-5 ¶ 2(d).

Thereafter, by motion dated August 21, 2007 (the "Trustee's Motion"), the Chapter 11 Trustee moved for interim and final orders authorizing him to obtain financing from Westernbank and grant Westernbank liens, priorities and other protections

11

for loans to be made to the Chapter 11 Trustee for the period through November 30, 2007. D-6.

The Chapter 11 Trustee, at paragraph 27.b of the Trustee's Motion, in an abundance of caution in accordance with Del.Bankr.L.R. 4001-2(a)(i), and prior to consideration by the Bankruptcy Court of the Trustee's Motion, highlighted that: "The replacement liens granted with respect to the Debtor's use of Westernbank's cash collateral have the same priority as the Prepetition Liens and accordingly prime the liens granted under the Kachkar DIP to the extent of any property of the Debtor's estate that was unencumbered on the Petition Date. Westernbank asserts that there was no such unencumbered property on the Petition Date." D-6 ¶27.b.

The interim hearing on the Trustee's Motion was held by the Bankruptcy Court on August 23, and the final hearing was held on September 7, 2007. D-10; D-14. Kachkar objected to the proposed financing. D-8; D-13. At the August 23 hearing, the Chapter 11 Trustee and Westernbank agreed to the entry of an interim order (the "Interim Westernbank Financing Order"), authorizing the Trustee to borrow up to an aggregate amount of $1,502,100, as requested in the Trustee's Motion. D-10 at 26. Pursuant to the Interim Westernbank Financing Order, the Chapter 11 Trustee was authorized to borrow from Westernbank in accordance with the interim budget for the period through September 6, 2007 attached to the Interim Westernbank Financing Order. D-11 ¶ 2(a).

At the August 23, 2007 hearing, Kachkar by his counsel made the same objections that Kachkar had made to entry of the Emergency Order, and also objected to

32268-001\DOCS_DE:136672.4

entry of the proposed final order to the extent that it contained the waiver of certain

provisions of the Bankruptcy Code as they related to Westernbank. D-10 at 6-17.

Kachkar did not contest or object to the Bankruptcy Court's finding that the Westernbank

financing, if approved, was negotiated in good faith and that the financing to be disbursed

by Westernbank likewise would be in good faith. Kachkar's attorney stated:

> I don't begrudge a good faith finding, they can have it. I
> have no reason to believe that the negotiations that have
> taken place with the trustee are anything other than good
> faith. *However, without the protections afforded to Dr.*
> *Kachkar, they will be able to shield themselves behind that*
> *good faith finding, and Dr. Kachkar will have limited relief*
> *on appeal.*

*Id.* at 11 (emphasis added).

At the August 23 hearing, United States Bankruptcy Judge Gross clarified

his finding on the priming issue, stating:

> Having read the propose[d] Interim Order, I am of the view
> that whatever rights Dr. Kachkar has on the -- -- essentially
> on the priming issue, are preserved. That's been so
> represented and I also observe that the stage is set for a
> fight at a later date as to the allocation of assets, the post-
> petition assets, the proceeds, the cash proceeds from cash
> collateral and that those positions of the parties are not
> upset by the proposed order, and under the circumstances I
> am prepared to enter the interim order as presented by the
> chapter 11 trustee here.

*Id.* at 26.

The Interin Westernbank Financing Order was entered on August 23,

2007. D-11. The Bankruptcy Court made the following finding, among others:

> F.   Good Faith.  The use of Cash Collateral and the
> borrowing provided in this Interim Order was negotiated in
> good faith and at arms' length between the Trustee and
> Westernbank. That credit to be extended under this Interim

13

> Order will be extended in good faith, and for valid business
> purposes and uses, the consequence of which is that
> Westernbank is entitled to the protections and benefits of
> section 364(e) of the Bankruptcy Code.

*Id.* ¶ F.

> The Interim Westernbank Financing Order expressly provided that:
> [Westernbank's postpetition liens] shall be subject and
> subordinate to the liens granted under the Kachkar DIP (as
> defined below) on (1) unencumbered property of the
> Debtor's estate as of July 11, 2007, if any, or (2) property
> acquired after the Petition Date and prior to the date hereof
> by USA or the Trustee from funds used for USA's direct
> benefit provided under the postpetition financing extended
> to the Debtor pursuant to the Bankruptcy Court's Interim
> Order dated July 11, 2007 (the "Kachkar DIP"), if any.

*Id.* ¶ 2(c).

On September 7, 2007, the Bankruptcy Court held the final hearing on the

Westernbank financing. D-14. At that hearing, Kachkar's counsel raised the same

objections to the proposed final order as she had argued in opposition to the Interim

Westernbank Financing Order. *Id.* at 3-5. After considering the objections, the

Bankruptcy Court granted the Trustee's Motion, noting that the financing by

Westernbank was "critical and essential to the Trustee's administration of the USA estate

and to avoid immediate and irreparable harm to the Trustee's administration of the USA

estate." D-16 at 3-4. As agreed at the prior hearing, Westernbank did not require the

priming of any liens that might have been granted to Kachkar pursuant to the interim

Kachkar DIP Order. D-14 at 20-24. Any issues regarding the priority of the prepetiton

liens of Westernbank and the postpetition liens of Kachkar and Westernbank,

14

respectively, with respect to any property of Inyx USA's estate, were deferred to a later

date. *Id.* at 22.

The Bankruptcy Court entered the Final Westernbank Financing Order on

September 7, 2007 following the final hearing on the Trustee's Motion, authorizing the

Chapter 11 Trustee to borrow from Westernbank an aggregate amount of up to

$3,373,100, inclusive of the funds advanced under the Emergency Order and the Interim

Westernbank Financing Order, and pursuant to the budget attached to the Final

Westernbank Financing Order (the "Budget"). D-16. The Final Westernbank Financing

Order granted to Westernbank perfected liens, administrative expense status and other

protections, including those that were incorporated into the Interim Westernbank

Financing Order. *Id.*

The Bankruptcy Court's findings set forth in the Final Westernbank

Financing Order included, *inter alia*:

> G.    Good Faith.  The use of Cash Collateral and the
> borrowing provided in this Order was negotiated in good
> faith and at arms' length between the Trustee and
> Westernbank.  That credit to be extended under this Order
> will be extended in good faith, and for valid business
> purposes and uses, the consequence of which is that
> Westernbank is entitled to the protections and benefits of
> Section 364(e) of the Bankruptcy Code.

*Id.* ¶ G.

The Final Westernbank Financing Order again specified that:

> [Westernbank's postpetition liens] shall be subject and
> subordinate to the liens granted under the Kachkar DIP (as
> defined below) on (1) unencumbered property of the
> Debtor's estate as of July 11, 2007, if any, or (2) property
> acquired after the Petition Date and prior to August 16,

15

> 2007 by USA or the Trustee from funds used for USA's
> direct benefit provided under the postpetition financing
> extended to the Debtor pursuant to the Bankruptcy Court's
> Order dated July 11, 2007 (the "Kachkar DIP"), if any.

*Id.* ¶ 2(c).

Kachkar did not seek or obtain a stay of the Final Westernbank Financing

Order.

Westernbank has fully advanced and extended the postpetition loan

authorized pursuant to the Final Westernbank Financing Order, and the Trustee has

expended the proceeds of the advances in the operation of the business of Inyx USA

pursuant to the approved Budget and in payment of postpetition expenses of Inyx USA's

estate.

*[Remainder of page left intentionally blank]*

16

**ARGUMENT**

**I.**

**KACHKAR'S APPEAL FROM THE FINAL**

**WESTERNBANK FINANCING ORDER IS MOOT**

The Final Westernbank Financing Order was entered notice and hearings,

and authorized the Chapter 11 Trustee to obtain credit and incur debt pursuant to the

terms and conditions specified in the order pursuant to section 364 of the Bankruptcy

Code. All objections to the Trustee's Motion, including Kachkar's, were overruled by

the Bankruptcy Court.

Section 364(e) of the Bankruptcy Code, as applied by the Third Circuit,

governs this appeal. That section provides:

> The reversal or modification on appeal of an
> authorization under this section to obtain credit or incur
> debt, or of a grant under this section of a priority or a lien,
> does not affect the validity of any debt so incurred, or any
> priority or lien so granted, to an entity that extended such
> credit in good faith, whether or not such entity knew of the
> pendency of the appeal, unless such authorization and the
> incurring of such debt, or the granting of such priority or
> lien, were stayed pending appeal.

11 U.S.C. § 364(e).

**A.    Westernbank Extended the Westernbank Financing in Good Faith to the
Chapter 11 Trustee Pursuant to the Final Westernbank Financing Order**

It is uncontested that the Westernbank financing was negotiated by

Westernbank and extended to the Chapter 11 Trustee in good faith under Bankruptcy

Code section 364(e). The Bankruptcy Court made a finding of good faith in paragraph G

17

of the Final Westernbank Financing Order, and Kachkar's counsel acknowledged on the

record of the August 23 hearing that the Westernbank financing was made in good faith.

D-16 ¶G; D-10 at 11.  The good faith finding is not challenged by Kachkar in his

Appellant's Brief.

**B.**    **Kachkar Did Not Seek or Obtain a Stay of the Final Westernbank Financing Order**

Kachkar did not seek or obtain a stay of the Final Westernbank Financing

Order.  Westernbank proceeded to fully disburse the postpetition loan pursuant to the

Final Westernbank Financing Order, for Inyx USA's purposes pursuant to the Budget and

in payment of postpetition expenses of Inyx USA's estate.  Absent a stay, the validity of

the fully disbursed debt incurred by the Chapter 11 Trustee, and the liens, priorities and

other protections granted to Westernbank pursuant to the Final Westernbank Financing

Order, may not be reversed or modified on appeal, and the Kachkar appeal is moot as

provided by section 364(e) of the Bankruptcy Code.

In *Resolution Trust Corp. v. Swedeland Development Group, Inc. (In re

Swedeland Development Group, Inc.)*, 16 F.3d 552 (3d Cir. 1994), the Third Circuit

Court of Appeals unequivocally held that an appeal from a bankruptcy court order

authorizing superpriority postpetition financing that was fully disbursed prior to an

appeal and expended for working capital by the borrower was moot. *Id.* at 562-63.  The

Third Circuit explained that under "these circumstances, the bankruptcy court could not

on remand enjoin Swedeland from using the proceeds of the . . . loan nor could it order

18

Swedeland to return the proceeds, as they were gone." *Id.* at 563. The Third Circuit also

determined that other protections extended to the lender, such as the requirement and

existence of an interest reserve which was deposited by the debtor for the benefit of the

postpetition lender, likewise were protected by section 364(e). *Id.* The Third Circuit

further noted that though the interest reserve was property of the debtor, it was

established for the benefit of the postpetition lender, and therefore "voiding the reserve

would impact the security for which [the postpetition lender] bargained and thus would

be inconsistent with the protection afforded it by section 364(e)." *Id.* The Court found

that even if effective relief could be obtained by voiding the reserve, "in view of section

364(e) it cannot be done." *Id.*

Kachkar's appeal similarly cannot be undone. Pursuant to the Final

Westernbank Financing Order, the Westernbank financing has been fully disbursed and

used for the purposes specified in the Final Westernbank Financing Order. Kachkar

failed to seek or obtain a stay of the Final Westernbank Financing Order in either the

Bankruptcy Court or this Court, with full knowledge of the effect of section 364(e), as

acknowledged by his attorney. D-10 at 11. Kachkar must now be held to the

consequences of his decision. The circumstances presented by the Westernbank

financing are identical to those that were presented in respect of the financing order in

*Swedeland*. As determined by the Third Circuit in *Swedeland*, Kachkar's appeal is moot

and the terms of the Westernbank financing cannot be reversed or modified on appeal

absent a stay.

19

The purpose of section 364(e) of the Bankruptcy Code is to induce a

postpetition financing made by a lender in good faith to a trustee or trustee in a

bankruptcy proceeding.  The statute assures a postpetition lender that a loan extended

pursuant to section 364(e) will be enforced on the terms of the order entered by the

bankruptcy court.  Accordingly, unless a stay of the financing order is obtained pending

appeal, or the bankruptcy court did not find that the lender had acted in bad faith, an

appellate court may not upset the validity of the debt incurred or the protections granted

to the postpetition lender.  *See* 11 U.S.C. § 364(e); *see also Burchinal v. Cent. Wash.*

*Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1487 (9th Cir. 1987).  A good faith

lender that "extends credit in reliance on a financing order is entitled to the benefit of that

order, even if it turns out to be legally or factually erroneous." *Kham & Nate's Shoes No.*

*2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1355 (7th Cir. 1990).

If Kachkar wished to preserve his right of appeal, it was incumbent upon

him to seek a stay pending appeal.  As stated by the Seventh Circuit in *In re EDC*

*Holding Co.*, 676 F.2d 945 (7th Cir. 1982), section 364(e):

20

> seek[s] to overcome people's natural reluctance to deal
> with a bankrupt firm whether as purchaser or lender by
> assuring them that so long as they are relying in good faith
> on a bankruptcy judge's approval of the transaction they
> need not worry about their priority merely because some
> creditor is objecting to the transaction and is trying to get
> the district court or the court of appeals to reverse the
> bankruptcy judge. *The proper recourse for the objecting
> creditor is to get the transaction stayed pending appeal.*

*Id.* at 947 (emphasis added). *See also, Weinstein, Eisen & Weiss, LLP v. Gill (In re

Cooper Commons, LLC)*, 430 F.3d 1215, 1218 (9th Cir. 2005) (holding not only that

appeal from postpetition financing was moot because of section 364, but also that "any

provisions of the financing agreement that [lender] might have bargained for or that

helped to motivate its extension of credit are protected by § 364(e)"), *cert. denied*, 546

U.S. 1174 (2006); *Boullioun Aircraft Holding Co. v. Smith Mgmt. (In re W. Pac. Airlines,

Inc.)*, 181 F.3d 1191, 1196 (10th Cir. 1999) (holding that where DIP funds were fully

disbursed in reliance on postpetition financing agreement, lender was entitled to full

section 364(e) protection and appeal of order granting debtor's interest in lease of aircraft

as collateral to postpetition lender was moot); *Unsecured Creditors Comm. v. First Nat'l

Bank & Trust Co. (In re Ellingsen MacLean Oil Co.)*, 834 F.2d 599, 604 (6th Cir. 1987)

(holding that waiver in financing order of debtors' ability to challenge banks' prepetition

security interest was protected by section 364(e) and that appeal of order was moot in

absence of stay pending appeal); *White Rose Food v. Gen. Trading Co. (In re Clinton St.

Food Corp.)*, 170 B.R. 216, 220 (S.D.N.Y. 1994) (holding that section 364(e) prohibits

21

not only outright invalidation of lien or priority where challenging party failed to seek a stay, but also modification of other terms of postpetition lender's bargained-for consideration); *In re Fla. W. Gateway, Inc.*, 147 B.R. 817, 819 (Bankr. S.D. Fla. 1992) (applying protections of section 364(e) and denying motion for reconsideration of postpetition financing order where party seeking relief failed to obtain stay pending appeal.

Kachkar suggests that "[m]any issues could be resolved, and without harm to the Trustee or the estate," if the Final Westernbank Financing Order "was revised" at this time. Appellant's Brief, p. 45. But Kachkar makes no specific suggestion regarding how this can be done short of asking this Court to instruct the Bankruptcy Court to "resolve the conflict of the two financing orders…to preserve the lead position afforded by the Kachkar DIP Order." *Id.* As set forth below, Kachkar's liens have no "lead position" to preserve beyond that provided by the provisions of paragraphs 2(d) and 4 of the Final Westernbank Financing Order. But as in *Swedeland*, even were it otherwise, there is no way that giving Kachkar what he now requests "can be done on any basis…without either infringing" Westernbank's "protections under section 364(e) or exceeding the court's powers to grant relief following the reversal" of the Bankruptcy Court's section 364 Final Westernbank Financing Order. *Resolution Trust Corp. v. Swedeland Development Group, Inc. (In re Swedeland Development Group, Inc.)*, 16 F.3d at 563. Accordingly, as in *Swedeland*, Kachkar's appeal is moot.

Kachkar failed to seek or obtain a stay of the Final Westernbank Financing

Order, which the Bankruptcy Court found, and Kachkar's counsel acknowledged, was

made in good faith.  Pursuant to Bankruptcy Code section 364(e), Kachkar's appeal is

moot and the relief sought should be denied.

**II.**

**THE FINAL WESTERNBANK FINANCING ORDER
DOES NOT IMPERMISSIBLY PROVIDE FOR THE PRIMING OF
THE LIENS GRANTED TO KACHKAR BY THE INTERIM KACHKAR DIP
ORDER NOR ARE THE BANKRUPTCY COURT'S FINDINGS CLEARLY
ERRONEOUS, ITS CONCLUSIONS OF LAW IN ERROR,
OR ITS DECISION AN ABUSE OR DISCRETION**

**A.     The Liens Granted to Westernbank Do Not Impermissibly Prime Any Lien
of Kachkar Entitled to Priority**

The liens granted to Westernbank by the Final Westernbank Financing

Order do not impermissibly prime the liens granted by the interim Kachkar DIP Order.

The Final Westernbank Financing Order expressly provided that:

> [Westernbank's postpetition liens] shall be subject and
> subordinate to the liens granted under the Kachkar DIP (as
> defined below) on (1) unencumbered property of the
> Debtor's estate as of July 11, 2007, if any, or (2) property
> acquired after the Petition Date and prior to the date hereof
> by USA or the Trustee from funds used for USA's direct
> benefit provided under the postpetition financing extended
> to the Debtor pursuant to the Bankruptcy Court's Interim
> Order dated July 11, 2007 (the "Kachkar DIP"), if any.

*Id.* ¶ 2(c).

It is clear from clause (1) above that Westernbank's liens in

unencumbered property of Inyx USA's estate as of July 11, 2007, if any, are subject and

subordinate to the liens granted to Kachkar by the interim Kachkar DIP Order entered on

23

the following day, July 12, 2007. It is equally obvious, pursuant to clause (2) above, that Westernbank's liens in estate property acquired after the Petition Date from the proceeds of the Kachkar financing, which were fully advanced to Inxy USA prior to entry of the Interim Westernbank Financing Order, are subject and subordinate to the liens granted by the interim Kachkar DIP Order.

But what of liens in estate property acquired postpetition from the proceeds of Westernbank's prepetition collateral? It is undisputed that the liens granted to Kachkar by the interim Kachkar DIP Order did *not* prime the prepetition liens of Westernbank. Neither paragraph 5 nor paragraph 7 nor any other provision of the interim Kachkar DIP Order grants any priming liens to Kachkar, nor does any provision of the interim Kachkar DIP Order purport to deprive the Westernbank of any of its existing liens pursuant to the equities of the case doctrine of Bankruptcy Code section 552(b)(2) or otherwise. Pursuant to Bankruptcy Code section 552(b)(1), a prepetition lender's liens that extend to a debtor's prepetition property and to "proceeds, products, offspring, or profits of such property," also extend to postpetition proceeds, products, offspring, or profits of such property. 11 U.S.C. § 552(b)(1).

The provision of the Final Westernbank Financing Order expressly subjecting and subordinating Westernbank's liens to Kachkar's liens to the extent of collateral acquired with the proceeds of the Kachkar financing makes clear that any prepetition liens of Westernbank in prepetition collateral and any "proceeds, products, offspring, or profits of such property" are not subordinate to Kachkar's liens granted by

24

the interim Kachkar DIP Order.  The Bankruptcy Court's characterization and

preservation of the lenders' respective lien positions in the Final Westernbank Financing

Order should be upheld.

**B.     The Bankruptcy Court's Interpretation of its Interim Kachkar DIP Order is Not Clearly Erroneous with respect to the Extent and Priority of the Liens granted to Kachkar by the Interim Kachkar DIP Order, on which Interpretation Depends the Question of Whether Those Liens were Primed by the Final Westernbank Financing Order**

Further, the Kachkar's liens granted to him by the interim Kachkar DIP

Order are *not* expressly given priority over any lien of Westernbank or any other liens

whatsoever, whether those other liens arose prior to or after entry of the interim Kachkar

DIP Order.  Paragraphs 5 and 7 merely grant to Kachkar "liens" upon the property

described, with no description whatsoever of the priority afforded to Kachkar's liens,

other than the express subordination of Kachkar's liens to preexisting liens in paragraph 5

of the interim Kachkar DIP Order.  Had Kachkar required liens having priority over

existing or subsequent financings extended to Inyx USA, he could have insisted upon

such priority as a condition to his extending the Kachkar financing.  He did not.[9]

_____

[9] Even if the interim Kachkar DIP Order in paragraphs 5 and 7 had granted to Kachkar first priority lien status or priority over subsequently granted liens, which it did not, Kachkar obtained only interim approval of the Kachkar financing pursuant to the interim Kachkar DIP Order.  Accordingly, all of the terms and provisions including the priority of any liens granted by the interim Kachkar Financing Order remained subject to change until entry of the final order on the Kachkar financing.  Federal Rule of Bankruptcy Procedure 4001(c)(1)(B), expressly recognizing this doctrine in the amendments that became effective on December 1, 2007, now requires an interim financing order to identify any lien provision "that is proposed to remain in effect if interim approval is granted, but final relief is denied."  Though, as noted, this change in the Rule requiring such a statement in an interim financing order became effective after entry of the interim

25

There simply is no priming by Westernbank pursuant to the Final Westernbank Financing Order. That order expressly provides that the liens granted to Westernbank are subordinate to Kachkar's postpetition liens in unencumbered property and property acquired from the proceeds of the Kachkar financing, and does nothing to alter the continuation of any prepetition liens of Westernbank in postpetition proceeds pursuant to Bankruptcy Code section 552(b)(1). Paragraph 5 of the interim Kackhar DIP Order provided Kachkar with "liens upon all unencumbered property of the Debtors' estates *not subject to prior valid, perfected first priority security interests of any party, including those of Westernbank Puerto Rico*." D-2, ¶ 5 (emphasis added). The right of Kachkar to prove the existence of such unencumbered property has been preserved and is not affected by the Final Westernbank Financing Order.

Kachkar repeatedly asserts that the interim and final orders entered on the Westerbank financing somehow altered the priority of the liens granted to Kachkar. In support Kachkar argues that the language in the Final Westernbank Financing Order somehow "redefined" Kachkar's collateral because it is other than the precise language that he requested be utilized. Even assuming that the interim Kachkar Financing Order gave Kachkar priming liens over subsequently granted liens (which, as set forth above, it did not), the language of the Final Westernbank Financing Order expressly preserves any priority of Kachkar's liens granted by the interim Kachkar DIP Order in unencumbered

---

Kachkar Financing Order, the doctrine behind such new requirement is clearly that an interim financing order is not final, and remains subject to change, until it is final.

26

property, and equally expressly preserves the priority of any prepetition liens of

Westernbank in prepetition collateral and the proceeds thereof under Bankruptcy Code

section 552(b). D-16, ¶ 2(c). Kachkar similarly asserts that that language of the Final

Westernbank Financing Order "impermissibly shift[s] the burden to Dr. Kachkar to prove

that post-petition property was acquired with the proceeds of the Kachkar DIP

Financing." Appellant's Brief, p. 23. But such requirement of proof arises from

Bankruptcy Code section 552(b) itself, which extends any prepetition liens of

Westernbank to the proceeds of its collateral, not from any order of the Bankruptcy

Court.

Indeed, Westernbank, through its counsel, expressly conceded at the

August 23 hearing that Westernbank's liens granted by the Interim Westenbank

Financing Order did not affect any priority given to Kachkar's liens under the interim

Kachkar DIP Order:

> MR. MILLER: The lien issue has to be decided on another
> day, Your Honor, and that's what the emergency order and
> the proposed order proposes to do. It doesn't prime
> Kachkar in any way, shape, or form.

D-10 at 19.

The subordination provision of the last clause of paragraph 2(c) of the

Interim Westernbank Financing Order referred to by Westernbank's counsel in the

colloquy quoted above is identical to the subordination provision of the last clause of the

same paragraph of the Final Westernbank Financing Order. D-11 ¶2(c); D-16 ¶2(c).

27

In short, any Westernbank prepetition lien which already had priority over Kachkar's postpetition liens, maintained the priority afforded them by Bankruptcy Code section 552(b) and the interim Kachkar DIP Order, and the financing liens granted to Westernbank by paragraph 2(c) of the Final Westernbank Financing Order were made expressly subject and subordinate to, and did not prime, the liens granted under the interim Kachkar DIP Order.  D-11 ¶2(c); D-16 ¶2(c).

It is equally apparent that the replacement liens granted to Westernbank pursuant to paragraph 4 of the Final Westernbank Financing Order do not prime Kachkar's postpetition liens.  D-16 ¶4.  The proceeds of any of Westernbank's prepetition collateral constitute cash collateral under Bankruptcy Code section 363(a). Accordingly, (i) any proceeds of Westernbank's collateral constituted its cash collateral on the Petition Date and (ii) and any of Westernbank's prepetition collateral that was subsequently converted into cash also was cash collateral, subject to Westernbank's liens. Westernbank is entitled to adequate protection under Bankruptcy Code section 363(e) to the extent of any diminution in the value of Westernbank's prepetition collateral.  The replacement liens granted to Westernbank as adequate protection by the Final Westernbank Financing Order pursuant to Bankruptcy Code section 361(2) expressly are given "the same priority as the Financing Liens," i.e., they are subject to the identical provision of paragraph 2(c) of that order that makes them subject and subordinate to Kachkar's liens as set forth in paragraph 2(c) of the Final Westernbank Financing Order. D-16 ¶¶2(c) and 4.

28

The Bankruptcy Court's characterization and preservation of the lenders' respective lien positions in the Final Westernbank Financing Order was correct, and certainly was not clearly erroneous, and should be upheld.

**C.     The Chapter 11 Trustee's Waivers of the Doctrine of Marshaling, the Equities of the Case Doctrine, and Surcharge Rights, and the Payment of Proceeds Provision of the Final Westernbank Financing Order, Were Justified and Appropriate and Authorization of these Provisions by the Bankruptcy Court as a Necessary Condition of the Westernbank Financing <u>Was Not Clearly Erroneous</u>**

With respect to the other protections granted to Westernbank, by the waivers of marshalling, the equities of the case, and the right to assert surcharge, the record reflects that the Chapter 11 Trustee, after intense negotiations with Westernbank, made these concessions to Westernbank upon the exercise of his business judgment in order to obtain the Westernbank financing.  D-14 at 6.

Such waivers are typical in postpetition financings.  *See, e.g., In re Sharper Image Corp.*, Ch. 11 Case No. 08-10322 (KG) (Bankr. D. Del. Mar. 7, 2008) (D.I. 182, pp. 28, 37) (waiving doctrine of marshaling, "equities of the case" exception to section 552(b) and section 506(c)); *In re Buffets Holdings Inc.*, Ch. 11 Case No. 08-10141 (MFW) (Bankr. D. Del. Feb. 22, 2008) (D.I. 350, pp. 20, 27) (waiving doctrine of marshaling and section 506(c)); *In re Domain, Inc.*, Ch. 11 Case No. 08-10132 (PJW) (Bankr. D. Del. Feb 14, 2008) (D.I. 218, pp. 29, 37-38) (waiving doctrine of marshaling, "equities of the case" exception to section 552(b) and section 506(c)); *In re Am. Home Mortgage Holdings, Inc.*, Ch. 11 Case No. 07-11047 (CSS) (Bankr. D. Del. Nov. 28,

29

2007) (D.I. 2205, p. 13) (waiving doctrine of marshaling and section 506(c)); *In re HomeBanc Mortgage Corp.*, Ch. 11 Case No. 07-11079 (KJC) (Bankr. D. Del. Sept. 13, 2007) (D.I. 268, p. 17) (waiving doctrine of marshaling and section 506(c) except as provided in carve-out); *In re Tweeter Home Entm't Group*, Ch. 11 Case No. 07-10787 (PJW) (Bankr. D. Del. June 29, 2007) (D.I. 253, pp. 32-33, 44) (waiving doctrine of marshaling, "equities of the case" exception to section 552(b) and section 506(c)); *In re New Century TRS Holdings*, Ch. 11 Case No. 07-10416 (KJC) (Bankr. D. Del. May 7, 2007) (D.I. 565, p. 15) (waiving doctrine of marshaling and section 506(c)); *In re Foamex Int'l, Inc.*, Ch. 11 Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005) (D.I. 197, pp. 17, 23) (waiving doctrine of marshaling and section 506(c)). Moreover, any section 506(c) claims are property of the Trustee, not any other party, and Kachkar's standing to raise an objection to the section 506(c) waiver is doubtful. See, *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000) and *Debbie Reynolds Management Co. v. Calstar Corp. (In re Debbie Reynolds Hotel & Casino, Inc.)*, 255 F.3d 1061, 1066 (9th Cir. 2001).

The Chapter 11 Trustee strenuously negotiated the Final Westernbank Financing Order, and that the provisions of that order were necessary to secure the financing from Westernbank necessary for Inyx USA's continued operations. "[W]e argued very forcefully with the lender, and we did negotiate a number of these provisions to improve upon them from our perspective . . . . [W]e have negotiated this order, and

it's where we are . . . ." D-14 at 6-7. The Bankruptcy Court's findings based on such record were not clearly erroneous.

The Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Delaware Bankruptcy Local Rules (the "Local Rules") do not prohibit such waivers, which are customarily given in negotiations for postpetition financing.

Indeed, the Chapter 11 Trustee did *not* agree to many of the more onerous provisions typically demanded by postpetition lenders which the Local Rules require to be highlighted and for which justification is required, such as cross-collateralization (other than by replacement liens or other adequate protection) (Local Rule 4001-2(a)(1)(A)), provisions or findings that limit the estate from challenging the lender's prepetition claim or liens Local Rule 4001-2(a)(1)(B)), liens in avoidance actions Local Rule 4001-2(a)(1)(D)), or the "roll-up" of the prepetition debt by using the postpetition loan to pay it Local Rule 4001-2(a)(1)(E)). The absence of all of these provisions from the Final Westernbank Financing Order further supports the Bankruptcy Court's finding that the terms of the Westernbank financing were justified.

No authority supports Kachkar's argument that the waivers he complains of are prohibited. *In re The Colad Group, Inc.*, 324 B.R. 208 (Bankr. W.D.N.Y. 2005), the only authority cited by Kachkar, is inapplicable. In that case the bankruptcy court declined to authorize a waiver of marshalling in an interim, emergency financing submitted on minimal notice by the debtor at the inception of its bankruptcy case. The bankruptcy court was unwilling at that juncture to grant relief except to the extent

31

"minimally necessary to maintain the existence of the debtor, until such time as the debtor can effect appropriate notice to creditors and parties in interest." *Id*. at 213. This concern with the speed and limited notice on which "first day" orders are considered is shared by many bankruptcy courts, and is reflected in the Delaware Local Rules, which provide that "[w]hen Financing Motions are filed with the Court on or shortly after the petition date, the Court may grant interim relief" only to the extent "necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Local Rule 4001-2(b). The Final Westernbank Financing Order was not a "first day" order such as that addressed by the *The Colad Group* court and Local Rule 4001-2(b). The Final Westernbank Financing Order was entered 2 months after the commencement of Inyx USA's case, more than 2 weeks after the filing by Inyx USA of its motion for approval of the Westernbank financing, and after *four* hearings, held on August 15, 16 and 23 and September 7, on the Westernbank financing. D-3; D-4; D-10; CDT-8.

Unlike the "first day" hearing addressed by *The Colad Group* court, the Appellant and other parties in interest had ample notice and opportunity to be heard with respect to the relief sought with respect to the Westernbank financing. Kachkar objected and participated in the proceedings before the Bankruptcy Court. His objections were overruled. The Bankruptcy Court exercised its discretion properly based upon the record before it, its findings were neither clearly erroneous nor abuse of discretion, and it made no clear error of law. Its decision should be sustained. *See In re Ames Dep't Stores, Inc.*,

32

115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (in determining whether to approve a financing order under section 364, the bankruptcy court "acts in its informed discretion").

Finally, Kachkar complains that the payment of proceeds provision of paragraph 9 of the Final Westernbank Financing Order is without regard to Kachkar's liens. Kachkar fails to quote the precise language of paragraph 9, which requires only that the Westernbank loans be paid from the proceeds of Westernbank's "Lender's Collateral." D-16, ¶ 9. The Bankruptcy Court's decision to include this provision in the Final Westernbank Financing Order is not clearly erroneous.

## CONCLUSION

The Kachkar appeal is governed by section 364(e) of the Bankruptcy Code as applied by the Third Circuit. Westernbank disbursed the Westernbank financing to the Chapter 11 Trustee in good faith pursuant to the Final Westernbank Financing Order and Kachkar's appeal is moot. The Final Westernbank Financing Order further does not impermissibly prime any of the liens granted to Kachkar, nor did the inclusion of the customary lender protection provisions or the payment of proceeds provision in the Final Westernbank Financing Order constitute clear error or an abuse of discretion by the

33

Bankruptcy Court. The Bankruptcy Court fully considered the Kachkar objections and found them to be without foundation or substance. Accordingly, the appeal should be dismissed.

Dated: April 14, 2008
       Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

_____
Richard Pachulski (CA Bar No. 90073)
Bruce Grohsgal (Bar No. 3583)
919 North Market Street, 17th Floor
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:    rpachulski@pszjlaw.com
           bgrohsgal@pszjlaw.com

Counsel for the Chapter 11 Trustee

34

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXAERIS, INC., and | ) | Case No. 07-10887 (KG) |
| INYX USA, LTD., | ) | Case No. 07-10888 (KG) |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| DR. JACK KACHKAR, | ) | |
| | ) | |
| Appellant | ) | Civil Action No. 07-621 (GMS) |
| v. | ) | |
| | ) | |
| WESTERNBANK PUERTO RICO, | ) | |
| STEPHEN S. GRAY, Chapter 11 | ) | |
| Trustee of INYX USA, LTD. | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

## CERTIFICATE OF SERVICE

I, Bruce Grohsgal, hereby certify that on the 14th day of April, 2008 I caused a

copy of the following document to be served on the individuals on the attached service list in the

manner indicated:

**Brief of Appellee Chapter 11 Trustee of Inyx USA, Ltd.**

Bruce Grohsgal (Bar No. 3583)

32268-001\DOCS_DE:130225.12

**Exaeris/Inyx Brief and Addendum**
**Service List**
**Case No. 07-10887 & 07-10888**
**Document No.136719**
**04 – Hand Delivery**
**02 – First Class Mail**


**Hand Delivery**
Tobey M. Daluz, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
919 N. Market Street, 12th Floor
Wilmington, DE  19801

**Hand Delivery**
Sheldon K. Rennie, Esquire
Anthony Sacullo, Esquire
Fox Rothschild LLP
919 N. Market Street, Ste. 1300
Wilmington, DE  19801

**Hand Delivery**
Steven K. Kortanek, Esquire
Klehr Harrison Harvey Branzburg & Ellers LLP
919 Market Street, Suite 1000
Wilmington, DE  19801

**Hand Delivery**
Richard L. Schepacarter
United Trustee
844 King Street, Room 2207
Lockbox #35
Wilmington, DE  19899-0035

**First Class Mail**
Michael Menkowitz, Esquire
Fox Rothschild O'Brien & Frankel
2000 Market Street, 10th Floor
Philadelphia, PA  19103

**First Class Mail**
Harvey Miller, Esquire
Weil Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY 10153