## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| EXAERIS, INC., and | : | Bankr. Case No. 07-10887 (KG) |
| INYX USA, LTD.,[1] | : | Bankr. Case No. 07-10888 (KG) |
| | : | |
|      Debtors. | : | |
| | : | |
| DR. JACK KACHKAR, | : | |
| | : | |
|      Appellant, | : | |
| | : | |
|    v. | : | C.A. No. 07-621 GMS |
| | : | |
| STEPHEN S. GRAY, CHAPTER 11 | : | |
| TRUSTEE FOR INYX USA, LTD., and | : | |
| WESTERNBANK PUERTO RICO, | : | |
| | : | |
|      Appellees. | : | |

## REPLY BRIEF OF APPELLANT,
## DR. JACK KACHKAR

---

### APPEAL FROM THE ORDER OF SEPTEMBER 7, 2008
### ENTERED IN CASE NO. 07-10887 (KG)
### AS TO DEBTOR INYX, USA, LTD. (CASE NO. 07-10888 (KG))
### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

Tobey M. Daluz, Esq. (DE Bar No. 3939)
Leslie C. Heilman, Esq. (DE Bar No. 4716)
BALLARD SPAHR ANDREWS
 & INGERSOLL, LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
(302) 252-4465

Dated: April 29, 2008         *Attorneys for Appellant, Dr. Jack Kachkar*

---

[1]    The Exaeris, Inc. and Inyx USA, Ltd. bankruptcy cases were jointly administered at the outset of their cases at Bankruptcy Case No. 07-10887, however, on December 6, 2007, on the motion of Westernbank Puerto Rico, the Bankruptcy Court vacated the order for joint administration.

## TABLE OF CONTENTS

**Page(s)**

### Table of Contents

**Page**

INTRODUCTION ........................................................................................................... 1

REPLY ............................................................................................................................. 1

I.    Preliminary Statement ........................................................................................... 1

II.   The Representations Of Westernbank's Counsel, The Reservation Of Rights
      Provisions In The Westernbank DIP Order And The Bankruptcy Court's
      Supplementary Rulings On The Record Exempt These Issues From The Safe
      Harbor Provisions Of Section 364(e) And, As Such, The Appeal Is Not Moot. ................ 3

      A.    The Appeal Is Not Moot Because Meaningful or Effective Relief Can Be
            Granted to Dr. Kachkar Upon Reversal and Remand To The Bankruptcy
            Court. ............................................................................................................ 3

      B.    The Appellees' Reliance Upon The Westernbank DIP Order Is Belied By
            Their Representations That Nothing In The Westernbank DIP Order
            Affected The Lien Priority Granted to Dr. Kachkar Pursuant To The
            Kachkar DIP Order ....................................................................................... 8

      C.    A Stay Pending The Appeal Was Not Required. ........................................ 9

      D.    Westernbank Is Not Entitled To The Protections Under Section 364(e) Of
            The Bankruptcy Code. ............................................................................... 10

III.  The Westernbank DIP Order Does Indeed Impermissibly Provide For The
      Priming Of The Liens Granted To Dr. Kachkar By The Kachkar DIP Order And
      Its Entry Represents A Plain Error Of Law Or An Abuse Of Discretion. ...................... 13

IV.   The Trustee's Waiver Of The Doctrine Of Marshalling And Certain Provisions Of
      The Bankruptcy Code Was Inappropriate And Authorization Of These Provisions
      By The Bankruptcy Court As A Necessary Condition Of The Westernbank
      Financing Was Clearly Erroneous. ................................................................................ 18

CONCLUSION ............................................................................................................. 20

i

# TABLE OF CITATIONS

**Page(s)**

Cases

*In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986)....................................10

*Alpern v. Lieb*, 38 F.3d 933 (7th Cir. 1994)....................................................................................2

*Bennett v. Rainier National Bank (In re Bennett)*, 21 B.R. 440 (B.A.P. 1st Cir. 1982) .................2

*Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484 (9th Cir. 1987) .........5,8

*In re Cantwell*, 639 F.2d 1050 (3d Cir. 1981) .................................................................................5

*Church of Scientology v. United States*, 506 U.S. 9 (1992)..........................................................4,5

*In re Crouse Group, Inc.*, 71 B.R. 544 (Bankr. E.D. Pa. 1987)......................................................19

*EDC Holding Co.*, 676 F.2d 945 (7th Cir. 1982)....................................................................8,11,12

*In re Fla. W. Gateway, Inc.*, 147 B.R. 817 (Bankr. S.D. Fla. 1992).................................................5

*Ford Motor Co. v. NLRB*, 305 U.S. 364 (1939) ..............................................................................2

*General Elec. Co. v. Cathcart*, 980 F.2d 927 (3d Cir. 1992)...........................................................5

*Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351 (7th Cir. 1990)...........8

*In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261 (3d Cir. 1991)...........................................2,9,21

*New York Life Ins. Co. v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 901 F.2d 1359 (6th Cir. 1990) ..................................................................................................................10,11,12

*In re Phase-I Molecular Toxicology, Inc.*, 285 B.R. 494 (Bankr. D.N.M. 2002)..........................19

*In re Qmect, Inc.*, No. 04-41044 T, 2006 Bankr. LEXIS 1478 (Bankr. N.D. Cal. June 2, 2006) ....................................................................................................................................16

*Resolution Trust Corp. v. Swedeland Dev. Group., Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552 (3d Cir. 1994) ...............................................................................2,3,4,5,9

*In re Skagit Pacific Corp.*, 316 B.R. 330 (B.A.P. 9th Cir. 2004) ........................................... 15-16

*In re The Colad Group, Inc.*, 324 B.R. 208 (Bankr. W.D.N.Y. 2005) ...........................................20

*United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365
(1988)..........................................................................................................................................15

*Unsecured Creditors Comm. v. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean
Oil Co.)*, 834 F.2d 599 (6th Cir. 1987) ...............................................................................5,10

*Weiss v. People Savings Bank (In re Three Partners, Inc.)*, 199 B.R. 250 (Bankr. D.
Mass. 1995)..................................................................................................................................15

*In re White Crane Trading Co., Inc.*, 170 B.R. 694 (Bankr. E.D. Cal. 1994) ................................10

*White Rose Food v. Gen. Trading Co. (In re Clinton St. Food Corp.)*, 170 B.R. 216
(S.D.N.Y. 1994)............................................................................................................................5

## Statutes

11 U.S.C. § 361.............................................................................................................................16

11 U.S.C. § 363(m)..........................................................................................................................8

11 U.S.C. § 364(c) .......................................................................................................................4,19

11 U.S.C. § 364(d) .......................................................................................................................4,19

11 U.S.C. § 364(d)(2) ....................................................................................................................19

11 U.S.C. § 364(e) ...........................................................................................4,7,8,9,10,11,12,13

11 U.S.C. § 552.............................................................................................................................16

11 U.S.C. § 552(b)(1) ....................................................................................................................15

## Treatises and Other Authorities

3 COLLIER ON BANKRUPTCY, ¶ 364.06[1] (15th ed. rev. 2008) ................................................10,11

## INTRODUCTION

On September 17, 2007, Dr. Kachkar timely filed his Notice of Appeal from the Westernbank DIP Order,[1] commencing this appeal.[2]  On March 25, 2008, Dr. Kachkar filed his Opening Brief in support of this appeal [D.I. 10], and on April 14, 2008, the Appellees, Westernbank and the Trustee, respectively, each filed their responsive briefs.[3]  Dr. Kachkar now files his Reply Brief in further support of this appeal.

## REPLY

### I.    Preliminary Statement

Dr. Kachkar again urges the Court to see through the Appellees' empty allegations and repeated assurances that the Westernbank DIP Order did not prime Dr. Kachkar's First DIP Liens, and find that the resulting Westernbank DIP Order negotiated by and between Westernbank and the Trustee, did just that.  There are two bankruptcy court orders which clearly contradict each other; each granting first-priority DIP liens on the same collateral.  Obviously, both orders cannot be given effect, and clearly only the first order should prevail:  the Kachkar DIP Order.  Dr. Kachkar relied on the sanctity of the Kachkar DIP Order when he agreed to provide the Kachkar DIP Financing to these Debtors, and the Bankruptcy Court's erroneous conclusion that the protections afforded under the Kachkar DIP Order are preserved and not

---

[1]    Terms not otherwise defined herein shall have the meanings ascribed to them in the Brief of Appellant, Dr. Jack Kachkar (the "Opening Brief"), filed with this Court on March 25, 2008 (D.I. 10).

[2]    A copy of the Notice of Appeal is attached as Tab 17 to the Record.

[3]    The Brief of Appellee Westernbank Puerto Rico [D.I. 12] is hereinafter referred to as the "WB Brief."  The Brief of Appellee Chapter 11 Trustee of Inyx USA, Ltd. [D.I. 14] is hereinafter referred to as the "Trustee Brief" (and together with the WB Brief, the "Response Briefs").

1

upset by the subsequent Westernbank DIP Order is inapposite to the language of the

Westernbank DIP Order itself, and the fifteen (15) representations of the parties, including those

of Westernbank, on the record, and reiterated in the Response Briefs.

In their Response Briefs, the Appellees do not even address the conflicting

provisions of the Bankruptcy Court's orders, nor do they try to dispute or even refute the cases

cited by Dr. Kachkar that justice demands a remand to resolve the ambiguities created by the

Bankruptcy Court's conflicting orders as to the priority of the First DIP Liens. *See, e.g., Ford*

*Motor Co. v. NLRB*, 305 U.S. 364, 373 (1939) ("It is familiar appellate practice to remand causes

for further proceedings without deciding the merits, where justice demands that course in order

that some defect in the record may be supplied."); *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d

261, 262-63 (remanding the case to the bankruptcy judge where there were "two bankruptcy

court orders which clearly contradict[ed] each other"); *Alpern v. Lieb*, 38 F.3d 933, 936 (7th Cir.

1994) ("Instead of guessing at the district judge's meaning, we remand the case so that the judge

can explain himself"); *Bennett v. Rainier Nat'l Bank (In re Bennett)*, 21 B.R. 440, 441-42

(B.A.P. 1st Cir. 1982) (where the bankruptcy court's orders were "brief and ambiguous" the

appellate court remanded the case because "[r]endering an opinion under such circumstances

place[d] [the appellate court] in a position of theorizing through speculation and guesswork what

actually was decided by the bankruptcy court").

Moreover, the Appellees conclude that Dr. Kachkar's appeal is moot in absence

of a stay pending the appeal, and misconstrue the holding in *Resolution Trust Corp. v. Swedeland*

*Dev. Group., Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552 (3d Cir. 1994), to advance

their position. The Third Circuit Court of Appeals in *Swedeland*, however, advances the

principle that an appeal is not moot if some meaningful or effective relief can be granted to the

2

appellant even if the parties cannot be returned to the *status quo ante* upon a reversal. *See Swedeland, 16 F.3d at 560-62*. Through this appeal, Dr. Kachkar is not seeking to undo the loan; he is merely seeking to preserve the lien priority that was given to him under the Kachkar DIP Order. As discussed more fully *infra*, meaningful and effective relief could easily be granted to Dr. Kachkar on remand to the Bankruptcy Court.

Furthermore, Westernbank must be held to the consequences of its decision to lend without certainty on the issue of priority of Dr. Kachkar's liens. The Appellees' reliance upon the terms of the Westernbank DIP Order is belied by their repeated representations on the record that nothing in the Westernbank DIP Order affected the priority granted to Dr. Kachkar under the Kachkar DIP Order. The Bankruptcy Court's grant of a reservation of rights on the record and in the Westernbank DIP Order makes it clear that the issue of lien priority is preserved. Instead, Westernbank and the Trustee are doing what Dr. Kachkar predicted -- hiding behind § 364(e) -- while further advancing a position for which finality was not given.

**II.    The Representations Of Westernbank's Counsel, The Reservation Of Rights Provisions In The Westernbank DIP Order And The Bankruptcy Court's Supplementary Rulings On The Record Exempt These Issues From The Safe Harbor Provisions Of Section 364(e) And, As Such, The Appeal Is Not Moot.**

**A.    The Appeal Is Not Moot Because Meaningful or Effective Relief Can Be Granted to Dr. Kachkar Upon Reversal and Remand To The Bankruptcy Court.**

Westernbank and the Trustee cite *Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552 (3d Cir. 1994), for the proposition that because Dr. Kachkar did not seek a stay of the Westernbank DIP Order, and the funds of the Westernbank DIP Financing have been fully disbursed, Dr. Kachkar's appeal is moot and the terms and conditions of the financing inviolable. This was not the *ratio decidendi* of *Swedeland*, however, and contrary to Westernbank's assertions, the circumstances surrounding the

3

Westernbank DIP Financing are not identical to those that were presented in respect of the

financing order in *Swedeland*. Specifically, the Court of Appeals in *Swedeland* held the appeal

moot, not because the financing had been fully disbursed and used for the purposes specified in

the order, but because the Court of Appeals could conceive of no effective relief which could be

granted upon reversal of the postpetition financing order. *See Swedeland*, 16 F.3d at 562 n.9.

The Bankruptcy Code provides that "[t]he court, after notice and a hearing, may

authorize the obtaining of credit or the incurring of debt" with priority over certain other

creditors. *See* 11 U.S.C. §§ 364(c) and (d). It also provides that

> The reversal or modification on appeal of an authorization under
> this section to obtain credit or incur debt, or of a grant under this
> section of a priority or a lien, does not affect the validity of any
> debt so incurred, or any priority or lien so granted, to an entity that
> extended such credit in good faith, whether or not such entity knew
> of the pendency of the appeal, unless such authorization and the
> incurring of such debt, or the granting of such priority or lien, were
> stayed pending appeal.

11 U.S.C. § 364(e).

While § 364(e) allows by its terms a reversal or appeal of the bankruptcy court's

authorization to incur debt and grant a priority lien, it limits the relief a reviewing court may

grant if the challenging party has not sought a stay. "Section 364(e) does not preclude a court

from reversing an authorization absent a stay. What it limits is the effect of a reversal."

*Swedeland*, 16 F.3d at 562. In support of the principle that an appeal is not moot if some

meaningful or effective relief can be granted to the appellant upon reversal, the Third Circuit

relied on the Supreme Court's decision in *Church of Scientology v. United States*, 506 U.S. 9, 12

(1992):

> in which the Supreme Court emphasized that an appeal is not to be
> dismissed as moot merely because a court cannot restore the
> parties to the ***status quo ante***. Rather, when a court can fashion
> "***some*** form of meaningful relief," even if it only partially

4

redresses the grievances of the prevailing party, the appeal is not
moot.

*Swedeland*, 16 F.3d at 559-60 (*citing Church of Scientology*, 506 U.S. at 12) (emphasis in

original). *See also*, *General Elec. Co. v. Cathcart*, 980 F.2d 927, 934 (3d Cir. 1992) ("'an appeal

will be dismissed as moot when events occur during [its] pendency . . . which prevent the

appellate court from granting *any* effective relief'") (emphasis added) (quoting *In re Cantwell*,

639 F.2d 1050, 1053 (3d Cir. 1981). Thus, a mootness analysis requires the court to consider

whether Dr. Kachkar could obtain meaningful and effective relief upon reversal even though the

money has been loaned and the parties cannot be returned to the *status quo ante*. [4]

Through this appeal, Dr. Kachkar is not seeking to undo the loan, nor is he

seeking to deny Westernbank its superpriority administrative claim status on the terms set forth

in Paragraph 2(d) of the Westernbank DIP Order. *See* Westernbank DIP Order, ¶ 2(d). [5] Dr.

Kachkar is merely seeking to preserve the *status quo* with respect to the position to which Dr.

Kachkar was allowed under the Kachkar DIP Order, and to modify the terms of the Westernbank

DIP Order to be consistent with the representations on the record. Under these circumstances,

---

[4]    The Appellees also cite to other decisions to support their conclusion that Dr. Kachkar's
appeal is moot in absence of a stay pending the appeal. *See Burchinal v. Cent. Wash.
Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1487-88 (9th Cir. 1987); *Unsecured
Creditors Comm. v. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.)*, 834
F.2d 599, 604 (6th Cir. 1987); *White Rose Food v. Gen. Trading Co. (In re Clinton St.
Food Corp.)*, 170 B.R. 216, 220-22 (S.D.N.Y. 1994); *In re Fla. W. Gateway, Inc.*, 147
B.R. 817, 820 (Bankr. S.D. Fla. 1992). None of these cases, however, address the
principle advanced by the Third Circuit in *Swedeland*, that an appeal is not moot if some
meaningful or effective relief can be granted to the appellant even if the parties cannot be
returned to the *status quo ante* upon a reversal. *See Swedeland*, 16 F.3d at 560-62.
Moreover, the courts in the above cases did not read section 364(e) as the Third Circuit
did in *Swedeland*, finding that "section 364(e) does not preclude a court from reversing
an authorization absent a stay." *See id.* at 562.

[5]    A copy of the Westernbank DIP Order is attached as Tab 16 to the Record.

the bankruptcy court on remand could certainly grant meaningful and effective relief to Dr.
Kachkar by (i) enjoining the payment of proceeds from a sale of substantially all the assets of
Inyx USA, or otherwise upon default, to Westernbank until there is an accounting; (ii) modifying
the Westernbank DIP Order in a manner consistent with the representations on the record and as
set forth in the proposed blackline provided by Dr. Kachkar in the record,[6] to resolve the
ambiguities in the order and to preserve the collateral afforded to Dr. Kachkar by the Kachkar
DIP Order, and (iii) granting any further relief as may be just and proper.

Moreover, the grant of any of the above meaningful or effective relief to Dr.
Kachkar would not upset the validity of the debt incurred or impair the security for which
Westernbank has bargained. Indeed, by the Appellees' own admissions, "[a]ny issues regarding
the priority of the prepetition liens of Westernbank and the postpetition liens of [Dr.] Kachkar
and Westernbank, respectively, with respect to any property of Inyx USA's estate, were deferred
to a later date."[7] *See* Trustee Brief, pp. 14-15; *see also* WB Brief, p. 17. "The record is crystal

---

[6]     For example, to maintain the *status quo* as between the two postpetition financing orders,
        Dr. Kachkar proposed, *inter alia*, the following changes to Paragraph 2(c) of the
        Westernbank DIP Order:

> [T]hat the Financing Liens shall be subject and subordinate to the
> liens granted under the ~~Kachkar DIP (as defined below)~~Bankruptcy
> Court's Interim Order dated July 11, 2007 (the "Kachkar DIP" on
> (1) unencumbered property of the Debtor's estate ~~as of July 11,
> 2007,~~ if any, or (2) post-Petition Date property of Inyx. USA.
> ~~property acquired after the Petition Date and prior to the date
> hereof by USA or the Trustee from funds used for USA's direct
> benefit provided under the postpetition financing extended to the
> Debtor pursuant to the Bankruptcy Court's Interim Order dated
> July 11, 2007 (the "Kachkar DIP"), if any.~~ The Financing Liens
> shall not be subject to sections 510, 549, 550 or 551 of the
> Bankruptcy Code.

[7]     Also, contrary to Westernbank's [and the Trustee's] assertions in the Response Briefs
        that "[a]ll objections to the [Westernbank DIP Motion], including those interposed by

(continued...)

6

clear that the [Westernbank DIP Order] did not prime [Dr.] Kachkar's liens." *See* WB Brief, p. 17; *see also* Trustee Brief, p. 23-25. It follows then that the safe harbor provision contained in Section 364(e) does not shield Westernbank from an appeal on the issue of the priority of liens between Westernbank and Dr. Kachkar. Westernbank itself agreed to defer the issue and advanced the financing with full knowledge that the liens, priorities and other protections granted to Westernbank pursuant to the Westernbank DIP Order could be revisited at a later time. This appeal is that time.

Stated in another way -- there was simply no *priority or lien so granted* under the Westernbank DIP Order as between Dr. Kachkar and Westernbank to be afforded the protections under Section 364(e). Accordingly, Westernbank must be held to the consequences of its decision to lend before its priority was firmly established. In addition, the provisions added to the Westernbank DIP Order which preserve all parties' rights with respect to the priority of liens granted by the Bankruptcy Court, and the Bankruptcy Court's ruling on the record that all sale proceeds should be escrowed while an accounting of post-petition collateral is performed, essentially carved the lien priority issues out from the safe harbor provisions of Section 364(e) and properly preserved the issue for appeal. Since the Bankruptcy Court is able to provide effective relief upon reversal and remand to the Bankruptcy Court, the mootness doctrine simply does not apply.

---

(...continued)

[Dr.] Kachkar, were overruled and rejected by the Bankruptcy Court," *see* WB Brief, p. 12; *see also* Trustee Brief, p. 17, the Bankruptcy Court, as well as the Westernbank DIP Order, specifically reserved Dr. Kachkar's objections relating to any priming of any liens granted to Dr. Kachkar pursuant to the Kachkar DIP Order, and any issues relating thereto were deferred to a later date. *See* 8/23/07 Tr. at 26:9-16; 9/7/07 Tr. at 5:16-6:2, 24:20-25:7; Westernbank DIP Order, ¶¶ 12(i) and (j). True and correct copies of the 8/23/07 and 9/7/07 hearing transcripts are attached as Tabs 10 and 14, respectively, to the Record.

7

**B.    The Appellees' Reliance Upon The Westernbank DIP Order Is Belied By Their Representations That Nothing In The Westernbank DIP Order Affected The Lien Priority Granted to Dr. Kachkar Pursuant To The Kachkar DIP Order**

Safe harbor provisions like those in Sections 364(e) and 363(m) of the

Bankruptcy Code are intended to protect parties who materially change their position in reliance

upon the language of the order. *See* 11 U.S.C. § 363(m) and 364(e); *see also EDC Holding Co.*,

676 F.2d 945, 947 (7th Cir. 1982) (explaining that the purpose of section 364(e) was to

overcome a good faith lender's reluctance to extend financing in a bankruptcy context by

permitting reliance on a bankruptcy judge's authorization); *Burchinal v. Cent. Wash. Bank (In re*

*Adams Apple, Inc.)*, 829 F.2d 1484, 1488 (9th Cir. 1987) (stating that Congress's overall policy

in passing section 364(e) was to "foster[] private investment in failing companies by promoting

reliance on a bankruptcy court's authorization"); *Kham & Nate's Shoes No. 2, Inc. v. First Bank*

*of Whiting*, 908 F.2d 1351, 1355 (7th Cir. 1990) (stating that § 364(e), and companion provisions

like § 363(m), entitle a good faith lender to the benefit of a financing order, who extends credit in

reliance on that order). "But all this presupposes good faith." *EDC Holding Co.*, 676 F.2d at

947.

Here, in keeping with the policy of the Bankruptcy Code and the sanctity of

financing orders, the Bankruptcy Court below recognized Dr. Kachkar's reliance upon

Westernbank's representations that the lien priority issue would be deferred when it entered the

Westernbank DIP Order, stating that:

> The Court's concern is that there hasn't been a motion to modify
> an earlier order entered by this Court. I'm talking specifically
> about the DIP order in favor of Dr. Kachkar. And, there has to be
> a little bit of sanctity given to DIP orders, or people are not going
> to come into this court and lend money for fear that there will be a
> subsequent order that may erode the protections that they were
> previously afforded.

8

8/23/07 Tr. at 24:4-11. In funding the Westernbank DIP Financing, Westernbank can not in good faith claim that it relied to its detriment upon any priority of lien on the collateral in dispute because this issue was preserved was for a later date. Thus, the entire rationale for the safe harbor protections afforded by Section 364(e) is in question in this case.[8]

### C.    A Stay Pending The Appeal Was Not Required.

As more fully discussed in Section I.A. above, since the issue of lien priority was preserved as between Dr. Kachkar and Westernbank, and the Bankruptcy Court is able to provide effective relief upon reversal and remand, there was no requirement to stay the transaction pending appeal. *See* 11 U.S.C. 364(e). Moreover, even if the protections afforded under Section 364(e) apply, "Section 364(e) does not preclude a court from reversing an authorization absent a stay." *Swedeland*, 16 F.3d at 562.

Finally, while the Appellees argue that the Westernbank DIP Order cannot be challenged on appeal absent a stay, it is obvious that they misunderstand the nature of Dr. Kachkar's objection. Here, Dr. Kachkar is not seeking to unravel the Westernbank DIP Financing, but instead, is seeking to maintain a lien priority previously granted to him by the Bankruptcy Court. Because we have conflicting orders on the issue, a stay is not required. *See, e.g., In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 267 n.8 (3d Cir. 1991) (by analogy to Section 363(m) which is consistent with Section 364(e), finding that a stay was not required

---

[8]    Westernbank and the Trustee make reference to the fact that there was no good faith finding in the Kachkar DIP Order, however, the protections afforded to Dr. Kachkar are not at issue in this appeal, and any allegations of bad faith made at the first day hearing are unfounded. In addition, while it is true that the Kachkar DIP Order is an interim order, a Final Kachkar DIP Order authorizing the Kachkar DIP Financing to the Exaeris estate has been entered, and it did indeed contain a good faith finding by the Court that the Kachkar DIP Financing was extended in good faith pursuant to Section 364 of the Bankruptcy Code. A hearing on the Final Order authorizing the Kachkar DIP Financing to the Inyx estate will take place in the near term.

because purchaser was not challenging the sale or the plan, but instead, was seeking to reaffirm a prior order of sale by contesting the motion for final decree).

**D.     Westernbank Is Not Entitled To The Protections Of Section 364(e) Of The Bankruptcy Code.**

Extension of credit "in good faith" is an express requirement of Section 364(e) of the Bankruptcy Code. *New York Life Ins. Co. v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 901 F.2d 1359, 1366 (6th Cir. 1990). Further, Section 364(e) does not protect a financing order unless an explicit finding of good faith is made by the bankruptcy court. *Id.* (holding that "an implicit finding of 'good faith' in a § 364(e) context is insufficient and that 'good faith' under that section should not be presumed"). *See also In re Abbotts' Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 148-49 (3d Cir. 1986) (by analogy involving the use of the expression "in good faith" in § 363(m), holding that the bankruptcy court must make an explicit finding on this question despite appellants' failure to seek a stay in challenging the order.) Determination of "good faith" is a mixed determination of fact and law. *Revco*, 901 F.2d at 1366. *See also Abbotts' Dairies*, 788 F.2d at 147.

Good faith is not defined in the Code. "Good faith" has been defined to mean "honesty in fact in the conduct or transaction concerned." *Unsecured Creditors' Comm. v. First Nat'l Bank & Trust Co. of Escanaba (In re Ellingsen MacLean Oil Co.)*, 834 F.2d 599, 605 (6th Cir. 1987), *cert. denied*, 488 U.S. 817 (1988). "Lack of good faith includes a knowledge of the illegality of the action, an action taken for an improper purpose, such as to gain some advantage in litigation or otherwise, or a failure to reveal material facts to the court." 3 COLLIER ON BANKRUPTCY, ¶ 364.06[1] (15th ed. rev. 2008) (*citing, e.g., In re White Crane Trading Co., Inc.*,

170 B.R. 694 (Bankr. E.D. Cal. 1994).[9]  Bad faith has also been found "where it is evident from the loan agreement itself that the transaction has an intended effect that is improper under the Bankruptcy Code. . . . " *In re EDC Holding Co.*, 676 F.2d 945, 948-49 (7th Cir. 1982) (finding good faith lacking when the lender extended credit in return for a priority that it knew the debtor could not give it, and that the credit extension had an ulterior motive borne from the lender's defensive posture in litigation).

It was the Trustee's burden to prove that good faith existed in connection with the Westernbank DIP Financing.  It was incumbent upon the Bankruptcy Court to specifically address the "good faith" requirement before entering the Westernbank DIP Order in accordance with the mandate of Section 364(e).  That was indeed the situation in *Revco,* which resulted in a remand, and should be the result here.

In *Revco*, after hearing on the matter, the bankruptcy court entered an order approving a financing arrangement, the use of cash collateral, and adequate protection in the form of periodic cash payments of interest on the prepetition secured debt. *Revco*, 901 F.2d at 1360, 1361-63.  The bankruptcy court did not expressly address the good faith of the lender at the hearing held before the order was entered. *Id.* at 1365.  A holder of preferred stock in a holding company which owned and controlled the debtor in possession was the sole objector to the financing, and appealed to the district court questioning only that portion of the bankruptcy court's order that authorized periodic interest payments as adequate protection. *Id.* at 1362.  The district court, basing its decision upon section 364(e) of the Bankruptcy Code, dismissed the

---

[9]    As a supplement to the Addendum of Statutes, Rules, Regulations, or Similar Material to Brief of Appellant, Dr. Jack Kachkar (the "Addendum"), a copy of 3 COLLIER ON BANKRUPTCY, ¶ 364.06[1] (15th ed. rev. 2008) is reproduced herein and attached hereto as Tab A.

11

appeal because the equity holder did not obtain a stay pending appeal. *Id.* at 1363. On appeal to the Court of Appeals, upon reviewing the district court's consideration of several findings of the bankruptcy court which it found implicitly established "good faith," the Court of Appeals held that an implicit finding of "good faith" in a § 364(e) context is insufficient and that "good faith" under that section should not be presumed. *Id.* at 1365-66.

Here, the Appellees rely on Paragraph G of the Westernbank DIP Order to support their contention that Westernbank extended the Westernbank DIP Financing in good faith. Paragraph G alone, however, is not enough. No where in the record is there an express finding of this essential factor by the Bankruptcy Court, and it cannot be presumed. *See Revco*, 901 F.2d at 1366. It was the Trustee's burden to present evidence of good faith, through proffer or testimony, and that was not done. Nor did the Bankruptcy Court make any express findings of good faith on the record at the hearings in these proceedings. Accordingly, the Appellees should not be allowed to rest on empty conclusions of "good faith" as the basis for eroding Dr. Kachkar's lien position.

Indeed, good faith is questionable because the terms of the Westernbank DIP Order completely run afoul of the representations made by Westernbank's counsel on the record that they had no intention of priming Dr. Kachkar's lien.[10] Notwithstanding the preservation of rights, and the material representations on the record to which the Bankruptcy Court relied, the Westernbank DIP Order did effectuate a priming of Dr. Kachkar's liens, an intended effect that is improper under the Bankruptcy Code absent Dr. Kachkar's consent, the provision of adequate

---

[10]     Westernbank and Dr. Kachkar are currently embroiled in litigation in several jurisdictions. It is not far fetched to suppose that Westernbank's attempt to erode any lien priority afforded to Dr. Kachkar is "borne from an ulterior motive." *See EDC Holdings*, 676 F.2d at 948-49.

protection and court approval. Therefore, this Court should not now allow Westernbank to

shield itself behind a good faith finding and the safe harbor provisions of Section 364(e) of the

Bankruptcy Code, a shield that is contrary to the stated preservation of rights and in

contravention of the findings of the Bankruptcy Court which relied upon Westernbank's

representations that the issue of lien priority was preserved for another day.

**III.    The Westernbank DIP Order Does Indeed Impermissibly Provide For The Priming Of The Liens Granted To Dr. Kachkar By The Kachkar DIP Order And Its Entry Represents A Plain Error Of Law Or An Abuse Of Discretion.**

The Appellees assert that the Westernbank DIP Order did not prime Dr.

Kachkar's liens. The language of the Westernbank DIP Order, however, belies that conclusion.

It is noteworthy to mention that in every instance where the Appellees contend that the financing

liens granted to Westernbank by paragraph 2(c) of the Westernbank DIP Order were made

expressly subject and subordinate to, and did not prime, the liens granted under the Kachkar DIP

Order, no where do they address the date restrictions imposed upon Dr. Kachkar's liens by such

order, except in quoting the relevant paragraphs. Instead, the Appellees simply state that the

"order expressly provides that the liens granted to Westernbank are subordinate to Kachkar's

postpetition liens in unencumbered property and property acquired from the proceeds of the

Kachkar financing." Trustee Brief, p. 26. *See also* WB Brief, pp. 18-19.

The Kachkar DIP Order provided Dr. Kachkar with liens upon (i) *all*

*unencumbered property of the Debtors' estates* not subject to prior valid, perfected first priority

security interests of any party, and (ii) *all post-Petition Date property of the Debtors*, not

including any causes of action arising under Chapter 5 of the Bankruptcy Code or proceeds

thereof. *See* Kachkar DIP Order, ¶¶ 5, 7 (emphasis added). Paragraph 2(c) of the Westernbank

DIP Order, however, states that:

> [Westernbank's Financing Liens] shall be subject and subordinate
> to the liens granted under the Kachkar DIP [Order] on (1)
> unencumbered property of the Debtor's estate ***as of July 11, 2007***,
> if any, or (2) ***property acquired after the Petition Date and prior
> to [the date of the Westernbank DIP Order] by [Inyx] USA or the
> Trustee from funds used for [Inyx] USA's direct benefit provided
> under the postpetition financing extended to the Debtor pursuant
> to the [Kachkar DIP Order]***, if any.

*See* Westernbank DIP Order, ¶ 2(c) (emphasis added). In his brief, the Trustee asserts that the

above language does nothing to alter the priority of liens granted to Dr. Kachkar, and that it does

not "redefine" the collateral simply because "it is other than the precise language" contained in

the Kachkar DIP Order. Trustee Brief, p. 26. But that is precisely the issue here. In particular,

Paragraph 2(c) of the Westernbank DIP Order conflicts with the Kachkar DIP Order, and erodes

Dr. Kachkar's bargained for lien position, by:

- The imposition of a date limitation on the collateral to which the First DIP
  Liens attached. Specifically, the language of the Westernbank DIP Order
  states that Westernbank's Financing Liens are subordinate to the liens
  granted under the Kachkar DIP (i) ***solely*** to the extent that postpetition
  property was acquired ***prior to the date of entry of the Westernbank DIP
  Order***; and (ii) ***solely*** on unencumbered property of the Debtor's estate ***as
  of July 11, 2007***. The imposition of these date limitations completely
  undermines the collateral in which Dr. Kachkar was granted a lien, and
  effectively denies Dr. Kachkar any collateral to which his First DIP Liens
  attach. Indeed, the definition of unencumbered property clearly
  encompasses all such property existing on the Petition Date regardless of
  date, and no such date limitation was imposed in the Kachkar DIP Order.

- The requirement that the First DIP Liens attach to post-Petition Date
  property *solely* to the extent that such postpetition property was ***acquired
  from funds used for Inyx USA's direct benefit***. This requirement -- that
  post-Petition Date property has to be acquired with proceeds of the
  Kachkar DIP Financing -- impairs the First DIP Liens, because it narrows
  and redefines the collateral on which the First DIP Liens attach in direct
  contravention of the Kachkar DIP Order. The Kachkar DIP Order grants a
  lien on unencumbered property and post-Petition Date property, period.

A careful reading of the two orders as demonstrated by the above makes clear that

the Appellees' arguments and the Bankruptcy Court's erroneous conclusion that the protections

afforded under the Kachkar DIP Order are preserved and not upset by the subsequent

Westernbank DIP Order are inapposite to the language of Westernbank DIP Order itself. [11]

      Furthermore, while the Appellees contend that, pursuant to § 552(b)(1) of the

Bankruptcy Code, a prepetition lender's liens that extend to a debtor's prepetition property and

to "proceeds, products, offsprings, or profits of such property," also extend to postpetition

proceeds, products, offspring, or profits of such property, such an extension is not automatic, nor

does it extend to "after-acquired" property obtained by the debtor or the estate postpetition.

"Generally, a creditor's prepetition security interest does not extend to after acquired property by

the estate." *Weiss v. People Savings Bank (In re Three Partners, Inc.)*, 199 B.R. 230, 238

(Bankr. D. Mass 1995) (*citing United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484

U.S. 365, 374 (1998)) (holding that property acquired post-petition was not subject to any lien by

the bank because the bank did not obtain a rollover lien).

      Moreover, the proceeds of postpetition assets do not automatically constitute the

proceeds of a secured creditor's prepetition security interest in pre-petition assets. *See In re*

---

[11]    The Trustee also argues that Dr. Kachkar makes no specific suggestion regarding how the
Westernbank DIP Order could have been and should now be modified to "resolve the
conflict of the two financing orders . . . to preserve the lead position afforded to Dr.
Kachkar by the Kachkar DIP Order." *See* Trustee Brief, p. 22. The Trustee's argument
misses the mark as the record is replete with references to Dr. Kachkar's suggested
modifications. *See* 8/23/97 Tr. at 13:12-17:24. Indeed, Dr. Kachkar even went so far as
to provide a proposed blackline to the Bankruptcy Court, which was attached to his
Renewed Objection and served upon all parties of record, including the Trustee. *See*
Exhibit B to Renewed Objection, attached as Tab 13 to the Record. The Trustee goes on
to further state that "Kachkar's liens have no 'lead position' to preserve *beyond that
provided by the provisions of paragraphs 2(d)* [sic] *and 4 of the [Westernbank DIP
Order]*." *See* Trustee Brief, p. 22. Again, it is obvious that the Trustee either
misunderstands intentionally or misconstrues the nature of the preservation of rights
granted by the Bankruptcy Court -- Dr. Kachkar's lien position was to be preserved as
provided by the provisions in paragraphs 5-7 of the *Kachkar DIP Order*, and not, the
provisions of the Westernbank DIP Order.

15

*Skagit Pacific Corp.*, 316 B.R. 330, 336 (B.A.P. 9th Cir. 2004); *In re Qmect, Inc.*, No. 04-41044

T, 2006 Bankr. LEXIS 1478, *10 (Bankr. N.D. Cal. Jun. 2, 2006). It is incumbent on

Westernbank to present detailed evidence tracing the funds claimed as proceeds. By virtue of the

qualifying language contained in the Westernbank DIP Order, however, and in contrast to the

Appellees' repeated assertions that Dr. Kachkar's liens are preserved, the entry of the

Westernbank DIP Order automatically extended Westernbank's prepetition security interest to

post-Petition Date property in violation of Section 552 of the Bankruptcy Code, and

impermissibly shifted the burden to Dr. Kachkar to prove that post-Petition Date property was

acquired with proceeds of the Kachkar DIP Order.

Contrary to Westernbank's belief, the replacement liens did, indeed, enlarge or

enhance the prepetition liens held by Westernbank and otherwise primed Dr. Kachkar's liens.

Westernbank states that Dr. Kachkar's argument misconstrues Section 361 of the Bankruptcy

Code (WB Brief, p. 22), however, that is simply not true. As the record reflects, the sole reason

that was offered for the priming of the First DIP Liens by Westernbank's replacement liens was

for the post-petition use of its Cash Collateral. *See* Westernbank DIP Motion, ¶ 41.[12] As of the

Petition Date, however, there was no cash collateral and it was anticipated that there would not

be any cash proceeds of prepetition amounts for a very long time. *See* 7/11/07 Tr. at 44.[13] At no

point did Westernbank ever argue diminution of value of any of its collateral and it would have

been its burden to do so. Thus, it is not Dr. Kachkar who misconstrues § 361, as the postpetition

---

[12]    A copy of the Westernbank DIP Motion is attached as Tab 6 to the Record.

[13]    Relevant portions of the 7/11/07 transcript are attached as Exhibit A to the Objection, at
       Tab 9 of the Record.

use of Cash Collateral was the only basis cited in the pleadings and on the record for the replacement liens.

Westernbank also argues, incorrectly, that to the extent "Westernbank's prepetition collateral was subsequently converted into cash, there was cash collateral subject to Westernbank's liens." *See* WB Brief, p. 22. As discussed above, however, Westernbank has liens on the proceeds of its prepetition collateral security only to the extent Westernbank can trace the funds claimed as proceeds, and such liens do not extend to after-acquired property. Thus, based on the record, the Bankruptcy Court's grant of replacement liens with respect to the Debtor's use of Westernbank's "Cash Collateral" having the same priority as the Prepetition Liens and accordingly priming Dr. Kachkar's liens on postpetition property and that was unencumbered on the Petition Date was clearly erroneous, absent any evidence of the existence of or potential for there to be cash proceeds from the prepetition collateral of Westernbank.

While it is true that replacement liens are intended to protect a secured creditor against value erosion of its collateral security as a result of the administration of the bankruptcy case, a secured creditor will only be granted replacement liens on post-petition property to the extent there is, *in fact*, diminution of value. The burden was on Westernbank to prove that its pre-petition collateral would diminish in value. Clearly, if there was a basis for the granting of replacement liens because of the Debtor's use of Cash Collateral, then Westernbank should have moved for such relief as adequate protection on the Petition Date. It was incumbent upon Westernbank to prove its entitlement to any replacement liens; by granting the replacement liens

to Westernbank absent any evidence of entitlement, the Bankruptcy Court has allowed a priming of Dr. Kachkar's liens on post-Petition Date and unencumbered property.[14]

Accordingly, this Court should reverse the Bankruptcy Court's grant of the Westernbank DIP Financing on the terms and conditions set forth in the Westernbank DIP Order, and remand this case in order to effect a resolution of the conflict between the bankruptcy's court's two orders, and the obvious abrogation of the Bankruptcy Court's earlier approval of the First DIP Liens to the significant prejudice of Dr. Kachkar.

## IV. The Trustee's Waiver Of The Doctrine Of Marshalling And Certain Provisions Of The Bankruptcy Code Was Inappropriate And Authorization Of These Provisions By The Bankruptcy Court As A Necessary Condition Of The Westernbank Financing Was Clearly Erroneous.

As more fully discussed in his Opening Brief, Dr. Kachkar submits that the waivers granted by the Bankruptcy Court were particularly inappropriate in view of the make-up of this case where there are two DIP lenders with competing orders, no agreement between the parties as to the priority of liens, and an automatic payment of sale proceeds provision to only one of the DIP lenders. While the Appellees have cited to numerous Delaware decisions to support their contention that such waivers "are typical" in postpetition financing orders, such waivers are granted *based upon the circumstances of each case*.[15] Here, in view of the uncertainty that arises by virtue of the existence of two postpetition loans secured by the same collateral, Westernbank should not have been granted the waivers.

---

[14]   Dr. Kachkar contends that the dispute with respect to Westernbank's replacement lien is easily fixed if the Bankruptcy Court finds after evidence of diminution of value, that the replacement lien will not prime Dr. Kachkar's First DIP Liens.

[15]   Noteworthy, is also the fact that none of the cases cited by the Appellees involve dueling DIP liens or competing orders.

The Appellees assert time and again that the burden was on Dr. Kachkar to demonstrate that the waivers (as well as the financing terms) were inappropriate. A trustee or debtor in possession seeking approval of postpetition financing under Section 364(c) of the Bankruptcy Code, however, has the burden of establishing that (a) the debtor is unable to obtain unsecured credit elsewhere, (b) the proposed credit transaction is necessary to preserve the assets of the estate, and (c) the terms of the proposed credit agreements are fair, reasonable, and adequate given the circumstances. *See, e.g., In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987). Section § 364(d) further provides that the Trustee has the burden of proof on the issue of adequate protection. 11 U.S.C. § 364(d)(2). *See also In re Crouse*, 71 B.R. at 549. This legal principle of who bears the burden is aptly noted by the bankruptcy court in *In re Crouse*, stating

> Although 11 U.S.C. § 364(d)(2) provides that the Debtors have the burden on the issue of adequate protection, § 364 is silent on the issue of establishing that property is "subject to a lien." Logic dictates that, as in a cash collateral Motion [sic] per 11 U.S.C. § 363(c)(2), the entity asserting a lien should have the burden of proof on this issue, as it would be anticipated that this party would have the best access to proof on this issue.

71 B.R. 544 at 549 (citations omitted). The burden does not shift from the moving party to the objecting party simply because an objection has been raised. *See, e.g., id.* (holding that the Debtor had not met its burden on any of the three (3) requisite elements under § 364(c)); *In re Phase-I Molecular Toxicology, Inc.*, 285 B.R. 494, 495 (Bankr. D.N.M. 2002) (stating "[a]fter reviewing the Motion and the objection thereto . . . the Court finds that the Debtor has not met its burden of proving that the proposed post-petition financing arrangement . . . meets the requirements of 11 U.S.C. 364(c) or (d).").

Thus, it was the Trustee's burden to show that the terms of the Westernbank DIP Order were fair, reasonable and adequate under the circumstances, not Dr. Kachkar's, and no

evidentiary record was ever made to rely on the Trustee's and Westernbank's assertions that the waivers were appropriate.[16]

        Finally, with respect to the waiver of the equitable doctrine of marshaling, the Appellees' attempt to distinguish the decision in *In re Colad Group, Inc.*, 324 B.R. 208 (Bankr. W.D.N.Y. 2005) because the waiver was requested in a "first day" motion and lack of notice to creditors presented due process concerns, cuts against the Appellees. In fact, the basis for the court's ruling in *Colad* pales in comparison to the underlying facts in this matter. First, the Bankruptcy Court approved the Westernbank DIP Financing on an emergency basis without notice or a written motion. *See* 8/15/07 Tr. at 3:20-5:14; 8/16/07 Tr. at 3:17-22. Twenty-four hours later, given no opportunity to negotiate the terms of the proposed order, Dr. Kachkar was forced to object and argue against the Westernbank DIP Financing before the Court. *See* Objection, ¶ 8 n.3;[17] 8/16/07 Tr. at 9:16-12:20. Thus, if the Court measures the abrogation of due process rights in this case, Dr. Kachkar wins especially in light of the fact that no evidence was ever offered as justification for the priming of Dr. Kachkar's liens.

## CONCLUSION

        In accordance with the Kachkar DIP Order, Dr. Kachkar is entitled to first priority secured post-petition liens upon (i) all unencumbered property of the Debtors' estates not subject to prior valid, perfected first priority security interests of any party, and (ii) all post-Petition Date property of the Debtors, not including any causes of action arising under Chapter 5 of the

---

[16]     It is also noteworthy that more than half of the cases cited by the Appellees to support their proposition that the waiver of Section 552(b)'s "equities of the case" exception is "a recognized and accepted term of postpetition financing," do not include a waiver of the "equities of the case" exception. *See* WB Brief, p. 27.

[17]     A copy of the Objection is as Tab 8 to the Record.

Bankruptcy Code or proceeds thereof. Despite repeated assurances to the Bankruptcy Court and Dr. Kachkar on the record that Westernbank had no intentions of priming Dr. Kachkar's First DIP Liens, the resulting Westernbank DIP Order negotiated solely between Westernbank and the Trustee, did just that.

Many issues could be resolved, without unraveling the financing and without harm to the Trustee or the estate, if this Court remanded to the Bankruptcy Court to revise the Westernbank DIP Order in a manner consistent with the representations on the record. As more fully discussed in the Opening Brief, where two bankruptcy court orders clearly contradict each other, justice demands the remand of the case for further proceedings so that valid and essential findings may be made, or to take further action in accordance with the applicable law. *See In re Marcus Hook*, 943 F.2d at 266, 268. No where in the Response Briefs do the Appellees refute this principle. If the Court is to take Westernbank and the Trustee at their word that Dr. Kachkar's liens have not been primed, then why do they so vehemently argue that the Westernbank DIP Order should not be changed? Their supposition and rhetoric fly in the face of their position that Dr. Kachkar's lien position is preserved.

Accordingly, for the reasons stated herein and in his Opening Brief, Dr. Kachkar respectfully requests that this Court reverse the Bankruptcy Court's grant of the Westernbank DIP Financing on the terms and conditions set forth in the Westernbank DIP Order, and remand the case to the Bankruptcy Court with instructions that it resolve the conflict between the two financing orders, consistent with objections raised herein and the Opening Brief, to preserve the lien position afforded by the Kachkar DIP Order.

21

Dated:  April 29, 2008
Wilmington, Delaware

Respectfully submitted,

/s/ Leslie C. Heilman
Tobey M. Daluz (No. 3939)
Leslie C. Heilman, Esquire (No. 4716)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone:  (302) 252-4465
Facsimile:  (302) 252-4466
Email:  daluzt@ballardspahr.com
           heilmanl@ballardspahr.com

Attorneys for Appellant, Dr. Jack Kachkar

# TAB A

# COLLIER ON BANKRUPTCY

## *Fifteenth Edition Revised*

### VOLUME 3

ALAN N. RESNICK
*Benjamin Weintraub Distinguished Professor of Bankruptcy Law, Hofstra University
School of Law;
Of Counsel, Fried, Frank, Harris, Shriver & Jacobson LLP, New York City*

HENRY J. SOMMER
*Supervising Attorney, Consumer Bankruptcy Assistance Project, Philadelphia*

EDITORS-IN-CHIEF

LAWRENCE P. KING
EDITOR-IN-CHIEF, 1974–2001

**BANKRUPTCY CODE §§ 321–366**

 LexisNexis

reversal.[4]

Some courts have suggested that section 364(e) precludes reversal of any authorization to obtain credit if there was no stay pending appeal and the lender acted in good faith.[5] Other courts have found that section 364(e) protects a postpetition lender only to the extent that it has changed its position in reliance on the authorization, typically by disbursing funds.[6] In view of the extraordinary protection provided by section 364(e), the better approach is to protect only the lender's actual reliance interest, and not its expectation interest. A party in interest should not have to obtain a stay, and perhaps post a bond, to obtain review of transactions that have not yet been consummated, in which the only danger to the lender is disappointment of its expectation. Such a reading is also most consistent with the statutory language itself, which provides: "The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted . . . ."[7] The language does not preclude reversal but only limits the effect of a reversal.

### [1]   Safe Harbor Available Only to Lenders That Acted in Good Faith

Section 364(e) is consistent with section 363(m), which provides similar protection to a buyer or lessee of property of the estate in a section 363 transaction.[8] Like section 363(m), this safe harbor is available only to lenders that acted in good faith.[9]

---

[4] Resolution Trust Corp. v. Swedeland Dev. Group (*In re* Swedeland Dev. Group, Inc.), 16 F.3d 552, 30 C.B.C.2d 1034 (3d Cir. 1994).

[5] New York Life Ins. Co. v. Revco D.S., Inc. (*In re* Revco D.S., Inc.), 901 F.2d 1359, 1363, 22 C.B.C.2d 1263, 1269 (6th Cir. 1990) ("[t]here is language then, that absent a stay pending appeal, we may not reverse an authorization to obtain credit or incur debts unless the lender did not act in good faith"); Burchinal v. Central Wash. Bank (*In re* Adams Apple, Inc.), 829 F.2d 1484, 1487-88, 17 C.B.C.2d 1132, 1135-36 (9th Cir. 1987) ("[a]n appellate court may not reverse the authorization to obtain credit or incur debts under section 364 if the authorization was not stayed pending appeal unless the lender did not act in good faith.").

[6] Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (*In re* Swedeland Dev. Group, Inc.), 16 F.3d 552, 562, 30 C.B.C.2d 1034, 1046 (3d Cir. 1994) ("section 364(e) does not preclude a court from reversing an authorization absent a stay. What it limits is the effect of a reversal."). The language "[t]he reversal or modification on appeal of an authorization under this section . . ." would be meaningless if there was no appellate review of matters not stayed.

[7] 11 U.S.C. § 364(e).

[8] *See* ¶ 363.11 *supra*.

[9] Good faith is a requisite to protection and has been held to require an express finding before the protections of section 364(e) are applicable. *See* New York Life Ins. Co. v. Revco D.S., Inc. (*In re* Revco D.S., Inc.), 901 F.2d 1359, 22 C.B.C.2d 1263 (6th Cir. 1990) (an implicit finding of good

The Code offers no definition of good faith. The concept is derived from former Bankruptcy Rule 805, which used similar language.[10] "Good faith" has been defined to mean "honesty in fact in the conduct or transaction concerned."[11] Consistent with the statute, courts have rejected attempts to characterize as bad faith actions taken with knowledge of a pending appeal.[12] Lack of good faith includes a knowledge of the illegality of the action, an action taken for an improper purpose, such as to gain some advantage in litigation or otherwise, or a failure to reveal material facts to the court.[13] Bad faith has also been found "where it is evident from the loan agreement itself that the transaction has an intended effect that is improper under the Bankruptcy Code . . . ."[14] In *EDC Holding*,[15] for example, the court found good faith lacking when the lender extended credit in return for a priority that it knew the debtor could not give it. Moreover, the court found that the credit extension had an ulterior motive borne from the lender's defensive posture in litigation.[16]

### [2]  Section 364(e) Protects Postpetition Lenders Only

If the authorization is reversed on appeal, only the postpetition lender is protected under section 364(e). Other interested parties would need to seek remedies under other provisions of the Code. For example, if the holder of an existing lien obtained a ruling on appeal that it was not adequately protected when another lender obtained authorization to prime its lien, the remedy would not be to vacate the new lender's senior lien, but rather to provide the existing lender with additional protection or with priority under section 507(b).

---

faith is insufficient under section 364(e); good faith should not be presumed).

[10] *See* Community Thrift & Loan v. Suchy (*In re* Suchy), 786 F.2d 900 (9th Cir. 1985) (good faith requirement under Rule 805 speaks to the integrity of the parties' conduct during the course of the proceeding); Greylock Glen Corp. v. Community Sav. Bank, 656 F.2d 1 (1st Cir. 1981); *In re* Rock Indus. Mach. Corp., 572 F.2d 1195 (7th Cir. 1978).

[11] Unsecured Creditors' Comm. v. First Nat'l Bank & Trust Co. of Escanaba (*In re* Ellingsen MacLean Oil Co.), 834 F.2d 599, 605, 17 C.B.C.2d 1402, 1409 (6th Cir. 1987), *cert. denied*, 488 U.S. 817, 109 S. Ct. 55, 102 L. Ed. 2d 33 (1988).

[12] *See In re* EDC Holding Co., 676 F.2d 945, 947 (7th Cir. 1982) (noting that these provisions "seek to overcome people's natural reluctance to deal with a bankrupt firm whether as purchaser or lender by assuring them that so long as they are relying in good faith on a bankruptcy judge's approval of the transaction they need not worry about their priority merely because some creditor is objecting to the transaction . . . . The proper recourse for the objecting creditor is to get the transaction stayed pending appeal.").

[13] *See, e.g., In re* White Crane Trading Co., Inc., 170 B.R. 694 (Bankr. E.D. Cal. 1994).

[14] *See In re* EDC Holding Co., 676 F.2d 945, 948 (7th Cir. 1982).

[15] *In re* EDC Holding Co., 676 F.2d 945 (7th Cir. 1982).

[16] 676 F.2d 945, 948-49.

(Rel. 101-4/2007  Pub.219)

## CERTIFICATE OF SERVICE

    I, Leslie C. Heilman, Esquire, hereby certify that on this 29th day of April, 2008, I

caused a true and correct copy of the Reply Brief of Appellant Dr. Jack Kachkar, to be served on

the addressees listed on the attached service list in the manner indicated.

Dated:  April 29, 2008
Wilmington, Delaware

        /s/ Leslie C. Heilman
        Leslie C. Heilman, Esq. (No. 4716)
        BALLARD SPAHR ANDREWS & INGERSOLL, LLP

## VIA HAND DELIVERY

Bruce Grohsgal, Esquire
Pachulski Stang Ziehl & Jones LLP
919 N. Market Street, 17th Floor
Wilmington, DE 19801
(Counsel for Stephen S. Gray,
Chapter 11 Trustee for Inyx USA, Ltd.)

Richard M. Beck, Esquire
Christopher A. Ward, Esquire
Klehr Harrison Harvey Branzburg
 & Ellers LLP
919 N. Market Street, Suite 1000
Wilmington, DE 19801
(Counsel for Official Committee of Unsecured Creditors)

Richard L. Schepacarter, Esquire
Officer of the United States Trustee
J. Caleb Boggs Federal Building
824 Market Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
(Counsel for the United States Trustee)

Francis A. Monaco, Esquire
Steven K. Kortanek, Esquire
Kevin J. Mangan, Esquire
Womble Carlyle Sandridge & Rich, PLLC
222 Delaware Avenue, Suite 1501
Wilmington, DE  19801
(Counsel for Westernbank Puerto Rico)

## VIA FIRST CLASS MAIL

Harvey P. Miller, Esquire
Weil, Gotshall & Manges LLP
767 Fifth Avenue
New York, NY 10153
(Counsel for Westernbank Puerto Rico)